Lynnette Warman
Tex. Bar No. 20867940
Richard G. Grant
Tex. Bar No. 08302650
CULHANE MEADOWS, PLLC
The Crescent, Suite 700
100 Crescent Court
Dallas, Texas 75201
Telephone: 214-693-6525
Facsimile: 214-361-6690
Email: lwarman@culhanemeadows.com
Email: rgrant@culhanemeadows.com

PROPOSED ATTORNEYS FOR
DEBTOR IN POSSESSION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 15-40248-11 |
| GTL (USA), INC., | § | Chapter 11 |
| | § | |
| Debtor. | § | |

**MOTION FOR ENTRY OF PROTECTIVE ORDER REGARDING
AUTOOPT NETWORKS, INC.; KUNAL KAPAI; AND THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

TO THE HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE:

GTL (USA), Inc., the debtor and debtor-in-possession (the "Debtor") in the above

captioned case, hereby files this Motion for Entry of Protective Order Regarding AutoOpt

Networks, Inc.; Kunal Kapai; and the Official Committee of Unsecured Creditors (the "Motion")

and respectfully states as follows:

**SUMMARY**

1. By this Motion, the Debtor seeks entry of a protective order, in the form attached

hereto (the "Proposed Protective Order"), to govern the designation and handling of certain

confidential information in connection with discovery by the Committee and certain claimants.

2.      The Committee consents to the relief requested in this Motion.

3.      AutoOpt objects to this Motion. Of particular concern to AutoOpt is the language found in paragraph 12 of the Order. Given the status of AutoOpt as a competitor, its prior violation of the automatic stay, its suspected violations of Judge Fitzwater's protective orders and its prior unethical conduct, the Debtor requests the Court to enter appropriate orders governing AutoOpt's use of information obtained as a Member of the Official Committee of Unsecured Creditors up to and including the language contained in paragraph 12 of the proposed order, while taking into account the fiduciary duties to the creditor body.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## INTRODUCTION

5.      On February 9, 2015 (the "Petition Date"), the Debtor commenced its reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"). The Debtor continues in possession of its property and operation of its business, as debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.      On March 6, 2015, the United States Trustee appointed members to the Official Committee of Unsecured Creditors of GTL (USA), Inc. (the "Committee").

7.      The statutory bases for the relief requested herein are section 107(b) of title 11 of the United States Code (the "Bankruptcy Code"); Rules 2004, 9014(c), 7026 and 9018 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 26(c) of the Federal

Rules of Civil Procedure ("FRCP").

## BACKGROUND

8.    The Debtor is in the business of conducting testing as necessary to support the

network infrastructure of customers such as Nokia and Ericsson.

9.    Typically, the Debtor enters into a contract (a "Customer Contract") with its

customer to provide the relevant testing services. In turn, the Debtor enters into one or more

contracts with vendors to provide the staffing, equipment and software necessary to fulfil the

Customer Contract. The difference between the amount to be paid by the Customer and to the

vendors is the margin and gross profit (the "Margin") available to the Debtor.

10.    AutoOpt Networks, Inc. was previously a vendor of the Debtor and is accordingly

motivated to directly contract with the Debtor's Customers to provide the testing services

necessary to collect the Margin for itself.

11.    AutoOpt has engaged in a two year pattern of continuously attempting to

destabilize the Debtor's business operations to achieve two purposes. First, to drive the Debtor

out of business so that AutoOpt can gain a competitive advantage in the market. Secondly, to

engage in a litigation pattern designed to obscure the fraudulent components of AutoOpt's claim.

These ulterior motives and bad faith conduct have continued into the bankruptcy case.

12.    As background, AutoOpt is a former vendor and a current competitor of the

Debtor. In 2011 the parties entered into a contract (the "AutoOpt Contract") under which

AutoOpt agreed to perform as a vendor of the Debtor to provide certain services the Debtor

required in connection with a contract the Debtor had with AT&T Corporation (the "AT&T

Contract").

13.    The underlying contract dispute between AutoOpt and the Debtor concerns quantifying the amount owed by the Debtor, if any, to AutoOpt for services it performed under the AutoOpt Contract and resolving the Debtor's counterclaims. The lawsuit filed by AutoOpt in connection with that dispute (the "Lawsuit") has been pending for two years, however, the Debtor has not even had an opportunity to file an answer with appropriate counterclaims in that case. Instead, because of the multiple venues (including the initial filing in New Jersey), various parties named as defendants, and the numerous and varied claims AutoOpt has attempted to assert, the Debtor has spent close to a million dollars litigating with AutoOpt with no forward progress to resolve the actual dispute.

**Collusion and Tortious Interference by AutoOpt and Kunal Kapai.**

14.    Although AutoOpt was not a party to the AT&T Contract, Dipesh Shah, the President of AutoOpt and the representative of AutoOpt with respect to the AutoOpt Contract, on numerous occasions, colluded and then improperly contacted and interacted with representatives of AT&T regarding pricing issues under the AT&T Contract in an attempt to reduce and eliminate the Debtor's margin on the contract. This collusions and interference with the Debtor's contract and business relationship with its customer benefited AutoOpt and simultaneously caused significant damage to the Debtor.

**AutoOpt serves Subpoenas Upon Debtor Representatives at Mediation**

15.    After the initial disagreements as to the proper amount of AutoOpt's claims and the Debtor's offsetting claims for misconduct of AutoOpt, AutoOpt solicited the debtor to attend a mediation settlement conference in New Jersey, requesting that officers and directors of both the Debtor and its parent companies attend from India. AutoOpt then used the opportunity to

ambush and sandbag the Debtor's representatives by serving them with summons on AutoOpt's improperly filed New Jersey lawsuit.[1]

**The Commencement of AutoOpt's Obfuscation of its Fraudulent Claims**

16.     Rather than merely proving its claim, AutoOpt first attempted to simply disrupt the Debtor's relationship with the Debtor's customers by attempting multiple prejudgment garnishment requests. *See, e.g., AutoOpt Networks, Inc. v. Nokia Networks, Inc., Nokia Solutions and Network US, LLC, Ericsson, Inc., CitiBank Texas, N.A.*, Cause No. 429-04584-2014, District Court, Collin County, Texas, 429th Judicial District.  AutoOpt obtained *ex parte* writs from a *visiting* judge and served the same to the Debtor's primary customers, Nokia, Ericcson and Network US.  Immediately upon her return, the sitting judge dissolved the writ and denied AutoOpt's motion for reconsideration.  However, the damage had already been done.   See **Exhibit A** attached hereto.

**AutoOpt Begins Pattern of Harassing Debtor Customers**

17.     After serving summonses at mediation and rather than proving its case, AutoOpt continues a pattern of improperly contacting the Debtor's customers to damage the Debtor and improperly obtain advantage. On August 22, 2014, Dipesh Shah fabricates and counsel for AutoOpt transmits a fraudulent "Notice of Lien" to Ericsson, Inc., a key Debtor customer. A true and correct copy of this so-called "Notice of Lien" is attached hereto as **Exhibit B** and incorporated herein by this reference. The "Notice of Lien" does not refer to, nor is it based upon, any statute or other applicable legal authority. On its face, the "Notice of Lien" is clearly designed as an attempt to interrupt the cash flow to the Debtor. This attempt is so blatantly

---

[1] After years of litigation, AutoOpt acknowledged that New Jersey was the improper forum for the litigation and the parties agreed to transfer the same to Texas.

violative of legal collection practices, it shows the lack of understanding of Dipesh Shah of
appropriate legal procedures, ethical conduct and the willingness of Mr. Shah to disregard rules
of professional conduct.

**AutoOpt Uses Fabricated Evidence**

18.    After the fraudulent "Notice of Lien" attempting to disrupt the Debtor's business
relationship with its customer Ericsson, AutoOpt's next maneuver was to file a $3.246 million
**prejudgment** garnishment application based on seven purported contract "Amendments" to the
AutoOpt Contract bearing the signatures of Kunal Kapai ("Kapai") and AutoOpt's President,
Shah.

19.    Although the parties had been discussing billing disputes under the AutoOpt
Contract since December 2012, these seven Amendments were never produced by AutoOpt until
the spring of 2014, when they suddenly materialized, bearing dates going back to 2011 and 2012.
The Debtor's former controller, Candace Plank, who worked under and closely with Kapai, has
testified under oath that she was responsible for executing the AutoOpt Contract with AutoOpt
and that she has no awareness whatsoever of the Amendments.

20.    Debtor and its litigation counsel and forensic computer experts have searched for
any traces of the seven Amendments (or even drafts of same) in the hard drives and computer
files used by Kapai in his tenure with the Debtor, and have found no evidence whatsoever of the
Amendments or any drafts of those Amendments that would suggest they were negotiated,
drafted, transmitted or signed prior to Kapai's resignation.

21.    Moreover, less than two months **before** his resignation from Debtor, in November
2012 Kapai wrote an email to Shah advising him that **only Ms. Plank** (who had signed the
original AutoOpt Contract documents) possessed authority to sign contracts for Debtor, thus

discrediting AutoOpt's current contention that Kapai signed the Amendments while he was with

Debtor, or had the authority to do so.

22.     The Debtor believes the evidence will show (i) the seven Amendments relied

upon by AutoOpt to support a substantial portion of its prejudgment garnishment claim are

recent fabrications by Shah and Kapai to create a plausible basis for AutoOpt's claim, and (ii)

that those Amendments were fraudulently created and signed *after* Kapai was no longer

employed by the Debtor. Further, the Debtor has reason to believe that Shah, in collusion with

Kapai and some representatives of AT&T Corporation have defrauded the Debtor over a period

of time.

**Preface to AutoOpt's Violation of the Automatic Stay**

23.     This chapter 11 proceeding was precipitated by the unexpected order entered on

an expedited basis in the Lawsuit granting AutoOpt's request for the **prejudgment** writ of

garnishment in an amount in excess of $3.2 million. Had the writ been issued, it would have

eliminated all of the Debtor's liquidity, created problems in servicing Debtor's undisputed

creditors who otherwise were being serviced regularly and timely, and forced it to immediately

cease operations.

24.     The order granting the writ was entered after little notice to the Debtor, and

without any opportunity to respond to the allegations/claims made by AutoOpt in support of its

writ request. The order required that AutoOpt had a short time to file a pleading advising the

court of the amount of the bond it deemed appropriate, with the Debtor to respond to that

pleading within a short stated deadline. The appropriate amount of the bond would then be

determined by the Court, and after the bond was posted, the writ would issue. The Debtor elected

to file this bankruptcy proceeding rather than to file a response to the bond proposal by AutoOpt,

thus **the writ never issued**.

**AutoOpt violates the Automatic Stay and Harms Customer Relationships**

25.     The deadline for the Debtor to file its response to the bond proposal by AutoOpt

was 4 pm on Monday, Feb. 9, 2015 (the Petition Date). Instead of responding on the bond issue,

the Debtor filed this case at 3:57 pm on that day, and immediately notified the presiding judge

and AutoOpt of the filing. True and correct copies of the ECF notices reflecting the filings made

by counsel for the Debtor in the Lawsuit and ancillary garnishment matter are attached hereto as

**Exhibit C** and incorporated herein by this reference.

26.     *After* the notices were sent by the District Court's ECF and received by not less

than **twenty-four (24)** emails to not less than **eight (8)** email addresses for AutoOpt attorneys,

AutoOpt's counsel sent emails with attached letters to the Debtor's two main **CUSTOMERS** in

violation of the automatic stay. These emails misrepresented the status of the writ, contained an

inexplicable threat of litigation against the customers under the Uniform Fraudulent Transfer Act

and failed to mention the bankruptcy filing. A true and correct copy of one of the letters attached

to the email sent to the one of the customers is attached hereto as **Exhibit D**, and incorporated

herein by reference.

27.     Not only was this a violation of the automatic stay, the email did not accurately

reflect the status of the writ order and threatened the Debtor's customers, yet again. It was a

blatant attempt to exercise control over assets of the estate post-petition by violating the

automatic stay, misrepresenting the facts, threatening the customers with a baseless lawsuit and,

on information and belief, deliberately tortiously interfering with the Debtor's business. The

Debtor's future business opportunity with its largest customer (Eriksson) has been adversely affected due to this improper action by AutoOpt.

**AutoOpt and Kapai Communicate with Debtor Customers after Petition Date**

28.    AutoOpt and Kapai continue the pattern of wrongful communication with the Debtor's customers, even after the Petition Date and even after being admonished by their own counsel and counsel for the Committee.

29.    For example, on March 13, 2015, counsel for the Debtor received an inquiry from counsel for one of the Debtor's customers indicating that they had heard that the Debtor was liquidating and that they were interested in purchasing Debtor assets at a 363 sale. The only parties contacting the Debtor's customers other than the Debtor are Dipesh Shah and Kunal Kapai. Implying to customers that the Debtor is going out of business and is liquidating is obviously very damaging to customer relations.

**Failure of AutoOpt to Backup Claims | Destroys Evidence**

30.    In the Lawsuit itself, AutoOpt has refused to produce the majority of requested documents and claimed that some evidence crucial to establishing key amounts in dispute between the parties has been destroyed.

31.    AutoOpt's $3.24 million garnishment request was based upon seven purported contract amendments to the original contract between the parties. The Debtor has no evidence that these purported amendments ever existed, despite a thorough search of its records. The dates of the alleged amendments span the time period of 2011-2012, when Kapai was the COO of the Debtor.

32.     These amendments have been in controversy since August 2012, yet AutoOpt has

now taken the position the computer hard drive which allegedly contains the backup information

no longer exists.

**AutoOpt Continues to Conspire with Disgruntled Former Officer of Debtor**

33.     Kapai was the Chief Operating Officer ("COO") of the Debtor from 2008 through

January 2013. Kapai also served as a director for GTL and its subsidiary, GTL (Canada). During

this period Kapai was the most senior executive officer of the Debtor, and was responsible for

the Debtor's operations and financial affairs

34.     Mr. Kapai manipulated the accounting records of the Debtor to hide operating

losses accruing under his regime. Kapai then helped himself to the funds of a Debtor subsidiary

to pay himself amounts he thought himself justly owed. Since that date, Kapai has been working

hand in hand with AutoOpt to disrupt the Debtor's business operations.

35.     For example, one of Kapai's agents – Ali Saheen – called a Debtor employee on

March 9, 2015 (after the Petition Date and while the automatic stay was in place) implying that

the Debtor's contract with Nokia had been terminated. This fact was of course not only untrue

and baseless, but the fact that it was said at all indicates two things. First, it indicates Kapai

continues his improper harassing efforts, even postpetition. Secondly, the rumor would have

been started solely by AutoOpt, who is the only know party improperly attempting to

communicate with Debtor customers. Attached hereto as **Exhibit E** is a copy of the

correspondence from the concerned Debtor employee.

**Kapai is Competitor**

36.     After the Debtor commenced an internal investigation of Kapai's manipulation of

the books of the Debtor, Kapai abruptly resigned in January 2013 and shortly thereafter went to

work for a competitor, Unified Business Technologies based in Troy, Michigan. His departure was precipitated by an internal audit, which revealed that he had, over a four-year period, committed fraud against the Debtor and misrepresented the financial affairs of the Debtor to its parent company.

37.    A short time after Kapai started at his new job, he hired away a team of employees responsible for cell tower acquisition projects which diverted approximately $2 million in revenue away from the Debtor for that year. The Debtor has suffered significant damages due to these actions.

**Kapai Steals Company Data**

38.    When Kapai left the Debtor, in contravention of the Debtor's policies, Kapai took with him a laptop computer loaded with the Debtor's confidential files.

**Kapai Embezzles Funds**

39.    Immediately after his departure, Kapai went to a Citibank location in Frisco, TX and to a Toronto Dominion bank located in Canada and made **unauthorized withdrawals** in an amount in excess of $114,000 from the Debtor's affiliated companies' accounts. Despite reacting as quickly as possible to notice of the withdrawals, the Debtor was able to trap only $23,000 of the $114,000 Kapai attempted to convert to his own funds. The Debtor has filed criminal and civil proceedings against Kapai but those matters have not yet been resolved. In fact, Kapai has refused to cooperate with discovery and discovery requests in the civil matter.

**Kapai Spreads False Statements to Debtor Vendors**

40.    First, on information and belief, Kapai has contacted its vendors since the case began, and has been disseminating false information to them. Specifically, Kapai is spreading rumors to the effect that "the Debtor is going out of business" – "The Debtor's primary

customers are terminating their contracts with the Debtor" – "The Debtor is exercising mass

layoffs." All of which are untrue, but are being falsely spread to disrupt the Debtor's business

tortuously and in violation of the automatic stay.

**AutoOpt disappointed that its Efforts to Damage the Debtor's relationship with Ericsson were not more successful**

41.    To further evidence AutoOpt's desire to damage the Debtor's relationship with its

customers, at the 341 meeting of Creditors, counsel for AutoOpt began a series of questions of

the Debtor's representatives regarding the extent to which AutoOpt has been able to damage the

Debtor's relationship with Ericsson. The questions indicate that counsel was clearly surprised

that AutoOpt's efforts to damage the Debtor's relationship with Ericsson were not more

successful. Moreover, the questions clearly seem to indicate that AutoOpt believed it had

information from the Debtor's employees and/or its customers to the contrary.

**Disregard of Existing Protective Order**

42.    Judge Fitzwater entered a protective order protecting the Debtor from wrongful

dissemination of the Debtor's confidential information. See **Exhibit F** attached hereto. The only

information available to AutoOpt is information provided pursuant to such order. Nevertheless,

AutoOpt insists on continuing to contact customers, vendors and employees (not to mention

Committee Members and counsel) with supposed "inside knowledge" regarding the Debtor'

financial operations, relationships with customers and status with employees. Either AutoOpt is

lying about having inside information or it blatantly violating the prior Protective Order.

43.    The Debtor requests additional protection than what might normally be in a

protective order given AutoOpt's disregard of its obligations and the legal rights of the Debtor

and the orders of Judge Fitzwater. In the Debtor's opinion, Dipesh Shah and Kunal Kapai cannot

be trusted to operate within the confines of the bankruptcy automatic stay, the fiduciary

obligations of Committee Members, the orders of this and other Courts, and the laws regarding

defamation and tortious interference with business relationships.

### AutoOpt continues to spread False Information to Achieve its Goals

44.     On March 17, 2015, counsel for the Debtor discovered that AutoOpt is now

falsely telling other Committee Members that the Debtor has had mass layoffs, shedding as much

as 40% of its workforce.  It appears that Mr. Shah is continuing to fabricate facts in order to

induce the Committee Members to support or insist upon a liquidation strategy.

### Counterclaims against AutoOpt for tortious interference with contract and existing business relationship, defamation and fraud

45.     Due to AutoOpt's actions before and since the Bankruptcy Case was filed, the

Debtor believes it has various claims and counterclaims against AutoOpt which may offset, and

perhaps even eliminate AutoOpt's claims against the Debtor. To date, AutoOpt has not filed a

proof of claim in the case. Resolving AutoOpt's claims against the estate, as well as determining

whether there are estate claims of value against AutoOpt, for violating the stay and interfering

with the Debtor's business are crucial to the successful resolution of this case.

### Committee Approval

46.     The Committee has approved the form of the attached Order.

### DISCUSSION REGARDING FIDUCIARY OBLIGATIONS
### OF COMMITTEE MEMBERS

### Standard of Care | Fiduciary Responsibility Overview

47.     Members of a creditor's committee owe a fiduciary duty to the holders of the class

of claims or interests they represent. *See, eg., Woods v. City Nat'l Bank & Trust Co.,* 312 U.S.

262 (1941); *Bohack Corp. v. Gulf & W. Indus., Inc.*, 607 F.2d 258 (2d Cir. 1979); *In re Realty*

*Assocs. See. Corp.*, 56 F. Supp. 1008 (E.D.N.Y. 1944), aff'd, 156 F.2d 480 (2d Cir. 1946); *Mesta Mach.*, 67 Bankr. at 156; *In re REA Holding Corp.*, 8 Bankr. 75 (S.D.N.Y. 1980). *See generally DeNatale, The Creditors' Committee Under the Bankruptcy Code - A Prime*r, 55 AM. BANKR. L.J. 43 (1981); Levy, *Creditors' Committees and Their Responsibilities*, 74 COMM. L.J. 355 (1969). Committee members must pursue their statutory function for the benefit of their constituency with an undivided loyalty. *In re Johns-Manville Corp.*, 26 Bankr. 919, 925 (Bankr. S.D.N.Y. 1983).

48.     The potential for conflicts of interest is to be scrupulously avoided, even if no actual conflict exists at the time committee members are initially appointed or counsel is retained. See, eg., Proof of the Pudding, 3 Bankr. at 647.

49.     As a fiduciary, a committee member must not use his or her position to further personal interests at the expense of other creditors. *See, eg., In re National Equip. & Mold Corp.*, 33 Bankr. 574 (Bankr. N.D. Ohio 1983); *Johns-Manville*, 26 Bankr. 919*; see also In re Enduro Stainless, Inc.*, 59 Bankr. 603, 605 (N.D. Ohio 1986) (the court stated that the union may not act through the committee to further only its self-interests).

50.     If a committee member does abuse the fiduciary trust by promoting personal interests over those of the committee, courts will not hesitate to impose sanctions. Illustrative is *In re Johns Manville Corp.*, 26 Bankr. 919 (Bankr. S.D.N.Y. 1983), where a member of the Asbestos Committee, who was also an attorney, continued a prepetition lawsuit against the debtor on behalf of a private client. The bankruptcy court, after condemning the creditor's actions, commented at length upon the nature of a committee member's fiduciary duty:

> In the case of reorganization committees, these fiduciary duties are crucial because of the importance of committees. Reorganization committees are the primary negotiating bodies for the plan of reorganization. They represent those classes of creditors from which they are selected. They also provide supervision

of the debtor and execute an oversight function in protecting their constituents' interests.... Accordingly, the individuals constituting a committee should be honest, loyal, trustworthy and without conflicting interests, and with undivided loyalty and allegiance to their constituents.... Conflicts of interest on the part of representative persons or committees are thus not be [sic] tolerated.... [W]here a committee representative or agent seeks to represent or advance the interest of an individual member of a competing class of creditors or various interests or groups whose purposes and desires are dissimilar, this fiduciary is in breach of his duty of loyal and disinterested service.

The court concluded that the committee member misused confidential committee information in furthering a private cause and stated that such abuse constituted a breach of the member's fiduciary duty. *Id*. at 926; *see also National Equip*., 33 Bankr. at 575-76 (a union member of the priority creditors' committee petitioned the court to order the debtor, at estate expense, to retract certain adverse statements made about the union prepetition; the court refused and chastised the union for attempting to use its committee membership to further personal interests).

51.     If a committee member's actions are challenged, the member as a fiduciary, must prove that the challenged transaction was made in good faith; the member must also show the transaction's "inherent fairness from the viewpoint of those that the fiduciary represents." *Mesta Mach*., 67 Bankr. at 157, (citing *Pepper v. Litton*, 308 U.S. 295 (1939)).

**Duty of Good Faith**

52.     As indicated by the Mesta Mach case, it is AutoOpt's duty to show that its actions are in good faith.  The Chief Judge's explication in *In re Lehigh Valley Professional Sports Clubs, Inc.,* 2001 WL 1188246 (Bankr.E.D.Pa.) discussed the duty of good faith in 1126(e) and observed:

If a selfish motive were sufficient to condemn reorganization policies of interested parties, very few, if any, would pass muster. **On the other hand, pure malice, "strikes" and blackmail, and the purpose to destroy an enterprise in order to advance the interests of a competing business, all plainly constituting bad faith, are motives which may be accurately described as ulterior**. That is to say, we do not condemn mere enlightened self interest, even

if it appears selfish to those who do not benefit from it." 118 F.3d at 639, quoting In re Pine Hill Collieries Co., 46 F.Supp. 669, 671 (E.D.Pa.1942). See also In re A.D.W. Incorporated, 90 B.R. 645, 649 (Bankr.D.N.J.18).

53.    The Debtor asserts that AutoOpt cannot show that it is acting in good faith.

## Competitors on Committtees

54.    A competitor of the debtor would not only have a personal interest conflict with the debtor but also with the debtor's other creditors, although competitors have been allowed to sit on committees *with appropriate confidentiality agreements*. *In re Wilson Food, Corp*., 31 B.R. 272 (Bankr. W.D. Okla. 1983); but see In re Map lnt'l. Inc., 105 B.R. 5 (Bankr. E.D. Pa. 1989) (allowing a competitor to serve on a creditors' committee); In re Plant Specialties. Inc., 59 B.R. 1 (Bankr. W.D. La. 1986) (same). *See also Rickel & Assocs, Inc. v. Smith (In re Rickel & Assocs., Inc.),* 272 B.R. 74 (Bankr. S.D.N.Y. 2002) (committee member is not disqualified from bidding on debtor's assets. but to insure integrity of sale process, Court must be persuaded that committee member did not use his position to advance personal interest).

## Confidentiality of Information Procedures

55.    Members of the committee have a duty of loyalty which requires them to keep confidential information learned as a result of membership on the committee. Where a committee member uses information learned through its role on the committee it may be barred from the committee.

## Hostile Creditor

56.    A hostile creditor's unsympathetic view of a debtor's attempts to reorganize may violate a seemingly contradictory provision of the Bankruptcy Code that requires parties voting for a plan of reorganization do so in good faith. The rationale for excluding creditors who do not act in good faith is straightforward: "to prevent creditors and stockholders, by use of obstructive

tactics or of hold-up techniques, from exacting for themselves advantages through acceptance or

rejection of a plan or [obtaining] some preferential treatment such as management of the

company for the price of their vote." Thus, where the committee, as opposed to the debtor,

establishes that a hostile creditor's unsympathetic conduct may frustrate negotiations for a

consensual plan (a Congressionally imposed duty of the committee), and that such conduct

manifests the hostile creditor's lack of good faith in consideration of acceptance or rejection of a

plan, there may be grounds for excluding the creditor. However, such action by the committee

would commonly be reserved in the context of removal of the creditor from the committee.

**Competitors | Dual Committees**

57.     No statutory basis exists to bar a creditor from serving on a committee because it

is a competitor. Indeed, a competitor may afford advantages to the committee and the debtor: the

competitor will have familiarity with the industry and thus may have special insight into the

affairs of the debtor. However, where it can be demonstrated that a competitor's business would

be greatly enhanced by the demise of the debtor, and the competitor could make use of

information supplied to the committee by the debtor for its own personal competitive advantage,

a competitor may be excluded from serving on the committee.

58.     Recognizing the importance of committee membership, courts have designed

protective devices, attempting to overcome the problem of excluding otherwise eligible creditors.

One court, in a large case, ordered the appointment of two committees. One committee, the

general unsecured committee, consisted primarily of lenders. A second committee, an industry

committee, comprised competitors. This "competitor" committee was restricted from receiving

confidential information concerning the debtor's business operations and strategies. Where a

competitor is appointed, care needs to be taken to ensure the protection of proprietary

information and the competitor understands its duties.

**Recommendations to Creditors**

59.    The scope of a committee member's fiduciary duty was at issue in *In re Tucker*

*Freight Lines, Inc.* 62 Bankr. 213 (W.D. Mich. 1986). In *Tucker*, individual members of the

creditors' committee, made false and misleading statements in the committee's letter to its

constituents. The *Tucker* court acknowledged that the committee's power to advise creditors of

its determinations as to a plan pursuant to subsection 1103(c) imposes a fiduciary duty which

> [a]t a minimum, ... requires that the committee's determinations must be honestly
> arrived at, and, to the greatest degree possible, also accurate and correct. For a
> Creditors' Committee to urge rejection of a plan for reasons they knew, or would
> have known but for their recklessness, to be false would violate this duty ….

60.    Here, the continued dissemination of false and misleading statements by AutoOpt

and Kunal justify the relief requested herein.

**RELIEF REQUESTED**

61.    The Debtor has requested AutoOpt to come to terms of agreed language

governing AutoOpt's communications with the Debtor's customers, employees and vendors.

AutoOpt has not been willing to restrict in any way their ability to communicate with anyone

they please about anything they please, citing the First Amendment to the U.S. Constitution.

62.    The Debtor respectfully suggests that limits exist on AutoOpt's ability to interfere

with the Debtor's ability to maintain the goodwill of its customers, vendors and employees

without interference by a Committee Member receiving confidential information of the Debor.

63.    The Debtor requests entry of appropriate orders of the Court outlining these

restrictions. The Debtor is of the opinion that AutoOpt should not be taking action independent

of the Committee to further its own agenda as to the best course for the Debtor, its creditors and

this estate.

## DISCUSSION REGARDING FIRST AMENDMENT AND PROTECTION OF LITIGATION MATERIALS

64.     Section 107(b)(1) of the Bankruptcy Code provides that, "[o]n request of a party

in interest, the bankruptcy court shall . . . protect an entity with respect to a trade secret or

confidential research, development, or commercial information." 11 U.S.C. § 107(b)(1). This

statute is implemented through Bankruptcy Rule 9018, which provides that the Court may "make

any order which justice requires to," among other things, "to protect the estate or any entity in

respect of a trade secret or other confidential research, development, or commercial

information." Fed. R. Bankr. P. 9018(b). Commercial information includes, among other things,

information that would cause an unfair advantage to competitors by providing them information

as to the commercial operations of the debtor. *Video Software Dealers Ass'n v. Orion Pictures

Corp. (In re Orion Pictures Corp.),* 21 F.3d 24, 27 (2nd Cir. 1994).

65.     Here, disclosure of the Confidential Information, which includes sensitive and

proprietary information regarding the Debtor, its financial affairs, and contracts with significant

commercial counterparties, could, absent appropriate protection, negatively affect the Debtor and

their ability to compete against other competitors, to the detriment of the Debtors and their

stakeholders. As such, the Confidential Information constitutes "confidential . . . commercial

information" subject to section 107(b)(1) of the Bankruptcy Code and Bankruptcy Rule 9018..

The Proposed Protective Order appropriately balances Chevron's interest in maintaining the

confidentiality of the Confidential Information with the Debtors' need to share the Confidential

Information with interested parties in connection with the Sale Process. Accordingly, the Debtors

respectfully request that the Court enter the Proposed Protective Order.

**Consistent with First Amendment**

66.    The language of the First Amendment is clear: "Congress shall make no law . . .

abridging the freedom of speech, or of the press." U.S. CONST. amend. I The justice system

recognizes several circumstances-such as attorney-client privilege, settlement negotiations, grand

jury proceedings and discovery (*See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984)

(noting that "pretrial depositions and interrogatories are not public components of a civil trial")-

where confidentiality is not only allowed, but is necessary. See Arthur R. Miller, Confidentiality,

Protective Orders, and Public Access to the Courts, 105 HARV. L. REV. 427, 429 (1991), at 429

(discussing situations where confidentiality is recognized and enforced by the courts). Moreover,

trial judges are given broad discretion to determine whether to allow any public access to

materials for litigation and settlement negotiations. *See E.I. Du Pont de Nemours Powder Co. v.

Masland*, 244 U.S. 100, 103 (1917) (observing that trial judges have great discretion "to

determine whether, to whom, and under what precautions" certain materials and activities need

to be revealed).

67.    The Supreme Court has emphatically endorsed the constitutionality of protective

orders, stating that pretrial discovery was "not [a] public component [] of a civil trial" and

reasoning that such an order "did not involve a restriction on the use of a traditionally public

source of information." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) (upholding a

protective order that prohibited publication of the membership of a religious organization).

Moreover, the Court noted that it had previously decided that a litigant has no First Amendment

right of access to information made available only for purposes of trying a suit. Thus, the Court

reasoned that "continued court control over the discovered information does not raise the same

specter of government censorship that such control might suggest in other situations." See

*Rhinehart*, 467 U.S. at 32 ("'The right to speak and publish does not carry with it the unrestrained right to gather information.'" (*quoting Zemel v. Rusk*, 381 U.S. l, 16-17 (1965)).

68.     In upholding the Washington trial court's ability to impose and enforce a protective order, the Court emphasized the interest of the trial court in maintaining control over the litigation process. The Court noted that discovery has a "significant potential for abuse," which may encompass not only delay and extra expense but also the acquisition of sensitive information that "could be damaging to reputation and privacy" if released. Liberal discovery is not provided to litigants to achieve this end but "for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." The opinion explained that because of the liberal discovery rules, "it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c)."

69.     The First Amendment is not a defense to a preliminary injunction against publication of information obtained in breach of a confidentiality agreement or fiduciary duty. Thus, an injunction against defendants' disclosure of purported confidential client information is not considered an improper prior restraint. For example, in *Snepp v. United States*, 444 U.S. 507 (1980), the Court rejected a First Amendment challenge to an injunction requiring a CIA agent to submit future writings for prepublication review based on the agent's breach of fiduciary duty and breach of his promise not to disclose confidential information in a book without submitting the book for prepublication clearance. The Court also imposed a constructive trust on his profits. *See also Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) (order prohibiting newspaper from disclosing information acquired through pretrial discovery does not violate First Amendment); cf. Madsen v. Women's Health Center, Inc., 512 U.S. 753, 763 n.2 (1994) (injunctions not impermissible "prior restraints" if basis for issuance is not content but prior unlawful conduct).

70.    Federal courts have consistently recognized that the First Amendment does not bar injunctive relief to remedy breach of contract or breach of trust. Thus, in Maas v. United States, 371 F.2d 348, 349 (D.C. Cir. 1966), the court affirmed a preliminary injunction enjoining author Peter Maas from "disseminating or publishing in any form" copies of or excerpts from a manuscript written by Mafioso Joseph Valachi and edited by Maas while Valachi was in jail, to preserve the government's rights under an agreement by Maas and Valachi that any manuscript would be submitted to it for review and approval prior to publication. See also Pappas, 94 F.3d at 801 (government "is entitled to enforce its agreements to maintain the confidentiality of classified information"); *Pfeiffer v. CIA*, 60 F.3d 861 (D.C. Cir. 1995) (rejecting a claim by a former CIA historian that the CIA's refusal to approve for publication a report he had prepared concerning the Bay of Pigs constituted an unconstitutional prior restraint and ordering the historian to return the report to the CIA "because he obtained it only by violating his fiduciary duty"); *Barnstead Broad. Corp. v. Offshore Broad. Corp.*, 865 F. Supp. 2, 7 (1994) ("despite the asserted First Amendment implications, [defendant] is equally bound by the terms of its contract, voluntarily entered, and may be enjoined from breaching it"); *Agee v. CIA*, 500 F. Supp. 506 (D.D.C. 1980) (issuing an injunction against a CIA agent's dissemination of CIA-related information based on breach of agreement to submit publications for prepublication review).

71.    Here, as discussed above, there is substantial evidence that Schiller unlawfully obtained the information he wishes to disclose in the Miniseries by inducing Kardashian to breach his fiduciary duties to Simpson, by breaching his own fiduciary duties to Simpson, by violating contracts he made with Simpson and with members of Simpson's defense team, and by fraudulently inducing the cooperation of Simpson and members of his defense team. Schiller

therefore cannot claim any First Amendment right to disseminate this unlawfully obtained

information

72.     The First Amendment is not a defense to a preliminary injunction against

publication of information obtained in breach of a confidentiality agreement or fiduciary duty.

Thus, an injunction against defendants' disclosure of purported confidential client information is

not considered an improper prior restraint. For example, in *Snepp v. United States*, 444 U.S. 507

(1980), the Court rejected a First Amendment challenge to an injunction requiring a CIA agent to

submit future writings for prepublication review based on the agent's breach of fiduciary duty

and breach of his promise not to disclose confidential information in a book without submitting

the book for prepublication clearance. The Court also imposed a constructive trust on his profits.

*See also Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) (order prohibiting newspaper from

disclosing information acquired through pretrial discovery does not violate First Amendment);

cf. Madsen v. Women's Health Center, Inc., 512 U.S. 753, 763 n.2 (1994) (injunctions not

impermissible "prior restraints" if basis for issuance is not content but prior unlawful conduct).5

Federal courts have consistently recognized that the First Amendment does not bar injunctive

relief to remedy breach of contract or breach of trust. Thus, in Maas v. United States, 371 F.2d

348, 349 (D.C. Cir. 1966), the court affirmed a preliminary injunction enjoining author Peter

Maas from "disseminating or publishing in any form" copies of or excerpts from a manuscript

written by Mafioso Joseph Valachi and edited by Maas while Valachi was in jail, to preserve the

government's rights under an agreement by Maas and Valachi that any manuscript would be

submitted to it for review and approval prior to publication. See also Pappas, 94 F.3d at 801

(government "is entitled to enforce its agreements to maintain the confidentiality of classified

information"); *Pfeiffer v. CIA*, 60 F.3d 861 (D.C. Cir. 1995) (rejecting a claim by a former CIA

**Standard for Prior Restraint Rule | Harm to Competitive and Financial Position**

73.      The Third Circuit enunciated a standard to help the lower court determine whether a claim of embarrassment warranted a protective order: "[T]o succeed, a business will have to show with some specificity that the embarrassment resulting from dissemination of the information would cause a significant harm to its competitive and financial position." *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108 (3d Cir. 1986).  Under *Cipollone*, a protective order may cover information which, if released, would cause "serious embarrassment" and financial harm to proprietary interests.  Id.

**NOTICE**

74.      Notice of this Motion will be given to pursuant to the requirements of Local Rule 7013(f)(1)(B). The Debtor submit that, under the circumstances, no other or further notice is required.

**CONCLUSION**

75.      Accordingly, the Debtor requests that the Court enter an order in the form attached hereto and awarding the Debtor any further relief the Court deems appropriate.

Dated: March 18, 2015

Respectfully Submitted,

CULHANE MEADOWS, PLLC


By: ____/s/ Lynnette Warman____
       Lynnette Warman
       Tex. Bar No. 20867940
       Richard G. Grant
       Tex. Bar No. 08302650
The Crescent, Suite 700
100 Crescent Court
Dallas, Texas 75201

Telephone: 214-693-6525
Facsimile: 214-361-6690
Email: rgrant@culhanemeadows.com
Email: lwarman@culhanemeadows.com

PROPOSED ATTORNEYS FOR DEBTOR
IN POSSESSION


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he has transmitted a true and correct copy of the foregoing via the Court's Electronic Case Filing system to all persons participating therein on Wednesday, March 18, 2015.

_____/s/ Richard Grant_____
Richard G. Grant


## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that I have conferred with counsel for the Committee and for AutoOpt.  The Committee does not object to the relief requested herein.  AutoOpt opposes the Motion.

_____/s/ Richard Grant_____
Richard G. Grant

## SUMMARY OF EXHIBITS:

Exhibit A – Dissolution of Collin County Garnishment
Exhibit B – "Notice of Lien"
Exhibit C – ECF Notice to  Counsel for AutoOpt
Exhibit D – Letter from AutoOpt to Ericsson
Exhibit E – Inquiry from Debtor employee
Exhibit F – Fitzwater Protective Order

**EXHIBIT A**

**DISSOLUTION OF COLLIN COUNTY GARNISHMENT**

Filed: 11/24/2014 9:30:00 AM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Amy Mathis Deputy
Envelope ID: 3258796

CAUSE NO. 429-04584-2014

| | | |
|---|---|---|
| AUTOOPT NETWORKS, INC. | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff/Garnishor,* | § | |
| | § | |
| v. | § | |
| | § | COLLIN COUNTY, TEXAS |
| NOKIA NETWORKS, INC., NOKIA | § | |
| SOLUTIONS AND NETWORKS US | § | |
| LLC, ERICSSON, INC., CITIBANK | § | |
| TEXAS N.A. | § | |
| | § | |
| *Garnishees.* | § | 429th JUDICIAL DISTRICT |

## ORDER DISSOLVING PREJUDGMENT WRITS OF GARNISHMENT

This Court, having considered GTL (USA), Inc.'s Emergency Motion to Dissolve Prejudgment Writs of Garnishment, any responses, and all evidence and arguments of counsel, is of the opinion that the Motion should be GRANTED. It is, therefore,

**ORDERED** that the following Prejudgment Writs of Garnishment are dissolved:

(1)   Prejudgment Writ of Garnishment issued to Nokia Networks, Inc. on November 14, 2014;

(2)   Prejudgment Writ of Garnishment issued to Citibank Texas, N.A. on November 18, 2014;

(3)   Prejudgment Writ of Garnishment issued to Nokia Solutions and Networks US LLC issued on November 14, 2014; and

(4)   Prejudgment Writ of Garnishment issued to Ericsson, Inc. issued on November 14, 2014.

SIGNED this 24th day of November, 2014.

_____
Judge Presiding

Filed: 12/1/2014 3:20:14 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Amy Mathis Deputy
Envelope ID: 3334387

CAUSE NO. 429-04584-2014

| | | |
|---|---|---|
| AUTOOPT NETWORKS, INC. | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff/Garnishor*, | § | |
| | § | |
| v. | § | |
| | § | COLLIN COUNTY, TEXAS |
| NOKIA NETWORKS, INC., NOKIA | § | |
| SOLUTIONS AND NETWORKS US | § | |
| LLC, ERICSSON, INC., CITIBANK | § | |
| TEXAS N.A. | § | |
| | § | |
| *Garnishees*. | § | 429th JUDICIAL DISTRICT |

## ORDER DENYING AUTOOPT'S MOTION FOR RECONSIDERATION

This Court, having considered AutOOpt Networks, Inc.'s Response to GTL USA, Inc.'s

Emergency Motion to Dissolve Pre-Judgment Writs of Garnishment and Emergency Motion for

Reconsideration of *Ex Parte* Order Dissolving Prejudgment Writs of Garnishment (the

"Motion"), and all evidence and arguments of counsel, orders as follows:

The Motion is denied in its entirety. The Court further orders that the November 13, 2014

Order for Pre-Judgment Writ of Garnishment is vacated.

12/3/2014

SIGNED this _____ day of December, 2014.

_____

Judge Presiding

Solo Page

**EXHIBIT B**

**"NOTICE OF LIEN"**

# MURRAY & MURRAY

## Attorneys at Law

1247 Sussex Turnpike
Suite 220
Randolph, New Jersey 07869
(973) 895-6080 tel
(973) 598-9700 fax
jmurravesq@gmail.com

**John D. Murray**
US International Trade Bar
NJ Bar & US District Court

**James F. Murray, Jr.**
NY Bar & US District Court
(1919 - 1964)

August 22, 2014

Chanse Allen,
Vendor Manager
Strategic Sourcing Department
**ERICSSON, INC.**
6300 Legacy Drive
Plano, TX 75024
Chanse.Allen@Ericsson.com;
Fax: (972) 583-0070

Re: AutoOpt Network's Lien Claim
vs GTL USA, Inc.

Dear Sir or Madame:

Our office represents AutoOpt Networks, Inc., a subcontractor of GTL USA, Inc., which performed work for Ericsson, Inc. I am attaching a **Notice Of Lien** on behalf of AutoOpt Networks, Inc, in the amount of **$235,914.83**. This Lien represents unpaid invoices to GTL USA, Inc. for work performed as a sub-contractor of Ericsson, Inc. for the period September 2011 through April 2013.

Kindly withhold the Lien Claim amount of **$235,914.83** from any monies Ericsson owes to GTL USA, Inc., until such time this matter is resolved. Your anticipated cooperation in this regard is appreciated. I remain,

Very truly yours,

John D. Murray

JDM/lmr

cc:    AutoOpt Networks, Inc.
       Ericsson Legal Department

Fax   (972) 583.1839

# NOTICE OF LIEN

TO:     **ERICSSON, INC.**
        6300 Legacy Drive
        Plano, TX 75024
        Attention: Chanse Allen, Procurement & Sourcing, Vendor Management
        Email: Chanse.Allen@Ericsson.com;
        Fax: 972.583.0070; Attn: Strategic Sourcing Department
        Attn: Legal Department
        Fax# 972.583.1839

CLAIMANT hereby notifies ERICSSON, INC. of its Lien Claim against any and all Accounts Receivable, Unpaid Invoices or other Payments or Proceeds of any nature, that may be owed by ERICSSON to GTL USA, INC. and/or its affiliates. DEMAND is made that any monies owed to GTL USA, INC. be held until this Lien is satisfied.

RE:     UNPAID INVOICES FOR WORK PERFORMED
        FOR ERICSSON THROUGH GTL USA, INC.

AMT OF
LIEN:   **$235,914.83**  (See summary of unpaid invoices attached)

CONTRACTOR:  GTL USA, INC. and/or its Affiliates
             5200 Tennyson Parkway,
             Suite 200,
             Plano, Texas, 75024.

CLAIMANT:    AUTOOPT  NETWORKS, INC.,
             280 San Moreno Place,
             Suite 108,
             Fremont, CA 94539.

SCOPE OF
WORK:        CLAIMANT is the owner and developer of a proprietary software
             known as "Hasati Data Collecting Software" which was Licensed to
             GTL USA, INC., used during joint drive testing and first field
             application drive testing, contracted and performed for Ericsson, Inc.,
             during the period September 2011 through April 2013.

DATE:        August 21, 2014

             Signed and Sealed

             **AUTOOPT  NETWORKS, INC.**

             Dipesh Shah, President

## PAST DUE INVOICES
## OWED BY GTL USA, INC
## TO AUTOOPT NETWORKS, INC.

| Invoice # | Invoice Date | Invoice Amount | Notes | Amount for Ericsson Project |
|---|---|---|---|---|
| 206808002 | 8/9/2012 | $ 18,227.27 | Sep 11, ALU / E JD | $ 10,372.72 |
| 206808003 | 8/9/2012 | $ 60,714.29 | Oct 11, ALU E JD | $ 18,000.00 |
| 206808004 | 8/9/2012 | $ 66,072.73 | Nov 11, ALU E JD | $ 20,159.99 |
| 206808005 | 8/9/2012 | $ 55,454.55 | Dec 11, ALU E JD | $ 16,227.27 |
| 206808006 | 8/9/2012 | $ 9,600.00 | Jan 12, E JD | $ 6,720.00 |
| 206808007 | 8/9/2012 | $ 7,028.57 | Feb 12, E JD | $ 4,920.00 |
| 206808008 | 8/9/2012 | $ 3,490.91 | March 12, E JD | $ 2,443.64 |
| 206808009 | 8/9/2012 | $ 6,171.43 | Apr 12, E JD | $ 4,320.00 |
| 206808010 | 8/9/2012 | $ 10,747.83 | May 12, E JD | $ 7,523.48 |
| 206808011 | 8/9/2012 | $ 16,342.86 | June 12, E JD | $ 11,440.00 |
| 206810005 | 10/2/2012 | $ 22,000.00 | E FFA Dallas 8/27 through 9/23 E FFA Dallas 9/24 through 10/31 | $ 22,000.00 |
| 206811002 | 11/2/2012 | $ 33,000.00 | E Joint Drive July 2012 | $ 33,000.00 |
| 206911003 | 11/21/2012 | $ 14,345.46 | E Joint Drive August 2012 | $ 10,041.82 |
| 206911004 | 11/21/2012 | $ 14,817.00 | E Joint Drive September 2012 | $ 10,371.90 |
| 206911005 | 11/21/2012 | $ 20,820.00 | E Joint Drive October 2012 | $ 14,574.00 |
| 206911006 | 11/21/2012 | $ 9,900.00 | E Joint Drives (November to 4/28/13) | $ 9,900.00 |
| 206908003 | 8/13/2013 | $ 33,900.00 | | $ 33,900.00 |
| **TOTAL** | | | | $ 235,914.83 |

**EXHIBIT C**

**ECF NOTICE TO  COUNSEL FOR AUTOOPT**

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

If you need to know whether you must send the presiding judge a paper copy of a document that you have docketed in this case, click here: Judges' Copy Requirements. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge.

## U.S. District Court

## Northern District of Texas

### Notice of Electronic Filing

The following transaction was entered by Fleckman, Steven on 2/9/2015 at 4:00 PM CST and filed on 2/9/2015

| | |
|---|---|
| **Case Name:** | AutoOpt Networks Inc v. GTL USA Inc et al |
| **Case Number:** | 3:14-cv-01252-D |
| **Filer:** | GTL USA Inc |
| **Document Number:** | 137 |

**Docket Text:**
**NOTICE of *Letter re reorganization under Chapter 11 of the Bankruptcy Code* filed by GTL USA Inc (Fleckman, Steven)**

**3:14-cv-01252-D Notice has been electronically mailed to:**

Craig A Albert    calbert@cplalaw.com, fbshelby@cplalaw.com, jknott@cplalaw.com, jsheard@cplalaw.com, ksingapura@cplalaw.com, tdyer@cplalaw.com

Danielle Katharina Odom    dhatchitt@fleckman.com, fleckman@fleckman.com, jennings@fleckman.com, jmleak@fleckman.com, trroehr@fleckman.com, vrylander@fleckman.com

David H Harper    david.harper@haynesboone.com, laura.horton@haynesboone.com

Gary Martin Meyers    gmm@gmeyerslaw.com, gmeyers3@aol.com

Jason P Bloom     jason.bloom@haynesboone.com, pam.stromberg@haynesboone.com

Joseph M Leak     jmleak@fleckman.com, dhatchitt@fleckman.com, fleckman@fleckman.com, jennings@fleckman.com, trroehr@fleckman.com, vrylander@fleckman.com

Michelle C Jacobs     michelle.jacobs@haynesboone.com, laura.horton@haynesboone.com

Monica Wiseman Latin     mlatin@ccsb.com, tmapes@ccsb.com

Steven A Fleckman     fleckman@fleckman.com, dhatchitt@fleckman.com, jennings@fleckman.com, jmleak@fleckman.com, trroehr@fleckman.com, vrylander@fleckman.com

**3:14-cv-01252-D The CM/ECF system has NOT delivered notice electronically to the names listed below. The clerk's office will serve notice of court Orders and Judgments by mail as required by the federal rules. An attorney/pro se litigant is cautioned to carefully follow the federal rules (see FedRCivP 5) with regard to service of any document the attorney/pro se litigant has filed with the court. The clerk's office will not serve paper documents on behalf of an attorney/pro se litigant.**

Kartik R Singapura
Cherry Petersen Landry Albert LLP
8350 North Central Expressway
Suite 1500
Dallas, TX 75206

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1004035775 [Date=2/9/2015] [FileNumber=8247717-0]
[e6d83e19d4b748cef59630598d12f09d53140d6d6ce25683d31322a8e7b2840b5863
b6de12f5f385dc487adfdbd529fffd25c9fdc688558406557be6cfa415ad]]

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

If you need to know whether you must send the presiding judge a paper copy of a document that you have docketed in this case, click here: Judges' Copy Requirements. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge.

## U.S. District Court

### Northern District of Texas

## Notice of Electronic Filing

The following transaction was entered by Fleckman, Steven on 2/9/2015 at 4:03 PM CST and filed on 2/9/2015

| | |
|---|---|
| **Case Name:** | AutoOpt Networks Inc v. Nokia Networks Inc et al |
| **Case Number:** | 3:14-cv-04565-D |
| **Filer:** | GTL |
| **Document Number:** | 24 |

**Docket Text:**
**NOTICE of *letter re reorganization under Chapter 11 of the Bankruptcy Code* re: [23] Response/Objection, [22] Memorandum Opinion and Order filed by GTL (Fleckman, Steven)**

**3:14-cv-04565-D Notice has been electronically mailed to:**

Craig A Albert     calbert@cplalaw.com, fbshelby@cplalaw.com, jknott@cplalaw.com, jsheard@cplalaw.com, ksingapura@cplalaw.com, tdyer@cplalaw.com

Danielle Katharina Odom     dhatchitt@fleckman.com, fleckman@fleckman.com, jennings@fleckman.com, jmleak@fleckman.com, trroehr@fleckman.com, vrylander@fleckman.com

Joseph M Leak     jmleak@fleckman.com, dhatchitt@fleckman.com, fleckman@fleckman.com, jennings@fleckman.com, trroehr@fleckman.com, vrylander@fleckman.com

Steven A Fleckman      fleckman@fleckman.com, dhatchitt@fleckman.com,
jennings@fleckman.com, jmleak@fleckman.com, trroehr@fleckman.com,
vrylander@fleckman.com

**3:14-cv-04565-D The CM/ECF system has NOT delivered notice electronically to the names listed below. The clerk's office will serve notice of court Orders and Judgments by mail as required by the federal rules. An attorney/pro se litigant is cautioned to carefully follow the federal rules (see FedRCivP 5) with regard to service of any document the attorney/pro se litigant has filed with the court. The clerk's office will not serve paper documents on behalf of an attorney/pro se litigant.**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1004035775 [Date=2/9/2015] [FileNumber=8247742-0]
[e85199ef5c1c57cdbfa654dc856dc3d2305392490931bb025d834e0622a600f9dc52
5aceabbe7ed98f2dc230fa37209d78a5e2d2be4c2abc84a4fd0da405db9c]]

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

If you need to know whether you must send the presiding judge a paper copy of a document that you have docketed in this case, click here: Judges' Copy Requirements. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge.

**U.S. District Court**

**Northern District of Texas**

**Notice of Electronic Filing**

The following transaction was entered by Fleckman, Steven on 2/9/2015 at 4:15 PM CST and filed on 2/9/2015

| | |
|---|---|
| **Case Name:** | AutoOpt Networks Inc v. Nokia Networks Inc et al |
| **Case Number:** | 3:14-cv-04565-D |
| **Filer:** | GTL |
| **Document Number:** | 25 |

**Docket Text:**
**SUGGESTION OF BANKRUPTCY Upon the Record by GTL. (Fleckman, Steven)**

**3:14-cv-04565-D Notice has been electronically mailed to:**

Craig A Albert    calbert@cplalaw.com, fbshelby@cplalaw.com, jknott@cplalaw.com, jsheard@cplalaw.com, ksingapura@cplalaw.com, tdyer@cplalaw.com

Danielle Katharina Odom    dhatchitt@fleckman.com, fleckman@fleckman.com, jennings@fleckman.com, jmleak@fleckman.com, trroehr@fleckman.com, vrylander@fleckman.com

Joseph M Leak    jmleak@fleckman.com, dhatchitt@fleckman.com, fleckman@fleckman.com, jennings@fleckman.com, trroehr@fleckman.com, vrylander@fleckman.com

Steven A Fleckman    fleckman@fleckman.com, dhatchitt@fleckman.com,

jennings@fleckman.com, jmleak@fleckman.com, trroehr@fleckman.com,
vrylander@fleckman.com

**3:14-cv-04565-D The CM/ECF system has NOT delivered notice electronically to the names listed below. The clerk's office will serve notice of court Orders and Judgments by mail as required by the federal rules. An attorney/pro se litigant is cautioned to carefully follow the federal rules (see FedRCivP 5) with regard to service of any document the attorney/pro se litigant has filed with the court. The clerk's office will not serve paper documents on behalf of an attorney/pro se litigant.**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1004035775 [Date=2/9/2015] [FileNumber=8247847-0]
[a815cbc86d2e660d09a1e0ba8ddd6252629f1676dba9072380ea8bde42a0b72e8514
ebe4fa0044876542045e1b1c0a347b2c72d90611690caf0944020d5be067]]

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

If you need to know whether you must send the presiding judge a paper copy of a document that you have docketed in this case, click here: Judges' Copy Requirements. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge.

## U.S. District Court

### Northern District of Texas

### Notice of Electronic Filing

The following transaction was entered by Fleckman, Steven on 2/9/2015 at 4:19 PM CST and filed on 2/9/2015

| | |
|---|---|
| **Case Name:** | AutoOpt Networks Inc v. GTL USA Inc et al |
| **Case Number:** | 3:14-cv-01252-D |
| **Filer:** | GTL USA Inc |
| **Document Number:** | 138 |

**Docket Text:**
**SUGGESTION OF BANKRUPTCY Upon the Record by GTL USA Inc. (Fleckman, Steven)**

**3:14-cv-01252-D Notice has been electronically mailed to:**

Craig A Albert      calbert@cplalaw.com, fbshelby@cplalaw.com, jknott@cplalaw.com, jsheard@cplalaw.com, ksingapura@cplalaw.com, tdyer@cplalaw.com

Danielle Katharina Odom      dhatchitt@fleckman.com, fleckman@fleckman.com, jennings@fleckman.com, jmleak@fleckman.com, trroehr@fleckman.com, vrylander@fleckman.com

David H Harper      david.harper@haynesboone.com, laura.horton@haynesboone.com

Gary Martin Meyers      gmm@gmeyerslaw.com, gmeyers3@aol.com

Jason P Bloom       jason.bloom@haynesboone.com, pam.stromberg@haynesboone.com

Joseph M Leak       jmleak@fleckman.com, dhatchitt@fleckman.com, fleckman@fleckman.com,
jennings@fleckman.com, trroehr@fleckman.com, vrylander@fleckman.com

Michelle C Jacobs       michelle.jacobs@haynesboone.com, laura.horton@haynesboone.com

Monica Wiseman Latin       mlatin@ccsb.com, tmapes@ccsb.com

Steven A Fleckman       fleckman@fleckman.com, dhatchitt@fleckman.com,
jennings@fleckman.com, jmleak@fleckman.com, trroehr@fleckman.com,
vrylander@fleckman.com

**3:14-cv-01252-D The CM/ECF system has NOT delivered notice electronically to the names
listed below. The clerk's office will serve notice of court Orders and Judgments by mail as
required by the federal rules. An attorney/pro se litigant is cautioned to carefully follow the
federal rules (see FedRCivP 5) with regard to service of any document the attorney/pro se
litigant has filed with the court. The clerk's office will not serve paper documents on behalf
of an attorney/pro se litigant.**

Kartik R Singapura
Cherry Petersen Landry Albert LLP
8350 North Central Expressway
Suite 1500
Dallas, TX 75206

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1004035775 [Date=2/9/2015] [FileNumber=8247868-0]
[1b6575d2b806ac974603e2ead64572a30feccdd090dbeb98384ffbdec76b0d18a7a0
8370a90386df6b9d2bab1fd588748c2895a25544a1c437fbc902c91ad02d]]

**EXHIBIT D**

**LETTER FROM AUTOOPT TO ERICSSON**



# CHERRY PETERSEN LANDRY ALBERT LLP

Craig A. Albert
Direct Dial: (214) 265-7457
Email: calbert@cplalaw.com

February 9, 2015

***Via Email***
Mr. Ralf Mueller
Direct Services Procurement
Category Manager
Nokia Networks, Inc.
ralf.mueller@nsn.com

***Via CMRRR***
Nokia Solutions and Networks US LLC
Nokia Networks, Inc.
c/o National Registered Agents Inc.
1999 Bryan Street, Suite 900
Dallas, Texas 75201

Re: ***AutoOpt Networks, Inc. v. Nokia Networks, Inc., Nokia Solutions and Networks
US LLC, Ericsson, Inc., Citibank Texas N.A., In the United States District
Court, Dallas Division, Civil Action No. 3:14-CV-4565D.***

Dear Mr. Mueller:

Our firm represents AutoOpt Networks, Inc. in the above-styled pre-judgment
garnishment action against one of your clients, GTL USA, Inc. I am writing to inform Nokia
Solutions and Networks US LLC and Nokia Networks, Inc. (collectively "Nokia") that on
February 5, 2014, the court granted AutoOpt's application for pre-judgment writ of garnishment
against Nokia. Enclosed please find the file-stamped Order signed by United States District
Court Judge Sidney A. Fitzwater, granting AutoOpt's application for pre-judgment writs of
garnishment. The pre-judgment writs are to be issued as soon as the court determines an
appropriate bond amount for each party to post – presumably later this week.

In the interim, we respectfully request Nokia comply with all provisions under the
Uniform Fraudulent Transfer Act ("UFTA") regarding transfers of monies to GTL USA, Inc.

February 9, 2015
Page 2

      This letter will constitute a formal notice under UFTA. Pursuant to Section 24.009 of UFTA, should there be a violation of the Act, AutoOpt may take judgment against GTL USA, Inc. or Nokia.

      Should you have any questions concerning this letter, the attached order or our notice under the UFTA, please do not hesitate to contact me.

      Thank you in advance for your attention to this notice.

                   Sincerely,

                   CHERRY PETERSEN LANDRY ALBERT LLP

By: _____
                 Craig A. Albert

cc:  Steve Fleckman [fleckman@fleckman.com]
     Monica Latin [mlatin@ccsb.com]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AUTOOPT NETWORKS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:14-CV-4565-D |
| VS. | § | |
| | § | |
| NOKIA NETWORKS, INC., et al., | § | |
| | § | |
| Garnishees. | § | |

MEMORANDUM OPINION
AND ORDER

     Plaintiff AutOOpt Networks, Inc. ("AutOOpt") brings this ancillary action seeking prejudgment writs of garnishment arising from the approximately $3.2 million indebtedness of defendant GTL USA, Inc. ("GTL").[1]  For the reasons that follow, the court grants AutOOpt's application and directs the parties to make submissions concerning the amounts of the garnishment and replevy bonds.

I

    This action seeking prejudgment writs of garnishment is ancillary to a pending lawsuit brought by AutOOpt against GTL and other parties. *See AutoOpt Networks, Inc. v. GTL USA, Inc.*, No. 3:14-CV-1252-D (N.D. Tex. 2014) (Fitzwater, J.). AutOOpt requests that the court authorize the issuance of such writs to Nokia Networks, Inc., Nokia Solutions and Networks US LLC, Ericsson, Inc., and Citibank Texas, N.A.  AutOOpt filed the action on

---

    [1]In its papers, AutOOpt refers to GTL as the "debtor." *See* Compl. ¶ 1. The court uses the term "defendant," which is found in such rules as Tex. R. Civ. P. 658.

December 30, 2014 seeking emergency, *ex parte* relief.  The court concluded, however, that

GTL should be heard in opposition.   AutOOpt and GTL have both made multiple

submissions. The briefing and evidentiary submissions concluded on February 3, 2015 with

the filing of AutOOpt's final reply brief.[2]  The application is now ripe for decision.[3]

II

Under Fed. R. Civ. P. 64(a), every remedy for seizing property to secure satisfaction

of a potential judgment that is available under the law of the state where the federal court is

located (here, Texas law) is available in federal court, except to the extent a federal statute

governs.  Rule 64(b) provides that one of the available remedies is garnishment.

Tex. Civ. Prac. & Rem. Code Ann. § 63.001(2) (West 2008) provides, *inter alia*, that

a prejudgment writ of garnishment is available if

> a plaintiff sues for a debt and makes an affidavit stating that: (A)
> the debt is just, due, and unpaid; (B) within the plaintiff's
> knowledge, the defendant does not possess property in Texas
> subject to execution sufficient to satisfy the debt; and (C) the
> garnishment is not sought to injure the defendant or the
> garnishee[.]

*Id.*   Several Texas Rules of Civil Procedure govern the procedures for obtaining a

---

[2]AutOOpt also submitted a supplemental appendix in support of its final reply.  The
court's January 27, 2015 order granting AutOOpt leave to file a final reply brief did not
authorize it to file additional evidence.  The court therefore has not considered the appendix
in granting the application.

[3]As authorized by Fed. R. Civ. P. 43(c), the court is deciding AutOOpt's application
on the papers, without a live hearing. Because Tex. R. Civ. P. 658 permits a writ to be issued
after an *ex parte* hearing, it follows that state law imposes no impediment to the court's
reliance on this type of federal procedure.

prejudgment writ of garnishment. Under Tex. R. Civ. P. 658, an application (1) must be supported by affidavits of the plaintiff, its agent, its attorney, or other person having knowledge of relevant facts, (2) must comply with all statutory requirements, and (3) must state the grounds for issuing the writ and the specific facts relied upon by the plaintiff to warrant the required findings by the court. The application and any affidavits must be made on personal knowledge and set forth facts that would be admissible in evidence, provided that facts may be stated based on information and belief if the grounds of such belief are specifically stated. *Id.* And the court in its order granting the application must, *inter alia*, make specific findings of facts to support the statutory grounds found to exist, and specify the maximum value of property or indebtedness that may be garnished. *Id.*

### III

The court finds that AutOOpt has made the required statutory showing for obtaining the prejudgment writs of garnishment. AutOOpt is suing GTL to recover on a debt: GTL's failure to pay AutOOpt for services performed under contracts between AutOOpt and GTL. AutOOpt has provided the affidavit of Dipesh H. Shah ("Shah"), its President, averring that GTL's indebtedness to AutOOpt is just, due, and unpaid, Compl. Ex. A. ¶ 11; that within his personal knowledge, GTL does not possess property in Texas that is subject to execution sufficient to satisfy the debt, *id.* at ¶ 12; and (C) that the garnishment is not sought to injure GTL or the garnishees, *id.* at ¶ 15. Shah avers that the facts in his affidavit are based upon his personal knowledge. *Id.* at ¶ 2. Although in their briefing the parties dispute the merits of these assertions, Texas law provides for the application to be granted if the pertinent

- 3 -

statutory and procedural requirements are satisfied. While there must be strict compliance

with the statutory requirements, *In re Texas American Express, Inc.*, 190 S.W.3d 720, 725

(Tex. App. 2005, orig. proceeding), the requirements address such matters as the content and

form of the application and supporting affidavits rather than the merits themselves. Instead,

Tex. R. Civ. P. 664a, which addresses the proceedings for vacating, dissolving, or modifying

a writ that has been issued, focuses on the merits (providing, *inter alia*, that "[t]he writ shall

be dissolved unless, at such hearing, the plaintiff shall prove the grounds relied upon for its

issuance").[4]

The parties also dispute whether AutOOpt's claim is liquidated, as both sides

---

[4]GTL objects to AutOOpt's application on the basis that AutOOpt is relying on inadmissible hearsay or mere speculation. In particular, it objects to ¶¶ 12 (except for the last sentence) and 16-19 of Shah's affidavit, in which he offers evidence to support the assertion that GTL does not possess property in Texas that is subject to execution sufficient to satisfy the debt. *See* D. Jan. 12, 2015 Br. 2. GTL's objection, however, misapplies the Texas statute and applicable procedural rule.

Under Tex. Civ. Prac. & Rem. Code Ann. § 63.001(2), the plaintiff must make an affidavit that avers that, within the plaintiff's knowledge, the defendant does not possess property in Texas subject to execution sufficient to satisfy the debt. In other words, the affiant is not required to establish through affirmative proof that the defendant does not possess such property; instead, the affiant must aver that, within the plaintiff's knowledge, the defendant does not possess such property. The first sentence of ¶ 12 of Shah's affidavit satisfies the statutory requirement. He avers: "[w]ithin my knowledge that is based on multi-year business relationships with various officers, decision makers and board of directors of GTL, GTL does not possess property in Texas subject to execution that is sufficient to satisfy AutOOpt's claim." Compl. Ex. A. ¶ 12. Even if ¶¶ 16-19 of Shah's affidavit are excludable under Tex. R. Civ. P. 658 as inadmissible hearsay, they are merely surplusage so far as § 63.001(2)(B) is concerned. The question whether AutOOpt can prove the averment that GTL does not possess sufficient property in Texas does not come into play until GTL seeks to vacate, dissolve, or modify a writ that has been issued. *See* Tex. R. Civ. P. 664a.

- 4 -

acknowledge Texas law requires. Under Texas law, a claim is liquidated if "the demand of itself is capable of definite ascertainment at the time of the action." *Tarter v. Akin & McMullen, P.C.*, 1991 WL 284467, at *4 (Tex. App. Dec. 20, 1991, no writ). This means that the "demand is not contingent, is capable of ascertainment by the usual means of evidence, and does not rest in the discretion of the jury." *In re Tex. Am. Express*, 190 S.W.3d at 725. AutOOpt's claim is liquidated because, as Shah's affidavit shows, the terms and conditions of the contracts (including amendments) that form the basis for GTL's indebtedness explicitly state the amounts that are due and owing. Shah avers that, under those contracts, GLT owes AutOOpt a specific percentage of what GTL invoiced and received from its telecom clients. Compl. Ex. A ¶¶ 8-9. This indebtedness is not contingent, it is capable of ascertainment by the usual means of evidence, and it does not rest in the discretion of the jury.

Accordingly, because AutOOpt has satisfied the requirements of Texas law for obtaining prejudgment writs of garnishment, the court finds that the application should be granted, and that the maximum value of property or indebtedness that may be garnished is $3,246,407.02.[5]

---

[5]Although AutOOpt contends in its application that GTL remains delinquent in payments to AutOOpt in the amount of $3,246,470.02, Shah's affidavit states that GTL is delinquent in the sum of $3,246,407.02.

IV

Tex. R. Civ. P. 658a provides, in relevant part, that a prejudgment writ of garnishment shall not issue until the applicant has filed a bond payable to the defendant, in an amount fixed by court order, "conditioned that the plaintiff will prosecute his suit to effect and pay to the extent of the penal amount of the bond all damages and costs as may be adjudged against him for wrongfully suing out such writ of garnishment." Tex. R. Civ. P. 658 states, in relevant part, that the order granting the prejudgment writ of garnishment must specify the amount of bond required of the plaintiff, and that the bond "shall be in an amount which, in the opinion of the court, shall adequately compensate defendant in the event plaintiff fails to prosecute his suit to effect, and pay all damages and costs as shall be adjudged against him for wrongfully suing out the writ of garnishment." The court must also find in its order the amount of the defendant's replevy bond, which is equal to the amount of the plaintiff's claim, one year's accrual of interest if allowed by law, and the estimated costs of court.

In its moving papers, AutOOpt has not adequately addressed what it maintains should be the bond amounts. In a footnote in its January 12, 2015 response, GTL complains that AutOOpt has not offered to post a bond, and it argues that no bond would be adequate. D. Jan. 12, 2015 Br. 9 n.3. The briefing is otherwise unhelpful regarding computing the bond amounts.

The court therefore directs that AutOOpt file with the court a submission that states the proposed amounts of the garnishment and replevy bonds and the rationale for the amounts proposed. No later than 4:00 p.m. on the business day after this submission is filed,

- 6 -

GTL must file any opposition response that proposes alternate amounts and the rationale for the amounts proposed.[6] AutOOpt must also promptly submit to the court any other papers that it considers necessary for the court to enter or sign before the writs can be issued and served. These papers may be submitted electronically, and should be in Word or WordPerfect format insofar as possible.

*   *   *

Accordingly, the court grants AutOOpt's December 30, 2014 application for writs of prejudgment garnishment for the reasons, and to the extent, set forth in this memorandum opinion and order.

**SO ORDERED**.

February 5, 2015.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[6]The requirement of a response is not intended to deprive GTL of its rights under Tex. R. Civ. P. 658a for relief related to the amount of the garnishment order bond.

**EXHIBIT E**

**INQUIRY FROM DEBTOR EMPLOYEE**



**From:** Sudeep Vinherkar <sudeep.vinherkar@gtlamericas.com>
**Date:** Monday, March 9, 2015 at 2:39 PM
**To:** Urmeet Junja <urmeet.juneja@gtlamericas.com>
**Subject:** Nokia Contract

Dear Sir,

I received a call from Ali Saheen today afternoon inquiring about the end of contract between Nokia and GTL,as per the update received from him he stated that on Friday i.e. 6th Mar Nokia has finished the contract with GTL.

Sir can you please confirm if the above is True or not.

Thanks in advance,
Regards,
Sudeep

Disclaimer:- This e-mail message may contain confidential,proprietary or legally privileged information and is intended only for the individual name addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmissions cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of the message,which arise as result of e-mail transmission.

**EXHIBIT F**

**FITZWATER PROTECTIVE ORDER**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AUTOOPT NETWORKS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:14-CV-1252-D |
| VS. | § | |
| | § | |
| GTL USA, INC., et al. | § | |
| | § | |
| Defendants. | § | |

## AGREED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

Unless this order includes a clause that explicitly states that a particular local civil rule is modified as applied to this case, nothing in this order shall be construed to modify the provisions, operation, or effect of any local civil rule of this court. Notwithstanding any other clause to the contrary, this order cannot be modified except by court order. [Added by the court.]

The parties must not unreasonably file under seal pleadings, motions, or other papers that do not qualify under this protective order for filing under seal. For example, if a party files a 50 page appendix entirely under seal when only a small percentage of the pages qualify under this protective order for filing under seal, the party has probably unreasonably filed the entire appendix under seal. Instead, the parties must attempt to file unsealed as much of a pleading, motion, or other paper as they reasonably can without undermining the protections conferred by this protective order. [Added by the court.]

WHEREAS all parties of record, by their counsel, as evidenced from their respective signatures below, desire to enter into an agreement pursuant to Federal Rule of Civil Procedure 26 relating to the confidentiality of documents and other information (collectively

"Information") that may be disclosed, produced, or submitted in connection with this action:

NOW, THEREFORE, the parties agree as follows:

1.     This Agreed Confidentiality Agreement and Protective Order ("Order") governs all Information disclosed, produced, or submitted by any party to any other party in connection with this action and designated by a party as either "Confidential" or "Attorneys' Eyes Only," in accordance with this Order.  Unless otherwise ordered for good cause shown, all Confidential Information (as defined below) may be used solely for purposes of this litigation, and disclosure is limited as indicated below.  This Order also applies to parties who may appear or be joined in this action at any time after the date this Order is entered.

2.     This Order is entered for purposes of this action and shall remain in full force and effect unless modified by an order of the Court or by written agreement of the parties.  This Order will not be used in any manner or form, directly or indirectly, as evidence in any trial or any hearing to support the proposition that any party concedes that any Information is proprietary or confidential.  The Order may be used and referenced at any hearing which involves issues related to the enforcement of any provision of this Order.  This Order is not confidential.

3.     "Confidential Information" shall mean all Information (1) designated as "Confidential" or "Attorneys' Eyes Only" in accordance with this Order, (2) which is produced or otherwise disclosed in connection with this action, including, but not limited to, the following materials or portions thereof so designated:  all documents and things and copies thereof; written discovery requests and responses thereto; and all testimony given in this action by witnesses, whether by deposition, at any hearing, or at trial, including all transcripts thereof.  "Confidential Information" includes confidential business, technical, or financial information and other information a party considers to be confidential or private.

4.     Information shall not be considered Confidential Information if it: (i) is public knowledge prior to its designation as Confidential; (ii) becomes public knowledge other than through disclosure in violation of this Order or through violation of another confidentiality agreement, duty or representation; or (iii) is approved for release by written authorization of the party who provided the Information (or, if provided by a third person, the party to whom such Information pertains), but only to the extent of the authorization.  A party shall have the right to withdraw or waive, in writing, any confidentiality designation made by such party at any time, by express written notice to the other parties.

5.     Unless otherwise ordered for good cause shown, no person (which term shall be deemed throughout this Order to include any natural person, entity, or association) shall use Confidential Information received from another party in any manner whatsoever except for use in this litigation, including discovery, motion practice, settlement negotiations, or in connection with other pre-trial proceedings, preparation for trial, trial, and any appeal of this action. Furthermore, no person shall give, show, disclose, make available, or communicate Confidential Information received from another party to any person not expressly authorized by this Order to receive such Confidential Information, except as provided in paragraph 21.

6.     Confidential Information in documentary or written form shall be designated as "Confidential" by marking each page of the document or writing containing Confidential Information as "CONFIDENTIAL" or by providing written notice to all parties receiving the documents or written materials identifying which portions thereof are designated as "Confidential."  If marked on a document, this designation shall be plainly legible on each page of each document, and may be made on the original document or copies thereof that are produced or exchanged.

7.      When Information is produced by a third party (such as pursuant to a subpoena) and a party to this lawsuit claims that the Information should be designated as Confidential or Attorneys' Eyes Only (as further discussed in the following paragraph), that party (the "Claiming Party") shall have a fair opportunity to have the Information designated and marked as Confidential or Attorneys' Eyes Only pursuant to this Order, provided that it gives prompt written notice to the other parties of its intention to do so upon learning of the nature of the Information being produced.  For seven (7) days after the Claiming Party receives copies of the Information (or such other period of time to which the parties may agree), such Information may only be disclosed to those persons to whom such Information may properly be disclosed pursuant to this Order (as "Confidential" or "Attorneys' Eyes Only," as the case may be),  to enable the Claiming Party to mark the Information appropriately in accordance with this Order and to notify the other parties in writing as to the specific pages (or portions) of the documents so marked.

8.      Confidential Information may be designated by a party as "Attorneys' Eyes Only" if such Information constitutes or discloses sensitive Information that may be harmful to a party's interests if disclosed to another party, including source code, source code documentation, financial information, trade secrets, sensitive proprietary information not relevant to this case, or other Information the parties agree in writing may be designated as "Attorneys' Eyes Only."[1] Information shall not be designated as Attorneys' Eyes Only unless heightened considerations of security and confidentiality apply.  A designation of "Attorneys' Eyes Only" indicates that it is "Confidential Information" that is highly restricted and may be disclosed only to the parties' counsel of record (i.e., any attorney who is shown to represent that party on the Pacer docket

---

[1]If a party wishes to designate only a portion of a document as "Attorneys' Eyes Only", that party must provide a redacted version of the document to all other parties so there is no question as to which information in the document is intended to be designated as "Attorneys' Eyes Only."

sheet for this case) and their internal support staff, other internal attorneys working on the matter, and outside document processing services, and the persons described in Sections 10(c), (e), (f), (g), (h) and (i). Subject thereto, such Attorneys' Eyes Only Information shall not be disclosed to the parties or to their employees and other representatives. The designation of information as "Attorneys' Eyes Only" shall be accomplished as provided herein for Confidential Information, except that the designation "Attorneys' Eyes Only" shall be used.

9.      A party may designate any portion(s) of a transcript of a deposition, hearing, or other proceeding, including exhibits, as Confidential Information or Attorneys' Eyes Only, by announcing on the record (i) before such proceeding commences, (ii) during the proceeding and before it is adjourned, or (iii) subject to the next sentence, within twenty (20) days following receipt of the transcript of such testimony, that such testimony is "Confidential" or "Attorneys' Eyes Only." If the circumstances are such that a delay of twenty (20) days would prejudice a party in connection with the use of evidence, that party may sooner request in writing that another party confirm whether it intends to designate any portions of the transcript as "Attorneys' Eyes Only," and if so, such portions shall be so designated as soon as practicable, but not more than five (5) business days after the later of (i) the transcript becoming available to such party, and (ii) receipt of such request. If requested prior to preparation of the transcript, the question(s) and answer(s) designated by counsel as pertaining to Confidential Information, at the option of the designating party, may be transcribed separately from the remainder of the proceeding.

10.     Subject to the further limitations applicable to "Attorneys' Eyes Only" Information set forth in Section 8 above, Information designated as "Confidential" may not be disclosed to any person other than the following:

(a)     Counsel of record for the parties in the above-captioned action, including in-house counsel and other litigation counsel engaged in assisting counsel of record on this case and their secretaries, paralegals, and other support personnel involved in this litigation;

(b)     Up to six officers, directors, or employees of each party who need to have the Information disclosed to them in order to assist in evaluating and prosecuting or defending this litigation;

(c)     Litigation support personnel, outside experts, and consultants working with counsel of record, and each of their internal staff;

(d)     Witnesses at a deposition;

(e)     Witnesses at trial;

(f)     The Court, its staff, and jurors selected in this action including all appellate courts;

(g)     The author(s) or intended recipients (including copied and blind carbon copied recipients) of the original Information;

(h)     Mediators and/or facilitators mediating or facilitating a resolution of this action and their staff; and

(i)     Court reporters, videographers, and their staff.

11.     All persons to whom Confidential Information (including Attorneys' Eyes Only Information) is disclosed pursuant to this Order shall:

(a)     Be responsible for keeping such custody and control over such Confidential Information, and for exercising diligence to assure that it is not lost, misplaced, or inadvertently disclosed in violation of this Order;

(b)     Not reveal the contents of the Confidential Information to any person not authorized to receive such Confidential Information pursuant to the terms of this Order; and

(c)     Not reveal or use the contents of the Confidential Information except as permitted by this Order.

12.     Each person to whom Confidential Information is to be made available, except for the persons described in sections 10(a), (d), (e), (f), (g), (h) and (i), shall first acknowledge in writing that s/he has reviewed the terms of this Order and is subject to the limited jurisdiction of

this Court for purposes of enforcing this Order, by executing the form of Nondisclosure Agreement attached hereto as **Exhibit "A."** All persons, except for those described in sections 10(a), (f), and (g), shall be informed of the existence of this Order (whether or not required to sign the Nondisclosure Agreement), and the duties it imposes upon them.

13. If any party objects to a designation of any Information as "Confidential" or "Attorneys' Eyes Only" under this Order, the objecting party shall state the objection in writing to counsel for the party making the designation. If the parties are then unable to resolve the objection, the party challenging the designation may move the Court, at any time, for a determination as to whether the Information was improperly designated. However, the burden of persuasion for any designation shall be on the party making the designation. The designation shall continue to apply until the Court makes a ruling that the designation is inappropriate.

14. Any third party required to produce or disclose Information in this lawsuit may make a designation permitted by this Order as to such Information (or a party may make such designation), in the same manner as is described in paragraphs 6 and 8, and the procedure for objecting to such designation set forth in section 13 shall apply, provided that the third party shall be given prompt notice of any challenge, and afforded a fair opportunity to defend the designation.

15. Nothing in this Order precludes a party's counsel from discussing any Attorneys' Eyes Only Information in non-specific terms with his or her client or advising the client about the case, including issues related to settlement, but such counsel shall avoid disclosing the specific information designated as Attorneys' Eyes Only.

16. In the event that any party wishes to provide Confidential Information to a person not otherwise authorized to receive such Information hereunder, the party that wishes to disclose

the Confidential Information shall request permission of the designating party (or the designating third party) in writing and shall copy all other parties, and if permission is not granted, such requesting party may seek permission from the Court for good cause shown.

17.     Pursuant to Local Rule 79.3(b), all documents that contain or otherwise disclose Confidential Information are authorized to be filed under seal.   This Order satisfies the requirement for a motion and order permitting such Information to be filed under seal.  If a party files a document that contains or otherwise discloses Information that has been designated "Attorneys' Eyes Only," that party must promptly notify counsel for all other parties that the filing includes Information so designated.

18.     Whenever Confidential Information is disclosed in a deposition to a witness, the party making such disclosure shall inform the witness on the record that the use of such Information is subject to the terms of this Order, and binding on the witness.

19.     Counsel for any party may exclude from the room during a deposition, hearing, or other proceeding, any person (other than the witness who is then testifying) who is not entitled under this Order to receive the particular Confidential Information that is being discussed or disclosed.  This shall not apply to non-party experts or other persons who have agreed to abide by the terms of this Order by signing the Non-disclosure Form.   However, under no circumstances shall a party (including for corporate parties, their designated representative at trial) be required to be absent during any portion of the trial of this cause.

20.     The inadvertent or unintentional production or disclosure of materials containing confidential or secret information without being designated as Confidential Information at the time of the production or disclosure shall not be deemed to waive in whole or in part a party's claim of confidentiality or secrecy, either as to the specific materials produced or as to any other

materials relating thereto or on the same related subject matter.  Materials containing confidential or secret Information inadvertently or unintentionally produced without being designated as Confidential Information may be retroactively designated by notice in writing identifying the documents by Bates number or by other reasonable means; and the documents or materials shall be treated appropriately from the date written notice of the designation is received by the other party.  To the extent that, prior to such notice, a party receiving the Information may have disclosed it to persons other than those persons allowed to view such materials pursuant to this Order, the party shall not be deemed to have violated this Order, but the party shall make reasonable efforts to retrieve the Information promptly from such persons and to limit any further disclosure in accordance with the designation made pursuant to this Order.

21.    In the event any person bound by this Order receives a subpoena for Confidential Information from any third party or a request from any governmental or regulatory authority, the person receiving such subpoena or request shall promptly notify the party who disclosed such Confidential Information and all other parties to this action (but not later than five business days thereafter), and the party who designated such Confidential Information shall advise the person subject to the subpoena or request of any objections to disclosure.  If the designating party objects to the disclosure of the Confidential Information, that party may apply for an appropriate protective order, and the person subject to the subpoena or request shall provide reasonable cooperation to the designating party in connection with any hearing or ruling on such application, and shall not prematurely comply with the subpoena or request so as to impede the designating party's right to obtain such hearing, but shall not be penalized for timely complying with the subpoena or request if protection is not sooner granted to the challenging party.

22.    The procedure set forth herein shall not affect the rights of the parties to object to

discovery on any grounds, nor shall it relieve a party of the necessity of proper response or objection to discovery requests, nor shall it limit or preclude any party from seeking further relief or protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure or from applying to the Court for relief from or modifications to this Order.  Nor shall this Order affect: (i) the status of any information as a trade secret or as any other type of confidential or proprietary Information; (ii) any party's right to use the information that it designates as Confidential Information in its sole and complete discretion (provided that a designating party's knowing and voluntary disclosure of Confidential Information that is inconsistent with this Order shall be deemed to waive the designation); or (iii) any party's right in any proceeding to object to the admission of any evidence on any ground.

23.    The designation of Information as "Confidential" or "Attorneys' Eyes Only," or the lack of any such designation, or any lack of objection to such designation, will not be used in any manner to infer any admission as to the parties' position as to the merits of the case.

24.    The parties may, by further agreement, or by further order of the Court, make this Order more or less restrictive as to particular Information than as provided herein.

25.     Within sixty (60) days after the conclusion of this action, including appeals, all documents designated by the other party as containing Confidential Information under the terms of this Order shall be destroyed by the receiving party (and such party shall certify in writing to the designating party, the fact of such destruction) or delivered to counsel for the designating party, unless otherwise agreed in writing.  Notwithstanding the foregoing, the law firms representing the parties as trial or appellate counsel in this action shall not be required to remove from their files any summaries; memoranda; attorney work product; correspondence; transcripts or exhibits from any trial, deposition, or hearing; expert report; consultant or expert work

product; or pleadings or other filings (including exhibits to such pleadings and other filings); to remove, delete or alter any electronic databases; or to alter any "back-up tapes" or other electronic copies of data maintained by the law firms for use to retrieve electronic data, including those maintained for the purpose of a computer system failure or other loss of data; but such firms and their counsel shall otherwise exercise diligence to preserve the confidentiality of the Confidential Information pursuant to this Order.

26.     The confidentiality obligations of this Order shall remain in effect until the person who designated the Confidential Information agrees otherwise in writing or a court of competent jurisdiction otherwise directs.

**SO ORDERED**.

November 24, 2014.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

**AGREED AND APPROVED**:

/s/ *David H. Harper*
David H. Harper
State Bar No. 09025540
*david.harper@haynesboone.com*
Jason P. Bloom
State Bar No. 24045511
*jason.bloom@haynesboone.com*
Michelle C. Jacobs
State Bar No. 24069984
*michelle.jacobs@haynesboone.com*
HAYNES AND BOONE, L.L.P.
One Victory Park
2323 Victory Avenue
Dallas, Texas 75219
Telephone: [214] 651.5000
Telecopier: [214] 651.5940

Craig A. Albert
Texas Bar No. 00790076
calbert@cplalaw.com
CHERRY PETERSEN LANDRY ALBERT LLP
8350 North Central Expressway, Suite 150
Dallas, TX 75206
Telephone:  [214] 265.7007
Facsimile:  [214] 265.7008

John D. Murray, Esq.
MURRAY & MURRAY
*jmurrayesq@gmail.com*
1247 Sussex Turnpike
Suite 220
Randolph, New Jersey 07869
Telephone: [973] 895.6080
Telecopier: [973] 895.5506

**ATTORNEYS FOR PLAINTIFF
AUTOOPT NETWORKS, INC.**

/s/ Steven A. Fleckman
Steven A. Fleckman
State Bar No. 07118300
*fleckman@fleckman.com*
Joseph M. Leak
State Bar No. 24070115
*jmleak@fleckman.com*

FLECKMAN & McGLYNN, PLLC
515 Congress Avenue, Suite 515
Austin, Texas  78701
Telephone: [512] 476.7900
Telecopier: [512] 476.7644

ATTORNEYS FOR DEFENDANTS

OF COUNSEL TO DEFENDANTS:

Monica W. Latin
State Bar No. 00787881
*MLatin@CCSB.com*
Carrington, Coleman, Sloman & Blumenthal
901 Main Street #5500
Dallas, Texas 75202
Telephone: [214] 855.3000
Telecopier: [214] 855.1333

**EXHIBIT "A"**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

AUTOOPT NETWORKS, INC.       §
                             §
            Plaintiff,        §
                             §        Civil Action No. 3:14-CV-1252-D
VS.                          §
                             §
GTL USA, INC., et al.        §
                             §
            Defendants.       §

**NONDISCLOSURE AGREEMENT**

     I have read the Confidentiality Agreement and Protective Order ("Order") entered in the above-referenced lawsuit, and confirm that I understand its terms, and agree to be bound by such Order.  I shall not at any time use or disclose "Confidential Information" (as that term is defined in the Order) received by me during this lawsuit except as allowed by the Order for purposes of the lawsuit, or as otherwise required or allowed by the Court.

Dated: _____, 201__.

_____
[Print Full Name]

_____
[Signature]