# THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| GTL (USA), INC. | § | CASE NO. 15-40248 |
| | § | |
| Debtor. | § | |
| | § | |

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS' EMERGENCY MOTION TO COMPEL PRODUCTION

The Official Committee of Unsecured Creditors hereby files this *Emergency Motion to Compel Production* (the "Motion to Compel Production") and in support thereof respectfully states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion to Compel Production pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this case and this proceeding is in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

2. On February 9, 2015 (the "Petition Date"), GTL (USA), Inc. (the "Debtor") filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. The Debtor continues to operate its business as debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee or examiner has been appointed.

4. On March 2, 2015, the Debtor filed its *Emergency Motion for Authority to Obtain Credit Secured by Cash Deposits Under 11 U.S.C. § 364(c)(2)* [Doc. No. 28] (the "Motion to Obtain Credit"). By the Motion to Obtain Credit, the Debtor seeks to incur credit up to $300,000

for expenses allegedly necessary to allow its service technicians and drivers to continue to operate.

5. On March 5, 2015, AutOOpt Networks, Inc. ("AutOOpt") filed a limited objection to the Motion to Obtain Credit [Doc. No. 34] (the "AutOOpt Objection").

6. Later on March 5, 2015, the Court held an emergency telephonic hearing on the Motion to Obtain Credit. The Court authorized interim relief such that the Debtor is authorized to obtain credit up to $175,000. The Court further advised that expedited discovery on the matter would be permitted and that the parties were expected to cooperate with respect to same.

7. On March 6, 2015, the United States Trustee for the Eastern District of Texas appointed the Official Committee of Unsecured Creditors (the "Committee").

8. On March 9, 2015, the Committee filed a joinder to AutOOpt Objection [Doc. No. 40] (the "Joinder").

9. On March 10, 2015, the Committee served on the Debtor a request for production of documents (the "Request for Production") and notices of deposition of the Debtor's Senior Vice President (Urmeet Juneja) and its Chief Financial Officer (Rajiv Kamat). The Committee's Request for Production sought production of documents at 9:30 a.m. on March 19, 2015. The notices of deposition sought to take the depositions of Mr. Juneja and Mr. Kamat on March 23 and 24 respectively.

10. Generally speaking, the Request for Production seeks documents and information related to the Debtor's current financial condition and its financial projections going forward. The Request for Production also seeks historical financial information for the purpose of comparing the Debtor's recent performance with performance at a similar time of the year in the past. This is especially important for a seasonal business, such as the Debtor's business.

11. Following service of the discovery, counsels for the Committee, AutOOpt, and the Debtor had extensive negotiations regarding issues of confidentiality with respect to any information produced by the Debtor to the Committee. Principally, these discussions related to the Debtor's concerns that Committee member AutOOpt would use the documents in some improper fashion.[1]

12. On February 24, 2015, the Debtor filed its Schedules [Doc. No. 21] and Statement of Financial Affairs [Doc. No. 22]. The Statement of Financial Affairs shows a 19% decrease in revenue over the past three years (from $21,297,684 to $17,169,431).

13. On March 11, 2015, the Debtor filed its *Motion for Order Pursuant to Sections 327(e), 328 and 105(a) of the Bankruptcy Code Authorizing Debtor to Employ Professionals Utilized in the Ordinary Course of Business* [Doc. No. 46] (the "Motion to Employ Ordinary Course Professionals").

14. On March 18, 2015, the Debtor filed the *Motion for Entry of Protective Order Regarding AutOOpt Networks, Inc.; Kunal Kapai; and the Official Committee of Unsecured Creditors* [Doc. No. 53] (the "Motion for Protective Order"), thus staying the Committee's Request for Production and deposition notices.

15. On March 20 2015, the Debtor filed its *Monthly Operating Report* [Doc. No. 58]. The Monthly Operating Report provided information regarding the Debtor's finances, on an accrual basis, for the month of February 2015. According to the Monthly Operating Report, the Debtor suffered a net loss in February of ($221,920).

---

[1] The Committee notes that the Debtor is also seeking discovery from AutOOpt and from the Debtor's former Chief Operating Officer Kunal Kapai. *See Motion for Order Directing 2004 Examination of Kunal Kapai* [Doc. No. 43] and *Motion for an Order Directing Rule 2004 Examination of Dipesh Shah as Representative of AutOOpt Networks, Inc.* [Doc. No. 49]

16.     During this time period, negotiations between counsel for the Committee and counsel for the Debtor continued regarding the production of documents.  Counsel for the Committee expressed its concern that the Committee had still not seen any background financial information, while counsel for the Debtor continued to insist that it could not provide such information to the Committee without potentially damaging the Debtor's business.  Because time was of the essence and as a short-term remedy to make at least some financial information available to review, counsel for the Committee agreed to enter into a confidentiality agreement whereby the Debtor provided initial financial documents to counsel for the Committee's sole review.  On March 25, 2015, counsel for the Committee and counsel for the Debtor executed a confidentiality agreement (the "Confidentiality Agreement") providing that certain documents would be produced to counsel for the Committee on the condition that counsel for the Committee agreed not to share or discuss such documents with anyone, including Committee members.

17.     Also on March 25, 2015, the Debtor served on the Committee objections to the Debtor's Request for Production (the "Discovery Objection").  The Discovery Objection included objections to every request made by the Debtor on various bases including alleged overly broad requests, ambiguity, and that the information requested is confidential and proprietary.  Further, the Discovery Objection stated that "[s]ubject to and without waiving the [Debtor's] objections, <u>the Debtor will produce responsive documents not subject to an applicable privilege upon the entry of an Approved Protective Order or approved confidentiality agreement</u>" (emphasis added).

18.     On March 25, 2015, following the execution of the Confidentiality Agreement, the Debtor produced certain documents to counsel for the Committee (the "First Production").  Because of the constraints under the Confidentiality Agreement, such documents will not be summarized here.

19. On March 30, 2015, the Court held a hearing on the Motion for Protective Order. At the hearing, the parties announced an agreement on the form of the protective order. On March 31, 2015, the Court entered the *Agreed Protective Order Among the Debtor, AutOOpt Networks, Inc.; Kunal Kapai; and the Official Committee of Unsecured Creditors* [Doc. No. 77] (the "Protective Order").

20. The Protective Order sets up a mechanism that the Debtor believed was necessary to protect itself from the Debtor's unproven allegations made against Committee member AutOOpt. These protections include different classes of documents (Confidential, Committee Eyes Only, and Attorneys' Eyes Only) and restrictions on parties-in-interest's ability to contact third parties "regarding" the Debtor. *See* Protective Order at ¶ 12.

21. Also at the March 30, 2015 hearing, the Court announced the continuance of the final hearing on the Motion to Obtain Credit to April 16, 2015 at 9:30 a.m. At the hearing, counsel for the Committee was very clear and forthright with the Court that, in conjunction with the Motion to Obtain Credit, the Committee intends to seek information from the Debtor related generally to the Debtor's expenditure of cash and how such expenditures compare to the Debtor's historical performance. In other words, characterizing the hearing on the Motion to Obtain Credit merely as a $125,000 issue is not correct. Rather, the true issue is whether the Debtor's cash expenditures are appropriate and sustainable, given the Debtor's recent poor financial performance and given the fact that on the Petition Date, the Debtor had sufficient cash and collectable receivables to pay the claims of almost every non-insider creditor.

22. On April 1, 2015, AutOOpt filed an objection to the Debtor's Motion to Employ Ordinary Course Professionals [Doc. No. 78]. On April 3, 2015, the Committee also filed an objection to the Debtor's Motion to Employ Ordinary Course Professionals [Doc. No. 83].

23. On April 2, 2015 (the "Second Document Production") and on April 4, 2015 (the "Third Document Production"), the Debtor produced additional documents to the Committee in response to the Committee's March 10, 2015 Request for Production. The First, Second, and Third Document Production shall be referred to collectively as the "Document Productions."

24. The Document Productions include some documents responsive to the Committee's Request for Production, including documents with a limited amount of financial information related to the Debtor. However, every document with any financial information (including tax returns and audited financial statements) have been designated by the Debtor as either "Committee Eyes Only" or "Attorneys' Eyes Only."

25. On April 2, 2015, immediately following the receipt of the Second Document Production, counsel for the Committee sent counsel for the Debtor an e-mail advising that the document designation with respect to basic financial information was inappropriate and prevented the Committee from being able to perform its duty to investigate the Debtor. Over the next several days, the parties discussed this issue at length.[2]

26. In the meantime, the Committee met to discuss how best to obtain and review the Debtor's financial information in both an expeditious and efficient manner. The Committee determined to hire a financial advisor to review documents and also to visit the Debtor's offices to discuss the Debtor's business operations and ask follow up questions. The financial advisor chosen by the Debtor is Richard Feferman of Corporate Recovery Associates, LLC. Because these matters are moving so quickly (the decision to hire Mr. Feferman was made by the Committee yesterday morning), Mr. Feferman has not yet had a chance to file an employment

---

[2] The Committee acknowledges the challenge to designation procedure set forth in paragraph 14 of the Protective Order. The Committee submits that the five business day objection period is not appropriate here, given the Court's prior ruling that expedited discovery on the Motion to Obtain Credit is authorized, and given that this matter must be addressed in time to go forward at the April 16 hearing.

application. However, the employment application will be filed as soon as possible and will set forth the reasoning for why the Committee believes that Mr. Feferman is an ideal choice for this case, on both a competency and (very importantly) a cost basis.

27. Counsel for the Committee has advised counsel for the Debtor that, at this point, depositions of Mr. Juneja and Mr. Kamat are not the best and most efficient manner of obtaining the financial information to which the Committee is entitled. Rather, the Committee has requested that Mr. Feferman meet with Mr. Juneja and Mr. Kamat.

28. Mr. Juneja and Mr. Kamat had been given notice of depositions to occur prior to the April 16 hearing on the Motion to Obtain Credit. Moreover, the Committee believes that the Debtor is generally in agreement that a visit by a financial advisor (who has agreed to an hourly rate significantly lower than Committee counsel's rate) would be a more efficient use of estate assets than depositions. Nevertheless, as of the filing of this Motion to Compel Production, the Debtor has refused to make time for Mr. Feferman's visit prior to the April 16 hearing.

29. Because time is absolutely of the essence on these matters, the Committee has filed this Motion to Compel Production and seeks to have it heard on an emergency basis.

## RELIEF REQUESTED AND BASIS THEREFOR

30. By this Motion to Compel Production, the Committee seeks production of the financial related documents to the full Committee and requests access by the Committee's financial advisor, pursuant to Bankruptcy Rule 7037(a)(1), made applicable to this matter under Bankruptcy Rule 9014(c). Such relief will require clarification regarding the Committee's right to investigate the finances of the Debtor. That right necessarily involves allowing Committee members to review financial information related to the Debtor. Such financial information would include tax returns, financial statements, and projections in both final and draft form, as applicable. The Debtor has taken the position that it must shield full access from the Committee to protect its business. The Committee takes the position that, as to financial documents and information, the Protective Order protections related to "Confidential" information and to the prohibition on contacts related to the Debtor in paragraph 12 of the Protective Order, provide all the protections to which the Debtor is reasonably entitled.

31. Because the parties cannot agree on these fundamental issues, the Committee seeks to put the matter before the Court.

32. In addition, as part of the Committee's right to investigate the Debtor, the Committee seeks an order requiring the Debtor to grant the Committee's financial advisor access to review financial documents and interview Debtor personnel at a time prior to the April 16 hearing. The Committee requires this information to be in a position to go forward on the issue of the Debtor's finances on April 16. The Committee acknowledges that the request for such access by a financial advisor was first made by the Committee to the Debtor very recently. However, the request was made as an alternative to the depositions, which the Debtor was well

aware needed to occur prior to April 16. If the Debtor was already required to make time for a deposition, it can make time for Mr. Feferman's visit as an alternative.

33. In addition, the Debtor has asked whether the Committee should retain Mr. Feferman, as opposed to perhaps a different financial advisor. The Debtor has also inquired whether Mr. Feferman's employment application should be approved prior to Mr. Feferman meeting with the Debtor and reviewing financial information. In response, Committee counsel and Mr. Feferman answered every question asked by Debtor's counsel regarding Mr. Feferman's qualifications and made Mr. Feferman available to Debtor's counsel for a telephonic interview. There is no requirement that a financial advisor's employment application be approved prior to the financial advisor beginning work. Notably, counsel for both the Debtor and the Committee performed significant amounts of work before their employment applications were approved. The reason was simple: waiting for an approval order made no sense when the work needed to get done.

34. As noted in the Committee's objection to the Debtor's Motion to Employ Ordinary Course Professionals, the Committee has been in existence for almost a month. During that time, the Debtor has treated the Committee as a litigation adversary, instead of the statutorily-designated representative of all the Debtor's creditors, entitled to detailed and comprehensive information related to the Debtor's operations. *See* 11 U.S.C. § 1103(c)(2) (including among the Committee's powers and duties the investigation of "acts, conduct, <u>assets, liabilities, and financial condition of the debtor</u>, the operation of the debtor's business and <u>the desirability of the continuance of such       business</u> . . . .") (emphasis added). This is an obligation recognized by courts from the earliest days of the modern Bankruptcy Code. *See, e.g., In BNR Industries, Inc.*, 42 B.R. 99, 101 (Bankr. N.D. Ill. 1984) ("[T]his statutory obligation to keep creditors and the

Court informed regarding the status of its business undergoing reorganization, is perhaps one of the most important fiduciary obligations placed upon the debtor in possession.").

35. Moreover, the Court has ruled that expedited discovery on the Motion to Obtain Credit is appropriate. To effectively conduct such discovery, the Committee requires full access to financial information and also requires the ability to have its financial advisor meet with Debtor personnel and ask critical follow up questions.

36. The Committee seeks to have this Motion to Compel Production heard on an emergency basis. As set forth herein and in the *Motion for Emergency Consideration of Official Committee of Unsecured Creditors' Motion to Compel Production*, the Committee took significant efforts to resolve these matters consensually prior to filing this Motion to Compel Production. However, every day that passes is another day that the Committee is not aware of the true and full nature of the Debtor's cash position. Thus, the Committee believes that going forward with the hearing on the Motion to Obtain Credit on April 16 hearing is critical. The Committee therefore needs to have this matter addressed and resolved in time for additional documents to be produced and for Mr. Feferman to visit the Debtor prior to April 16.

WHEREFORE, the Committee respectfully requests that the Court enter an order: (i) compelling the Debtor to provide the full Committee with access to financial documents and information of the Debtor under the Confidential-designated protections set forth in the Protective Order; (ii) compelling the Debtor to grant the Committee financial advisor access to the Debtor's offices prior to April 16 for the purposes of interviewing Debtor personnel and reviewing documents responsive to the matters set forth in the Committee's Request for Production; and (iii) granting such other and further relief to which the Committee is entitled.

Dated: April 8, 2015.   Respectfully submitted,

**KANE RUSSELL COLEMAN & LOGAN PC**

By: */s/ Jason B. Binford*
    Jason B. Binford
    State Bar No. 24045499

3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
Telephone - (214) 777-4200
Telecopier - (214) 777-4299
Email: jbinford@krcl.com; ecf@krcl.com

**ATTORNEYS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

# CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2015, a true and correct copy of the foregoing *Emergency Motion to Compel Production* has been served on all parties receiving ECF Notification at the date and time filed and on the parties listed below via e-mail or facsimile (where indicated) and via both e-mail and overnight delivery or hand delivery, as indicated below.

                                       */s/ Jason B. Binford*
                                       Jason B. Binford

| | |
|---|---|
| Timothy O'Neal<br>Office of the United States Trustee<br>110 N. College Ave., Suite 300<br>Tyler, TX 75702<br>Facsimile: (903) 590-1461<br>timothy.w.o'neal@usdoj.gov<br>*Via overnight delivery* | Lynnette Warman<br>Richard Grant<br>Culhane Meadows, PLLC<br>100 Crescent Court, Suite 700<br>Dallas, TX 76034<br>lwarman@culhanemeadows.com<br>rgrant@culhanemeadows.com<br>*Via hand delivery* |
| Howard Spector<br>Spector Johnson<br>12770 Coit Road<br>Dallas, TX 75251<br>hmspector@spectorjohnson.com<br>*Via Hand Delivery* | Craig Albert<br>Cherry Peterson Landry Albert LLP<br>8350 North Central Expressway, Suite 1500<br>Dallas, TX 75206<br>calbert@cplalaw.com<br>*Via Hand Delivery* |
| Michele Shriro<br>Singer & Levick, P.C.<br>16200 Addison Road, Suite 140<br>Addison, TX 75001<br>mshriro@singerlevick.com<br>*Via Hand Delivery* | Lee L. Cameron, Jr.<br>Wilson Elser Moskowitz Edelman & Dicker LLP<br>Bank of America Plaza<br>901 Main Street, Suite 4800<br>Dallas, TX 75202<br>lee.cameron@wilsonelser.com<br>*Via Hand Delivery* |