**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 15-40248-BR-11** |
| **GTL (USA), INC.,** | § | **Chapter 11** |
| | § | |
| Debtor. | § | |

**DEBTOR'S EXPEDITED MOTION FOR AN ORDER (I) APPROVING
SETTLEMENTS AND DISMISSAL OF THE CASE, OR, IN THE
ALTERNATIVE, (II) APPROVING PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL ASSETS, (A) APPROVAL OF BID PROCEDURES, (B)
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, (C) ESTABLISHING CURE
AMOUNTS, (D) APPROVING THE FORMS OF NOTICE, (E) SETTING
HEARING DATES AND (III) GRANTING RELATED RELIEF**

---

**NOTICE: NO HEARING WILL BE CONDUCTED ON THIS APPLICATION
UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF
THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE
PARTY FILING THIS PLEADING WITHIN <u>TWENTY-ONE (21) DAYS</u>
FROM DATE OF SERVICE UNLESS THE COURT SHORTENS OR
EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO
OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL
BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN
ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS
FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL
THEREAFTER SET A HEARING. IF YOU FAIL TO APPEAR AT THE
HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT
RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

---

TO THE HONORABLE BRENDA RHOADES,
UNITED STATES BANKRUPTCY JUDGE:

GTL (USA), Inc. (the "Debtor"), the above-captioned debtor and debtor-in-possession

(the "***Debtor***") in the above-captioned chapter 11 case (the "***Chapter 11 Case***"), hereby moves

this Court pursuant to sections 105(a), 305(a), 349, 363 and 365 of chapter 11 of title 11 of the

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II)
Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and
Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms
of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*        **Page 1**

United States Code, 11 U.S.C. §§ 101, et seq. (the "***Bankruptcy Code***") and Rules 1017(a),

9019, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"),

for an order (I) approving settlements and dismissal of the case, or, in the alternative, (II)

approving procedures for the sale of substantially all of Debtor's assets pursuant to section 363

of the Bankruptcy Code, (a) the approval of bid procedures, (b) the assumption and assignment

of certain executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy

Code, (c) the establishment of cure amounts (the "***Sale Procedures***"), (d) approving the forms of

notice, (e) setting hearing dates, and (III) granting related relief (the "***Motion***"). In support of this

Motion, the Debtor respectfully represent as follows:

## I.      BACKGROUND

### A.      The Chapter 11 Filing

1.      On February 9, 2015, (the "Petition Date"), the Debtor filed a voluntary petition

in this Court for relief under chapter 11 of title 11 of the United States Code 11 U.S.C. §§ 101 et

seq., as amended (the "Bankruptcy Code"). The Debtor continues to manage and operate its

business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.      A creditors' committee (the "Committee") was appointed in these chapter 11 case

by the United States Trustee and is represented by counsel.

3.      The Debtor has no secured creditors with material claims.  The total of unsecured

claims Scheduled against the Debtor in the case is approximately $15,724,000.  The total of non-

insider unsecured claims is $7,224,000-$7,600,000, while insider claims (as described more fully

below) total approximately $8,500,000.

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II)
Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and
Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms
of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                                    *Page 2*

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.      The filing was precipitated by an adverse ruling on a garnishment motion in a contract dispute pending in the U.S. District Court in Dallas, Texas.

6.      The statutory predicates for the relief requested herein are sections 105(a), 305(a), 349, 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 1017(a), 9019, 2002, 6004 and 6006.

## II.     SETTLEMENT AND DISMISSAL OF THE CASE

### A.     Settlement and Dismissal Proposal

7.      Since the Petition Date, the Debtor has continued to operate and generate sales, met its post-petition obligations, filed its monthly operating reports, and initiated significant litigation to resolve various claims.  In addition, on June 8, 2015 the Debtor filed a plan of reorganization (the "Plan"), which remains pending.  The Plan provides for the continued operation of the business with post-petition funding to be provided, on an as needed basis, from the Debtor's parent, GTL International ("GTLI") and/or GTL, LTD ("GTLL"), the ultimate parent (together the "Parents").

8.      After the Plan was filed, the Parents advised the Debtor that, due to their economic circumstances, they could not provide post-confirmation financing to the Debtor on the terms and conditions previously proposed.

9.      On June 23, 2015 the Debtor received a proposal from Emirates International Holding Limited LLC ("EIHL") which proposes to settle various causes of action, provide substantial recovery to creditors of the estate, and culminate in the structured dismissal of this

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II)
Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and
Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms
of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                                    **Page 3**

case. EIHL's proposal was the result of efforts by GTLL, which began prior to the Petition Date, to secure a purchaser for certain of its international operations. In its initial offer EIHL proposed to provide funds, which, when combined with the Debtor's cash on hand at closing, would have resulted in the distribution of $3,880,000 to non-insider unsecured creditors, representing a return of at least 54%, as calculated by the Debtor, based upon the face amount of claims as reflected on the Debtor's schedules and proofs of claim filed in the case. The return could be approximately 50%, depending upon the ultimate resolution of claims. EIHL also proposed to purchase the unsecured claims of the Parents and the stock of the Debtor for $2.7 million, payable one year after the closing, provide a new loan to the Debtor to fund payments to non-insider creditors of $1.35 million, and provide $2.5 million in working capital for the Debtor post-closing, for a total purchase value of $6.55 million.

10.     After review and negotiations by the Committee, EIHL agreed to increase the funding it would provide to increase the amount available to pay unsecured non-insider creditors to $4.1 million, which represents a return of approximately 57% to non-insider creditors, calculated by the Debtor based upon the face amount of claims as reflected on the Debtor's schedules and proofs of claim filed in the case. The return could be approximately 54%, depending upon the ultimate resolution of claims. Under the revised terms, EIHL would provide a new loan in the amount of $2.5 million to fund payments to creditors, pay $2.7 million to the Parents to purchase the stock of the Debtor and the Parents' unsecured claims, payable one year after closing, and provide a working capital line in the amount of $1.5 million, for a total purchase value of $6.7 million.

11.     A critical part of the Settlement and Dismissal Proposal is the settlement with the Parents and Related Parties as discussed further below. If the unsecured claims of the Parents

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                    **Page 4**

($8.5 million) were to be paid on par with the non-insider creditor claims, rather than being paid

pursuant to the proposed settlement, the distribution percentage for all creditors would drop to an

estimated return of 26%, a dramatic decrease from the projected 57% return that would be

enjoyed by the non-insider creditors if their claims were to be allowed for distribution purposes

at their face value.

12.    The Debtor projects that the actual return to non-insider creditors, if this proposal

is approved on the timeline proposed herein, and certain claims are reduced as appropriate, could

be as high as 60%.  In contrast, in a liquidating plan, a chapter 7 liquidation or a sale of assets,

the return to creditors would likely fall to about 13%.  The key differentials under the Settlement

and Dismissal Proposal are the funds to be provided by EIHL and the deferral of payment to the

Parents, without further litigation cost or delay.  Notably, the return to the Parents under the

terms of the Settlement and Dismissal Proposal is less than 25%.

13.    True and correct copies of the initial proposal from EIHL and subsequent

amendments reflecting the additional amounts to be paid to unsecured creditors (together, the

"Settlement and Dismissal Proposal" or simply, the "Offer") are attached hereto as Exhibit A and

incorporated herein by this reference.

14.    The Committee has indicated that it will support the Settlement and Dismissal

Proposal.

15.    The Debtor believes that the best way to maximize the value of its estate for the

benefit of its creditors is to preserve the going concern value of the Debtor's business by

obtaining approval for and implementing the terms of the Settlement and Dismissal Proposal.

Pursuant to the terms of the Settlement and Dismissal Proposal, EIHL would (a) purchase from

GTLI and GTLL, the outstanding stock of the Debtor and the debt obligations owed by the

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II)
Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and
Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms
of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                    *Page 5*

Debtor to them, (b) fund the cash distribution to non-insider unsecured creditors described above; (c) fund working capital needs post-dismissal and (d) settle and release various pending claims and counterclaims regarding GTLI and GTLL.  The distribution would be funded by an initial loan to the Debtor which, when combined with the estimated cash on hand of the Debtor as of July 31, 2015, would allow a payout to unsecured creditors, excluding the unsecured claims of the Parents, of up to $4.1 million in cash after the payment of all administrative claims as of the date of closing.  In addition, any payment by the Debtor with respect to the debts owed to GTLI and GTLL would be deferred until 2016, well after the proceeds of the Settlement and Dismissal Proposal are distributed to the non-insider unsecured creditors of the estate and this case is dismissed.

16.     The Settlement and Dismissal Proposal requires the release by all creditors of any claims that could be asserted against the Debtor, the Parents and the Released Parties as a condition of closing and the receipt of distributions by creditors.

17.     The Settlement and Dismissal Proposal further contemplates that once the transactions contemplated in the Offer are completed, and all relevant court approval is obtained, the proceeds would be distributed to non-insider creditors and the case would be dismissed, with all prior orders of this Court remaining in full force and effect.

18.     Both the Debtor and the Committee have conducted a review and analysis of the unsecured claims asserted by the Parents against the Debtor, and potential claims and counterclaims that could be asserted against them by the Debtor.  As set forth in the Debtor's Disclosure Statement, filed on June 8, 2015, the Committee believes that the unsecured claims of GTLI and GTLL may be susceptible to a proceeding to subordinate or recharacterize them as equity contributions.  The Debtor has concluded that the claims of the Parents should be treated

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*          **Page 6**

as unsecured claims on par with other unsecured claims of the estate, and are not likely susceptible to a successful challenge.

19.     However, given the magnitude of the impact on the return to non-insider unsecured claims if the Parents receive an immediate distribution from the Settlement and Dismissal Proposal on par with them, and to save all parties the cost and delay of protracted litigation, the terms of the Settlement and Dismissal Proposal provide for deferral of the distribution on their claims to provide a more substantial return to the non-insider creditors. This agreement would save all parties from the uncertainties, delay and cost inherent in litigating the issues.

20.     The deferral of the payment to the Parents of their $8.5 million in unsecured claims, as contemplated in the Settlement and Dismissal Proposal, without further cost to the estate, thus provides a significant benefit to the estate and allows the non-insider claimants a larger recovery unburdened by the costs of litigation that would otherwise have been necessary. Accordingly, the Debtor seeks authority under Bankruptcy Rule 9019 from this Court to settle any dispute regarding the subordination or recharacterization of the unsecured claims of GTLI and GTLL by deferring their payment pursuant to the terms of the Offer.

21.     The Debtor has also conducted an analysis to determine whether there are potential causes of action against the Parents, as well as against all related officers and directors (the "Related Parties") based upon various causes of action commonly referred to as Chapter 5 causes of action, such as fraudulent transfer, tortious interference, constructive trust, injunctive relief and similar claims. In the Debtor's view, there is no legal or factual basis for the assertion of such claims or the recovery of money from the Parents or the Related Parties. Moreover, any judgment against the Parents would face uncertain recovery due to a Credit Debt Restructuring

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                                    **Page 7**

currently pending against GTLL in India due to its defaults on various secured debt.  In other

words, any judgement would likely have to "get in line" behind secured creditors. The sole basis

of such claims would be tied to the negotiations and payment of the unsecured claims of the

Parents.  To the extent such claims were to be pursued, the Debtor believes that any recovery on

such claim would likely be limited to the remedy of subordination or recharacterization of the

claims, rather than any affirmative monetary recovery.  Therefore, the Debtor believes that the

deferral of the Parents' $8.5 million in unsecured claims in the Settlement and Dismissal

Proposal, which is not available to creditors under any other alternative option, and which frees

up the Debtor's and EIHL's cash for immediate distribution to the non-insider creditors, without

the expenditure of any further legal costs, is a fair and equitable settlement of any claims which

could be asserted against the Parents or Related Parties.

22.    The Debtor respectfully requests the entry of an order approving the EIHL

transaction in substantially the form attached hereto as **Exhibit B**.

## III.    ALTERNATIVELY, SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTOR

23.    In the alternative, should the Debtor be unable to obtain approval of the

Settlement and Dismissal Proposal, the Debtor, will subsequently pursue the sale of substantially

all of the Debtor's assets as a going concern through an auction process (the "Sale") subject to

the approval of the lenders of GTLL and GTLI.   Currently there is no agreement to the Sale by

the Parents, nor is there any indication that they will support the Sale or agree to reduce their

claims or defer any distribution.

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                    *Page 8*

24.     At the Sale Procedures Hearing, the Debtor will seek to implement a formal auction and bidding process for the Assets (the "Auction") pursuant to the Bidding Procedures attached hereto as **Exhibit C**.

25.     As described more fully below, the Debtor will provide notice of the Auction and Sale (the "Sale Notice") to any parties who have previously expressed an interest in the Assets or who may be interested in purchasing the Assets.  A true and correct copy of the Proposed Sale Notice is attached hereto as **Exhibit D**.

26.     The Debtor requests that the Court set Thursday, August 6, 2015 at noon, prevailing central time, as the deadline (the "Bid Deadline") by which a bid for the Assets must be submitted in writing to the Bid Notice Parties referenced in paragraph 31 below.

27.     Additionally, the Debtor requests that Friday, August 7, 2015 be set as the date for the Auction (the "Auction Date'") with such Auction to occur at the offices of Michelle E. Shriro, SINGER & LEVICK, 16200 Addison Road, Suite 140, Addison, Texas 75001, beginning at 10:00 a.m.

28.     A hearing to approve a sale (the "Sale Hearing") pursuant to such Auction shall be held not more than three (3) business days following the Auction Date. A proposed order approving the terms of the Sale and the Notice of Sale is attached hereto as **Exhibit E**.

29.     The Bid Procedures are as set forth on Exhibit B[1]. Generally, the Debtor shall be represented by Urmeet Juneja, an SVP of the Debtor, and by Bridgepoint Consulting, the Debtor's financial advisor, for all purposes in evaluating bids and in making decisions in the course of the auction process. The Debtor, in consultation with the Committee, will consider bids

---

[1] The Bid Procedures are generally described in the Motion.  In the event of any conflict between the summary and the Bid Procedures, the terms of the Bid Procedures attached as Exhibit B shall govern.

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                    *Page 9*

from interested parties pursuant to the Auction process, provided that any such bid is: (i) received by the Auction Bid Deadline; (ii) delivered in writing to the Bid Notice Parties referenced in paragraph 31 below, (iii) is accompanied by an executed copy of a binding Purchase Agreement, (iv) indicates the amount of cash and other consideration the party is willing to pay for the Assets; (v) includes written evidence of available cash or a commitment for financing and such other evidence of ability to consummate the transaction as the Debtor in consultation with the Committee may request; (vi) describes the Assets to be purchased; (vii) includes a copy of a board resolution or similar document demonstrating the authority of the bidding party to make a binding and irrevocable bid on the terms proposed; (viii) is not conditional on the outcome of any unperformed due diligence, the receipt of equity or debt financing, or the approval of any Board of Directors, shareholder, or other corporate approval; (ix) includes any pertinent factual information regarding the proposed bidder's operations that would assist the Debtor and the Committee's analysis of issues (if any) arising with respect to any regulatory or statutory issues; (x) includes evidence regarding ability to adequately perform the terms of any Executory Contract (as defined below) sought to be assumed or assigned; (xi) is reasonably likely to close no later than August 5, 2015; and (xii) includes a deposit as described in the Bid Procedures (collectively and as described in more detail in the Bid Procedures, a "Qualified Bid").

30.     Each offer, solicitation or proposal (a "Bid") from a Potential Bidder or Potential Bidders Group, as the case may be, must be in writing and must be received via electronic mail by (a) the Debtor's counsel, Richard G. Grant, CULHANE MEADOWS, PLLC, 100 Crescent Court, Suite 700, Dallas, Texas 75201 (email: rgrant@culhanemeadows.com); (b) counsel to the Official Committee of Unsecured Creditors (the "UCC"), Jason B. Binford, KANE RUSSELL

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                                                                 *Page 10*

COLEMAN & LOGAN, PC, 3700 Thanksgiving Tower, 1601 Elm Street, Dallas, Texas

75201(email: jbinford@krcl.com); and (c) counsel for GTL International, Ltd., Michelle E.

Shriro, SINGER & LEVICK, 16200 Addison Road, Suite 140, Addison, Texas 75001

(mshriro@singerlevick.com ) (collectively, the "Bid Notice Parties"), on or before **noon**

**(prevailing Central time) on August 6, 2015** (the "Bid Deadline"). As detailed in

subparagraphs A through C below, a Potential Bidder or Potential Bidders Group, as the case

may be, that submits a Bid on or before the Bid Deadline that includes an executed mark-up of

the Purchase Agreement (as defined below), and a Deposit (as defined below), shall be deemed

an "Acceptable Potential Bidder."

31.     Any overbids shall be made in overbid increments of at least $100,000 greater

than the Best Qualified Bid.

32.     Furthermore, in connection with the Sale, the Debtor will also seek to assume and

assign certain of the Debtor's executory contracts and unexpired leases (collectively, the

"Executory Contracts"). The Buyer will cure all monetary defaults under such Executory

Contracts to the extent required by Section 365(b) of the Bankruptcy Code.

33.     The Debtor proposes to sell the Assets on a going concern basis, in accordance

with section 363(b) of the Bankruptcy Code, free and clear of all liens, claims and encumbrances

in accordance with an asset purchase agreement (the "Purchase Agreement") to be proposed by

the Qualified Bidder.  The Purchase Agreement shall describe the assets to be purchased and

may be some or all of the Debtor's right, title and interest in all of the Debtor's properties and

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II)
Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and
Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms
of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                                            *Page 11*

assets of every kind and description, tangible or intangible and wherever located, except for the

Retained Assets, including the following:

(a)     All tangible personal property of the Debtor's business (the "<u>Business</u>"), wherever located, including, but not limited to, all machinery, equipment, tools, fixtures, parts, supplies, furniture, furnishings, motor vehicles, Inventory and computers, including the tangible personal property;

(b)     All leased real property which is listed on **Schedule A**;

(c)     Any transferrable rights of the Debtor in intellectual property;

(d)     All of the customer contracts listed on **Schedule B** and all rights of any kind relating thereto including rights to payments thereunder (the "<u>Customer Contracts</u>");

(e)     All of the vendor contracts listed on **Schedule C** and all rights of any kind relating thereto (the "<u>Vendor Contracts</u>");

(f)     All contracts listed on **Schedule D** and all rights of any kind relating thereto (the "<u>Other Contracts</u>");

(g)     All transferrable permits, but only to the extent such permits may be transferred under applicable law;

(h)     All of the Debtor's rights under warranties, indemnities and all similar rights against third parties to the extent related to any Purchased Assets;

(i)     All prepaid expenses, credits, advance payments, security, deposits, charges, sums and to the extent related to any Purchased Assets;

(j)     Originals, or where not available, copies, of all books and records, including books of account, ledgers and general, financial and accounting records, machinery and equipment maintenance files, customer lists, customer purchasing histories, price lists, distribution lists, supplier lists, production data, quality control records and procedures, customer complaints and inquiry files, research and development files, records and data (including all correspondence with any governmental authority), sales material and records, strategic plans, internal financial statements and marketing and promotional surveys, material and research, that relate to the Business or the Purchased Assets; and

(k)     All goodwill associated with any of the assets described in the foregoing

34.     <u>Retained Assets</u>. The Debtor shall not sell, convey, transfer, assign or deliver, and

the buyer of the Purchased Assets (the "<u>Buyer</u>") shall not purchase or acquire any assets of the

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                                          **Page 12**

Debtor other than the Purchased Assets. Without limiting the generality of the foregoing, the

Buyer shall not acquire any of the following assets (collectively, the "Retained Assets"):

a.        All cash, bank deposits, bank accounts, certificates of deposit, pre-paid amounts with third parties, vendor deposits, customer deposits, performance bonds and/or cash equivalents (including marketable securities and short term investments);

b.        All rights of the Debtor under this Agreement or contracts, if any, designated under the Purchase Agreement as retained by the Debtor (the "Retained Contracts");

c.        All insurance policies of the Debtor and all rights thereunder (including, without limitation, any and all insurance refunds or claims made under such policies relating to the Purchased Assets on or before the Sale Date (as defined below));

d.        All tax assets and attributes and all claims which the Debtor, any affiliate of the Debtor, or the Business may have, on or after the date hereof, against any governmental authority for refund or credit of any type with respect to taxes applicable to the Business for periods ending on or prior to the Sale Date, including, without limitation, any tax refund due to the Debtor with respect to periods ending prior to the Sale Date;

e.        The organizational documents, minute books, qualifications to conduct business as a foreign corporation, arrangements with registered agents relating to foreign qualifications, taxpayer and other identification numbers, seals, personnel records, stock records and tax returns of the Debtor and other similar books and records, financial records, books of account, bank and brokerage records and statements and any other books and records which the Debtor is prohibited from disclosing or transferring to Buyer under applicable law and is required by applicable law to retain;

f.        All rights to any action, suit or claim of any nature available to or being pursued by the Debtor, whether arising by way of counterclaim or otherwise;, including but not limited to (i) claims for breach of contract, tort, breach of fiduciary duty and (ii) all Debtor's claims or causes of action, including those under Sections 541, 542, 544, 545, 547, 548 and 549 (and, to the extent applicable for remedies, Sections 550 and 551) of the Bankruptcy Code; and

g.        The assets, properties and rights specifically set forth on **Schedule E**.

35.        Notwithstanding the foregoing, nothing in this Motion or the Bid Procedures shall

preclude the Debtor from authorizing the sale of certain Retained Assets to the Buyer in the

exercise of the Debtor's business judgment and upon approval of the Bankruptcy Court pursuant

to the terms of the Sale Order.

36.     Without any further order of the Bankruptcy Court, if for any reason the Successful Bidder fails to consummate the Sale within such time as is determined reasonable by the Debtor in its sole discretion after consultation with the Committee, the Backup Bidder will be deemed to have submitted the highest or best bid and the Debtor is authorized to effect the Sale to the Backup Bidder as soon as is commercially reasonable.

37.     Following the Sale, (i) if such failure to consummate the Sale is the result of a breach by the Successful Bidder or the Backup Bidder, the Successful Bidder or the Backup Bidder, as the case may be, shall be deemed to have forfeited its deposit and the Debtor additionally reserves the right to seek all available damages from any defaulting Bidder, and (ii) if such failure to consummate the Sale is the result of a breach by the Debtor, the Successful Bidder or Backup Bidder, as the case may be, shall have no recourse against the Debtor other than for recovery of its deposit.

## IV.    ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS

38.     As part of the Settlement and Dismissal Proposal, or, alternatively, as part of the Sale, the Debtor may seek authority to assume and assign certain Executory Contracts, as may be necessary to complete the transaction, and which the Debtor may assume and assign under applicable law.

39.     Not less than five (5) days before the Sale Hearing, the Debtor will file with the Court and serve on each party to an Executory Contract a notice setting forth the amount of cure owed thereunder according to the Debtor's books and records (the "Cure Notice"). The Cure Notice will state the amount that the Debtor believe is necessary to assume such contract or lease pursuant to section 365 of the Bankruptcy Code (the "Cure Amount"), and notify each party that such party's lease or contract may be assumed and assigned to the Buyer.

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief* **Page 14**

40.     The Cure Notice will require that any objection to the Cure Amount be filed on or before the date that is two (2) days before the Sale Hearing (the "Cure Objection Deadline"). The Cure Notice will also provide that any objection to the Cure Amount must state with specificity what cure the party to the Executory Contract believes is required with appropriate documentation in support thereof.  The Debtor requests that, if an objection is timely filed, the Court resolve any dispute regarding the amount of any disputed Cure Amount or objection to the assumption and assignment of an Executory Contract at the Sale Hearing. If no objection is timely received, the Debtor requests that the Cure Amount set forth in the Cure Notice be controlling notwithstanding anything to the contrary in any assumed contract or other document as of the date of the Cure Notice.

## V.     BASIS FOR RELIEF AND APPLICABLE AUTHORITY

### A.     Settlement of Claims

41.     Rule 9019 provides the basis for the approval of settlements in a bankruptcy proceeding, and states as follows:

> (a) Compromise. On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

42.     Rule 9019 is geared to "'prevent[ing] the making of concealed agreements which are unknown to the creditors and unevaluated by the court.'" *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 461 (2d Cir. 2007) (quoting *In re Masters, Inc.*, 141 B.R. 13, 16 (Bankr. E.D.N.Y. 1992)).

43.     A settlement should be approved under Rule 9019 if it is within a range of reasonableness, fair and equitable, and in the best interest of the bankruptcy estate. "In deciding

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*     **Page 15**

whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well

informed decision, comparing the terms of the compromise with the likely rewards of litigation."

*In re Cajun Elec. Power Co-op., Inc.,* 119 F.3d 349, 356 (5th Cir. 1997) (citations omitted); *see

also Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson*, 390

U.S. 414 (1968); *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293 (5th Cir.

1984); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599 (5th Cir. 1980).

44.    The Fifth Circuit has directed that, in determining whether to approve a proposed

settlement, a Bankruptcy Court must evaluate the following factors: (1) the probability of success

in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity

and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3)

all other factors bearing on the wisdom of the compromise. *In re Jackson Brewing Co.*, 624 F.2d

at 602. Under the third, catch-all provision, the Fifth Circuit has specified two additional factors.

First, the court should consider the best interests of the creditors, "with proper deference to their

reasonable views." *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1996). Second, the

court should consider "the extent to which the settlement is truly the product of arms-length

bargaining, and not of fraud or collusion." *Id.* at 918 (internal citations omitted).

45.    The terms of the settlements in the Settlement and Dismissal Proposal fall well

within the standards applicable to the approval of settlements in the Fifth Circuit.  The Parents

will not share in the approximately $4.1 million payment to non-insider creditors and to defer

payment of their $8.5 million in unsecured claims, and in return, the Debtor has agreed to release

the Parents and Related Parties of any claim or counterclaim that could be asserted against them.

As discussed above, the counterclaims that could potentially be asserted generally relate to the

recovery of payments by the Debtor on the Parents' unsecured claims prior to the filing of the

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II)
Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and
Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms
of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                    **Page 16**

case or subordination of such unsecured claims under a fraudulent transfer, tortious interference or other chapter 5 cause of action basis.

46.    The Settlement and Dismissal Proposal provides terms which effectively afford the remedy of subordination, which would otherwise only be available to creditors, if at all, after lengthy and expensive litigation, extended delay and considerable expense.  Notably, neither the Debtor nor the Committee have discovered any legal basis for the recovery from the Parents of any monetary damages.  Instead, the causes of action that may be available to the estate would only support a remedy of equitable subordination or recharacterization to equity of the unsecured debts owed to the Parents.  This is precisely the type of relief envisioned by the settlement, therefore the estate will receive the full benefits of any such claims.

47.    In addition, many of the Related Parties are located in India.  Serving a lawsuit and pursuing discovery of such defendants would be expensive and protracted.  Moreover, there is a significant question regarding the potential likelihood of the success of such litigation.  GTLI and GTLL loaned money to the Debtor to fund operations for many years, starting in 2008, when the company was formed.  Most of the debt owed to them was incurred in the early years of operation, more than four (4) years before the Petition Date.  The Debtor routinely repaid advances to GTLI and GTLL over the years, and all parties treated the obligations as debt.  If litigated, there is a good chance the Court would conclude the claims should not be subordinated or recharacterized as equity.  Therefore, due to this uncertainty of outcome, the settlement proposed in Settlement and Dismissal Proposal is fair and equitable and in the best interest of creditors because it provides them effectively with the benefits of subordination, allows the non-insider creditors to receive a substantially higher distribution of the funds to be distributed pursuant to the Settlement and Dismissal Proposal.

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*          **Page 17**

### B.    Dismissal of the Case

48.    The Settlement and Dismissal Proposal further provides that upon requisite court approval the Debtor's cash balance plus the funds made available by EIHL would be distributed to creditors and the case would be dismissed.  The dismissal of this case is an integral part of the Settlement and Dismissal Proposal.  EIHL is an international company that seeks to infuse capital into the Debtor, purchase other assets from the Parents and develop and grow the companies into a global network.  Time is of the essence to close this transaction quickly. EIHL's goals are to make sure that creditors are paid as much as possible under the circumstances, reestablish the Debtor's place in the marketplace, continue to do business with the Debtor's vendors as necessary to support ongoing business operations and raise the public profile of the companies unhampered by further bankruptcy proceedings.  It is the best possible outcome for the creditors of the estate as well as the Debtor's employees and customers.

49.    Dismissal of a chapter 11 case is permitted under section 350(a) of the Bankruptcy Code, for cause.  Cause exists to dismiss a case if the interests of creditors and the debtor would be served by such dismissal.  *See*, 11 U.S.C. section 305(a); *In re AMC Investors, LLC,* 406 B.R. 478, 487-88 (Bankr. D. Del. 2009).  Many factors are considered to determine whether cause exists, including (a) the economy and efficiency of administration, (b) whether federal proceedings are necessary to reach a just and equitable solution, (c) whether there is an alternative means of achieving an equitable distribution of assets and (d) whether the debtor is able to work out a less expensive out of court arrangement which better serves all interests of the case.  *Id*. At 488.  Requests to dismiss a case are determined on a case by case basis, and are within the discretion of the court.  *In re Sky Group Intern, Inc*., 108 B.R. 86, 91 (Bankr. W.D. Pa. 1989).

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                    **Page 18**

50.    In this case, the best interest of creditors would be served by dismissal as part of

the Settlement and Dismissal Proposal.  Dismissal of the case following approval of the

Settlement and Dismissal Proposal would allow the Debtor to distribute all of its available cash

plus the funds to be made available by EIHL without the need to reserve cash to fund ongoing

operations, thereby assuring a higher distribution to creditors than offered by any other option.

The settlements and dismissal would relieve the Debtor from the burden of the high cost of

continued litigation which continues to reduce the amounts available to distribute to creditors.  If

the Settlement and Dismissal Proposal is approved, there would be no more assets to administer

in the case, and therefore no need to incur additional administrative costs either in a chapter 11

proceeding or chapter 7 proceeding.  Finally, the proposal provides for immediate payment to

creditors, without further delay.  All other alternative options to the Settlement and Dismissal

Proposal will be more costly and delayed, will not include the funds to be provided by EIHL,

will not include the agreed deferral of payment by the Parents, and will assuredly result in a

markedly smaller ultimate distribution to creditors.

51.    Requests for dismissal of chapter 11 cases, while not routinely sought, have been

granted in a number of cases similar to the instant case.  *See, e.g.*, *Official Comm. of Unsecured

Creditors v. CIT Group/Business Credit, Inc. (In re Jevic Holding Corp.)*, 787 F. 3d. 173 (3d Cir.

2015) ("*Jevic.*"); *In re Buffet Parners, L.P.*, 2014 WL 3735804 (Bankr. N.D. Tex.  July 28,

2014).

52.    In *Jevic* the Third Circuit approved a structured dismissal of a case which

resolved pending litigation and provided a means for a distribution to unsecured creditors.  In

that case the debtor filed for chapter 11 after a failed leveraged buyout by a subsidiary of Sun

Capital Partners ("*Sun*") financed by a group of lenders led by CIT Group ("*CIT*").  It had

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II)
Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and
Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms
of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*    **Page 19**

ceased substantially all of operations and gave notice to employees of their impending

terminations before the case was filed.  After the case was filed, a group of terminated truck

drivers filed a class action against the debtor and Sun alleging the pre-petition terminations had

violated federal and state Worker Adjustment and Retraining Notification (WARN) Acts, and

asserted claims in excess of $12 million, for which they claimed $8.3 million was a priority wage

claim under section 507(a)(4) of the Bankruptcy Code.  In addition, the committee of unsecured

creditors filed a fraudulent conveyance action against CIT and Sun on the estate's behalf related

to the pre-petition LBO.

53.     Three years of litigation ensued.  Finally, the debtor, the creditors' committee,

CIT, and Sun reached a settlement.  By that time Jevic's only remaining assets included $1.7

million in cash (which was subject to Sun's lien) and the pending LBO action against CIT and

Sun.  The terms were as follows:  (i) the parties would exchange mutual releases and the LBO

action would be dismissed with prejudice; (ii) CIT would pay $2 million to satisfy certain unpaid

administrative expenses, including professional fees; (iii) Sun would assign its lien on Jevic's

remaining $1.7 million to a trust, which would first pay tax and administrative creditors and then

general unsecured creditors on a pro rata basis; and (iv) Jevic's chapter 11 case would be

dismissed.

54.     The bankruptcy court approved the settlement, applying the test set forth in *In re*

*Martin*, 91 F.3d 389 (3d Cir 1996), over the objection of the drivers and the Office of the United

States Trustee.  The court found that, given the "dire circumstances" of the debtor, there was "no

realistic prospect" of a meaningful distribution to anyone except the secured creditors, but for the

terms of the settlement.  The drivers appealed the ruling to the Delaware District Court, which

affirmed.  The appeal to the Third Circuit Court of Appeals followed.

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II)
Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and
Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms
of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*  **Page 20**

55.     The Third Circuit acknowledged that structured dismissals are not expressly authorized by the Bankruptcy Code, but concluded that "absent a showing that a structured dismissal has been contrived to evade the procedural protections and safeguards of the plan confirmation or conversion processes, a bankruptcy court has discretion to order such a disposition." *Id*. Crucial to the holding was the bankruptcy court's uncontested finding that there was no real prospect of a confirmable plan and conversion to chapter 7 would have provided no real benefit to creditors.

56.     In other words, the Third Circuit concluded the settlement and structured dismissal was the "least bad alternative" because the debtor had no prospect of a confirmable plan and conversion to chapter 7 would have resulted in payment only to the secured creditors. Therefore, without the settlement, there was "no realistic prospect" of a meaningful distribution to unsecured creditors.

57.     The facts of this case are similar in many ways to *Jervic*. There is substantial litigation pending which is causing significant costs to the estate. Should litigation be filed against the Parents and Related Parties, another layer of costs would be added. In addition, the officers of the Debtor would be burdened with the task of addressing yet another fact intensive lawsuit, and possibly defending themselves as well. The Bylaws of the Debtor provide indemnification to the officers and directors. Accordingly, should the Related Parties be sued, post-petition, there will certainly be claims made by such parties against the Debtor for indemnification. All of these issues would have to be addressed by the Debtor in a continued chapter 11 or by a trustee in a chapter 7. The terms of the Settlement and Dismissal Proposal would resolve all pending litigation and stop the burgeoning costs attached thereto. It is not an overstatement in this case to say that if the litigation were to continue, whether in a liquidating

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                    **Page 21**

chapter 11 or conversion, the Debtor or trustee could literally run out of money, as did the debtor in *Jevic* and find itself without the means to make any meaningful distribution to creditors.

58.     The Debtor likely cannot move forward on its Plan of Reorganization because it has lost the funding mechanism it requires to address liquidity issues post-confirmation.  While the plan could be modified and presented as a liquidating plan, or the case could be converted to a case under chapter 7 of the Bankruptcy Code, the costs of the plan process or chapter 7 process, and the continuation of litigation would dramatically reduce, and perhaps eliminate, any possible distribution to creditors.  In contrast, the structured dismissal proposed in the Settlement and Dismissal Proposal would resolve all litigation and result in immediate distribution to creditors without further cost.  It is by far the best alternative at this juncture.

### C.     Sale of Assets

59.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(r). Section 363(b), does not provide an express standard for determining whether the Court should approve any particular purchase or sale.

60.     The Fifth Circuit has however set forth the standard for authorization of a sale, acknowledging that each hearing on a Section 363(b) transaction "cannot become a mini-hearing on plan confirmation." In re Continental Air Lines, Inc., 780 F.2d 1223, 1227 (5th Cir. 1986). Specifically, according to the Fifth Circuit:

> We also agree with the Second Circuit that implicit in section 363(b) is the further requirement of justifying the proposed transaction. *In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983). That is, for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                                          *Page 22*

> must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business...whether the proffered business justification is sufficient depends on the case.

*Id.* at 1226.

61.     Thus where the proposed sale is merely a transfer of assets for value not effectively short circuiting the requirements of Chapter 11, and the Debtor' decision represents a reasonable business judgment, the court should authorize the transaction. See *id*; *In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir. 1983). Indeed, court approval of a proposed transaction "should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code. . . ." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (quoting *Allied Technology, Inc. v. R.B. Brunemann & Sons*, 25 Bankr. 484, 495 (Bankr. S.D. Ohio 1982)). Requiring a debtor to justify its actions beyond the "business judgment" standard if creditors object "would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control in case impartially. *Id.* at 1311 (citing *In re Airlift International, Inc.*, 18 Bankr. 787, 789 (Bankr. S.D.Fla. 1982); *In re Curlew Valley Assocs.*, 14 Bankr. 506, 509-514 (Bankr. D. Utah 1981)); **see** also *In re Condere Corp.*, 228 B.R. 615 (Bankr. S.D. Miss. 1998) (granting debtor's motion to sell assets under section 363 where the court found the debtor met the requisite business justification for the sale, including a lack of any offer to purchase the debtor in prior prepetition attempts to sell the company). Thus, the Court should grant the relief requested in this Motion because the Debtor has demonstrated a sound business justification therefor.

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                    *Page 23*

62.     The Debtor has a sound business justification for selling the Assets at this time whether pursuant to the Settlement and Dismissal Proposal or pursuant to the Sale Procedures outlined above. The Debtor does not have the financial resources or access to capital necessary to continue its business and implement a prolonged restructuring or sale process. The options presented above are necessary because they represent the only viable options likely to maximize value for all stakeholders and avoid conversion to a case under chapter 7 of the Bankruptcy Code. The Debtor has therefore determined, based upon its sound business judgment, that the most viable option for maximizing the value of its estate is through a the consummation of the Settlement and Dismissal Proposal, or, in the alternative, the sale of substantially all of its Assets based upon the Sale Procedures.

### D.     The Assumption and Assignment of the Executory Contracts Should be Authorized

63.     Section 365(f)(2) of the Bankruptcy Code provides that:

> [t]he trustee may assign an executory contract or unexpired lease of the debtor only if-
>
> (A)  the trustee assumes such contract or lease in accordance with the provisions of this section; and
> (B)  adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

64.     Under section 365(a) of the Bankruptcy Code, a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor as follows:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                                          *Page 24*

contract or lease unless, at the time of assumption of such contract or lease, the trustee -

(A)   cures, or provides adequate assurance that the trustee will promptly cure, such default;
(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

65.   The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given a "practical, pragmatic construction." See, e.g., *EBG Midtown South Corp. v. McLaren/Hart Em. Engineering Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 593 (S.D.N.Y. 1992); *In re Prime Motor Inns Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994) ("[although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance"); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

66.   Among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from debtor has resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

67.   To the extent that any defaults exist under any of the Executory Contracts to be assumed and assigned in connection with the Sale, the Buyer shall cure any such default in

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*          **Page 25**

connection with such assumption and assignment. Moreover, the Debtor will adduce facts at the Sale Hearing demonstrating the financial wherewithal of the Buyer, and its willingness and ability to perform under the Executory Contracts to be assumed and assigned.

68.     The Sale Hearing will therefore provide the Court and other interested parties ample opportunity to evaluate and, if necessary, challenge the ability of the Buyer to provide adequate assurance of future performance under the Executory Contracts to be assumed and assigned.

### E.     Form and Manner of Notice

69.     The Debtor will provide the Sale Notice to any parties who have previously expressed an interest in the Assets or who may be interested in purchasing the Assets and all creditors of the Debtor and all contract parties, in accordance with Bankruptcy Rule 2002(a)(2), by mailing such notice more than twenty (20) days prior to the date set by this Court for the Sale Hearing.

70.     The Debtor submit that the form and manner of service of the Sale Notice is appropriate under the circumstances and complies with all applicable Bankruptcy Rules.

### F.     Form of Order

71.     The Debtor request that an order be entered, after the Auction and conclusion of the Sale Hearing, in substantively the form attached hereto as **Exhibit F** approving the sale to the Successful Bidder.

**WHEREFORE,** the Debtor respectfully requests the Court enter an order: (a) approving the Settlement and Dismissal Proposal, or, in the alternative, (b) approving the Sale Procedures, (c) setting a date for the Sale Hearing, (d) approving the Sale Notice, (e) upon final hearing

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II)
Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and
Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms
of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*     ***Page 26***

approving the sale to the Successful Bidder and (e) granting such other and further relief as is

necessary.

Respectfully submitted,

Dated: July 17, 2015                              CULHANE MEADOWS, PLLC


By:   /s/ Lynnette Warman
            Lynnette Warman
            Tex. Bar No. 20867940
            Richard G. Grant
            Tex. Bar No. 08302650
The Crescent, Suite 700
100 Crescent Court
Dallas, Texas 75201

Telephone: 214-693-6525
Facsimile: 214-361-6690
Email: rgrant@culhanemeadows.com
Email: lwarman@culhanemeadows.com

ATTORNEYS FOR
DEBTOR IN POSSESSION


## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that he has transmitted a true and correct copy of the foregoing via the Court's Electronic Case Filing system to all persons participating therein on July 17, 2015 and via United States First Class Mail, postage prepaid, to each of the addresses on the attached matrix on July 17, 2015.


            /s/ Richard Grant
            Richard G. Grant

*Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II)
Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and
Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms
of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                              ***Page 27***

**EXHIBITS:**

Exhibit A – EIHL Offer
Exhibit B – Proposed Order Approving Settlement
Exhibit C – Bid Procedures and Asset Schedules A-F
Exhibit D – Notice of Auction and Sale
Exhibit E – Proposed Order Approving Bid Procedures
Exhibit F – Proposed Order Approving 363 Sale

**EXHIBIT A**



June 23, 2015

Mr. S. K. Roy
Director, GTL USA Inc.
Dallas, USA

Dear Sir,

**Preliminary, non-binding indication of interest ("Indicative Bid") for acquisition of GTL USA Inc.**

We, Emirates International Holding Limited LLC ("**EIHL**"), part of the Al Sayegh Group of Companies ("**Al Sayegh Group**"), are pleased to submit the following Indicative Bid

1   The equity shares of 100 shares held by the existing Promoter viz GTL International Ltd should be transferred in favour of Emirates International Holdings Limited (EIHL) without any encumbrance at an agreed value of US$ 1 per share for cash consideration on or before the effective date. From the time of such investment by EIHL in GTL (USA) Inc. the existing Promoter of GTL (USA) Inc viz GTL International Ltd shall cease to be the Promoter and Owner of GTL (USA) Inc and shall not have any management control. 100% ownership, control and management shall vest with EIHL. The change in management shall have the Order of the Bankruptcy Court and cannot be challenged by any one including any creditor or lender of GTL (USA) Inc or its parent companies viz GTL International Ltd and GTL Ltd;

2   EIHL shall buy the
   a   Preference shares of GTL (USA) Inc held by GTL International Ltd;
   b   Loan & interest amounts payable by GTL (USA) Inc to
      i   GTL International Ltd; and
      ii  GTL Ltd

at an agreed value and make the payment to them as under:

| Name of the holder / creditor | Nature of liability | Amount as per books of GTL (USA) Inc (in US $) | Amount agreed to be paid (in US $) | Due date for payment |
|---|---|---|---|---|
| GTL International Ltd | Equity Shares | 100 | 100 | Effective Date |
| GTL International Ltd | Preference Shares | 3,000,000 | 600,000 | 31st August 2016 |
| GTL International Ltd | Existing Loan I | 7,790,024 | 2,000,000 | 31st August 2016 |
| GTL Limited | Existing Loan II | 267,821 | 100,000 | 31st August 2016 |

*Draft for discussion purposes*



3. EIHL shall make the following investments in GTL (USA) Inc on the dates noted against each of them:

| Borrower | Nature of Investment | Amount of Investment (in US $) | Rate of Interest | Due date for Investment |
|---|---|---|---|---|
| GTL (USA) Inc | New Loan | 1,350,000 | 6% | Within 1 week of Settlement Agreement (July 2015) |
| GTL (USA) Inc | Working Capital (Trench I) | 1,000,000 | 6% | Within 1 week of Settlement Agreement (July 2015) |
| GTL (USA) Inc | Working Capital (Trench II) | 1,000,000 | 6% | August 2015 |
| GTL (USA) Inc | Working Capital (Trench III) | 500,000 | -- | September 2015 |

4. GTL (USA) Inc shall repay the loans availed by it from the EIHL as under:

| Name of the creditor | Nature of liability | Amount of liability (in US $) | Rate of Interest | Due date for payment of | |
|---|---|---|---|---|---|
| | | | | Interest | Principal |
| EIHL | Existing Loan I (Taken over from GTL International) | 7,790,024 | 6% | Monthly from October 2015 | Dec 3% — 2017<br>Dec 3% — 2018<br>Dec 5% — 2019<br>Dec 6% — 2020<br>Dec 12% — 2021<br>Dec 15% — 2022<br>Dec 15% — 2023<br>Dec 15% — 2024<br>Dec 15% — 2025<br>Dec 11% — 2026 |
| EIHL | Existing Loan II (Taken over from GTL Ltd) | 267,821 | 6% | Monthly from October 2015 | Dec 25% — 2016<br>Dec 75% — 2017 |
| EIHL | New Loan | 1,350,000 | 6% | Monthly from | Dec 10% — 2017 |

2

| | | | | October 2016 | Dec 30% | 2018 |
| | | | | | Dec 30% | 2019 |
| | | | | | Dec 30% | 2020 |
| EIHL | Working Capital (Trench III) | 500,000 | – | – | Nov 100% | 2016 |

Or in the sole discretion of EIHL, the loan repayment maybe accelerated provided new loans/ cash flows of GTL USA permit the same.

5. The Existing Loan I, Existing Loan II, New Loan and Working Capital Loan shall be secured by Promissory Note and also against all the Properties including current assets such as Bank Balances and Receivables of GTL (USA) Inc and shall have First Charge in favour of EIHL and EIHL shall have the status of Senior Secured Lender in respect of them;

6. All creditors including post petition shall be settled as per the Order of the Bankruptcy Court.

7. The management should be handed over to EIHL free of all liabilities and encumbrances. EIHL and GTL (USA) Inc shall not be liable for any payment to any one in respect of the period prior to the Order of the Bankruptcy Court.

8. The present Management shall handhold the operations for a period of 2 years on terms as may be agreed mutually.

9. The present management should make best effort to ensure

    a. Continuity of contracts of all its major customers and vendors for a period of two years
    b. Continuity of service of its Senior and its Middle Level Management in respect of Operations, Finance and HR functions for a period of two years

10. All the assets of GTL (USA) Inc including the tools should be available in GTL USA Inc for carrying on its day to day operations;

11. Post acceptance of the above offer by the Credit Committee. EIHL needs an exclusive period of 2 - 3 weeks for carrying out legal document negotiation;

12. The above proposal shall come into force on fulfillment of the following conditions:

    a. Passing of the Order of Bankruptcy Court
    b. Execution of documents (within one week of passing of the Order of Bankruptcy Court) and
    c. Transfer of Equity and Preference shares

*Draft for discussion purposes*

3



    d  Withdrawal / Dismissal of all cases filed by any of the Creditors against GTL (USA) Inc

The date on which all the above three conditions are satisfied shall be called as the Effective Date

13. The terms finally agreed with or without modification shall form part of the Order of Bankruptcy Court and shall be binding on all stakeholders and cannot be challenged by anyone including the creditors and lenders of GTL (USA) Inc or its parent companies viz GTL International Ltd and GTL Ltd

The above is a preliminary proposal and is strictly subject to contract and it is not intended, does not and shall not be deemed to create any legal obligation or liability on EIHL and its Directors, Officers, Agents and Advisors.

This proposal is valid for a period of 7 days. An unconditional approval and final binding approval of the credit committee is required within 7 days in order to proceed with binding documentation.

Yours faithfully,

For and on behalf of EIHL

Patrick Dannacher
M&A Advisor



July 1, 2015

Mr. S. K. Roy
Director, GTL USA Inc.
5200 Tennyson Parkway, Suite#200,
Plano, TX-75024

**Dear Sir,**

**Preliminary, non-binding indication of interest ("Indicative Bid") for acquisition of GTL USA Inc.**

We, Emirates International Holding Limited LLC ("**EIHL**"), part of the Al Sayegh Group of Companies ("**Al Sayegh Group**"), are pleased to submit the following Indicative Bid.

1.  The equity shares of 100 shares held by the existing Promoter viz GTL International Ltd should be transferred in favour of Emirates International Holdings Limited (EIHL) without any encumbrance at an agreed value of US$ 1 per share for cash consideration on or before the effective date. From the time of such investment by EIHL in GTL (USA) Inc, the existing Promoter of GTL (USA) Inc viz GTL International Ltd shall cease to be the Promoter and Owner of GTL (USA) Inc and shall not have any management control. 100% ownership, control and management shall vest with EIHL. The change in management shall have the Order of the Bankruptcy Court and cannot be challenged by any one including any creditor or lender of GTL (USA) Inc or its parent companies viz GTL International Ltd and GTL Ltd;

2.  EIHL shall buy the
    a. Preference shares of GTL (USA) Inc held by GTL International Ltd;
    b. Loan & Interest amounts payable by GTL (USA) Inc to
       i. GTL International Ltd; and
       ii. GTL Ltd
    at an agreed value, subject to definitive documentation and mutually acceptable terms and conditions. The payment schedule will be:

| Name of the holder / creditor | Nature of liability | Amount as per books of GTL (USA) Inc (in US $) | Amount agreed to be paid (in US $) | Due date for payment |
|---|---|---|---|---|
| GTL International Ltd | Equity Shares | 100 | 100 | Effective Date |
| GTL International Ltd | Preference Shares | 3,000,000 | 600,000* | 31st August, 2016 |
| GTL International Ltd | Existing Loan I | 7,790,024 | 2,000,000 | 31st August, 2016 |
| GTL Limited | Existing Loan II | 267,821 | 100,000 | 31st August, 2016 |



* This amount maybe treated as part of repayment loan at the option of EIHL on such terms and conditions as maybe mutually agreed with GTL (USA).

3. EIHL shall make the following investments in GTL (USA) Inc on the dates noted against each of them:

| Borrower | Nature of Investment | Amount of Investment (in US $) | Rate of Interest | Due date for Investment |
|---|---|---|---|---|
| GTL (USA) Inc | New Loan | 2,500,000 | 6% | Within 1 week of Settlement Agreement ( July 2015) |
| GTL (USA) Inc | Working Capital (Trench I) | 900,000 | 6% | Within 1 week of Settlement Agreement (August 2015) |
| GTL (USA) Inc | Working Capital (Trench II) | 500,000 | 6% | September 2015 |

4. GTL (USA) Inc shall repay the loans availed by it from the EIHL as under:

| Name of the creditor | Nature of liability | Amount of liability (in US $) | Rate of Interest | Due date for payment of Interest | Due date for payment of Principal | |
|---|---|---|---|---|---|---|
| EIHL | Existing Loan I (Taken over from GTL International) | 7,790,024 | 6% | Monthly from October 2015 | Dec 3% | 2017: |
| | | | | | Dec 3% | 2018: |
| | | | | | Dec 5% | 2019: |
| | | | | | Dec 6% | 2020: |
| | | | | | Dec 12% | 2021: |
| | | | | | Dec 15% | 2022: |
| | | | | | Dec 15% | 2023: |
| | | | | | Dec 15% | 2024: |
| | | | | | Dec 15% | 2025: |
| | | | | | Dec 11% | 2026: |
| EIHL | Existing Loan II (Taken over from GTL Ltd) | 267,821 | 6% | Monthly from October 2015 | Dec 25% | 2016: |
| | | | | | Dec 75% | 2017: |
| EIHL | New Loan | 2,500,000 | 6% | Monthly from | Dec 10% | 2017: |

2



| | | | | October 2016 | Dec 2018: 20% |
|---|---|---|---|---|---|
| | | | | | Dec 2019: 20% |
| | | | | | Dec 2020: 20% |
| | | | | | Dec 2021: 15% |
| | | | | | Dec 2022: 15% |
| EIHL | Working Capital (Trench III) | 500,000 | - | – | Nov 2015: 100% |

a. The interest rate is subject to review 6 months from the date of settlement agreement and maybe revised subsequently if mutually acceptable to EIHL and GTL USA.

b. Inthe sole discretion of EIHL, the loan repayment maybe accelerated provided new loans/ cash flows of GTL USA permit the same.

5.  The Existing Loan I, Existing Loan II, New Loan and Working Capital Loan shall be secured by Promissory Note and also against all the Properties including current assets such as Bank Balances and Receivables of GTL (USA) Inc and shall have First Charge in favour of EIHL and EIHL shall have the status of Senior Secured Lender in respect of them. An escrow account mechanism will be put in place to give effect to this security. Any amounts can be released from the escrow account only on approval of the authorized representative(s) of EIHL to be appointed for monitoring the escrow account.

6.  All creditors including post petition shall be settled as per the Order of the Bankruptcy Court. The amount payable to all the creditors shall not exceed USD 4.1 million.

7.  The management should be handed over to EIHL free of all liabilities and encumbrances. EIHL and GTL (USA) Inc shall not be liable for any payment to any one in respect of the period prior to the Order of the Bankruptcy Court.

8.  The present Management shall handhold the operations for a period of  24 months from the date of transaction on terms as may be agreed mutually.

9.  The present management should make best effort to ensure

    a. Continuity of contracts of all its major customers and vendors for a  period of two years
    b. Continuity of service of its Senior and its Middle Level Management in respect of Operations, Finance and HR functions for  a period of two years



10. All the assets of GTL (USA) Inc including the tools should be available in GTL USA Inc for carrying on its day to day operations;

11. Post acceptance of the above offer by the Credit Committee, EIHL needs an exclusive period of 2 weeks for carrying out legal document negotiation;

12. The above proposal shall come into force on fulfillment of the following conditions by 25th July 2015:

    a. Passing of the Order of Bankruptcy Court
    b. Execution of documents (within one week of passing of the Order of Bankruptcy Court) and
    c. Transfer of Equity and Preference shares
    d. Withdrawal / Dismissal of all cases filed by any of the Creditors against GTL (USA) Inc, GTL International Ltd, GTL Ltd and its directors, associates, subsidiaries and/or employees / officers.

The exact date, not later than 25th July 2015, on which all the above four conditions are satisfied shall be called as the Effective Date. Any amounts being paid by EIHL as a part of this transaction will be deposited in an escrow account. The amounts shall be released from the escrow account only on fulfillment of each of the above conditions. In case of non-fulfillment of any of the above conditions, the amount shall be refunded to EIHL by 28th July, 2015.

The terms finally agreed with or without modification shall form part of the Order of Bankruptcy Court and shall be binding on all stakeholders and cannot be challenged by anyone including the creditors and lenders of GTL (USA) Inc or its parent companies viz GTL International Ltd and GTL Ltd.

The above is a preliminary proposal and is strictly subject to contract and it is not intended, does not and shall not be deemed to create any legal obligation or liability on EIHL and its Directors, Officers, Agents and Advisors.

This proposal is valid till the end of July 6, 2015. An unconditional approval and final binding approval of the credit committee is required in order to proceed with binding documentation.

Yours faithfully,

For and on behalf of EIHL

Patrick Dannacher
M&A Advisor

4



July 15, 2015

Mr.S.K.Roy, Director,
GTL (USA) Inc
5200 Tennyson Parkway,
Suite#200, Plano, TX – 75024.

Dear Mr. Roy,

Sub: Our offer dated July 1, 2015 and our subsequent conference calls

Further to our last call, after deliberating the matter internally at the senior level within
our organization, we wish to re-iterate and make our position clear as under:

1. As stated by us in our e mail dated July 11, 2015, our offer always envisaged
acquiring GTL USA Inc. as an existing entity with the brand and employees. It
would be synergistic to our offer for the other international businesses of GTL
International Limited. It will not make any economic sense to acquire only the
assets and business of GTL USA Inc. A separate offer has been made by us for
GTL USA Inc only due to the bankruptcy proceedings. Acquiring GTL USA Inc as
existing entity is an intrinsic part of the larger commercial understanding with
GTL International Ltd and GTL Limited for the overall transaction of acquiring the
international businesses.

    GTL USA Inc is in the service industry. The assets proposed to be acquired by
us are the GTL brand, goodwill, employees, customers and vendors. The present
employees are mostly trained manpower from GTL India. If GTL USA Inc is
acquired as proposed by us by buying the shares of GTL International Ltd by a
Structured Dismissal (SD) by way of agreement with all creditors for legal
discharge and release of all Debtor and Non-Debtor entities and individuals, we
would be able to fall back on the employees' pool and contacts / relationship of
GTL India, which has got presence not only in India but also in other international
locations through GTL International Ltd. Because of GTL International Ltd's
presence in other countries and the business relationship it has got with its
customers in all the places doing and growing business with the presence of GTL
International Ltd for us makes more sense. Our very purpose of asking GTL
International Ltd and GTL Ltd to handhold the operations in GTL USA Inc is to
make use of your full resources to our advantage.

2. In this context, it is critical for us that legal discharges and releases should be
granted to GTL USA Inc, GTL International Ltd, GTL Limited and their affiliates,
directors, officers and employees by all creditors including AutoOpt by a

1



settlement agreement and through a Structured Dismissal (SD) Order passed by
the Bankruptcy Court with the consent of all parties. If we do not get such
release today, when we acquire other international operations of GTL
International Ltd later by buying the shares of GTL International Ltd, we will be
having these litigations to be fought by us. Thus now or later we do not like to be
entangled into any prolonged legal disputes, proceedings and litigations.

Similarly, if any charges / legal proceedings continue against the employees,
officers or directors and any of your entities, we will not be able to avail of your
bandwidth and expertise for operations and growth of our business. This will
again impact our economic interest and investment.

3. Once we acquire GTL USA Inc. we intend to grow its business by putting
   additional working capital as and when necessary. We believe that continued
   legal proceedings post acquisition will definitely hamper growth of the acquired
   Company and, therefore, after investing such a large amount, we would not be
   interested in any such arrangement which exposes us to this potential risk.

4. We are willing to consider extending our offer dated July 1, 2015 till July 16,
   2015. We are prepared to meet the financial commitments within 10 working
   days of all binding and final documentation being signed, subject to the fact that
   we get full value for the money that we pay and all our terms as mentioned in our
   offer dated July 1, 2015 and this letter is accepted by all creditors.

5. To sum up, I wish to make our submissions as under:

   a. We reiterate our commitment for buying of GTL (USA) Inc as per the
      terms of our Term Sheet dated July 1, 2015 and this letter dated July 15,
      2015 as we would not like to buy a skeleton company but would like to
      acquire a Company with GTL handholding, wherein it can exploit the pool
      of trained manpower, its contacts/ relationship with customers, its brand
      image etc, in view of service nature of the business;

   b. We want Structured Dismissal with the Consent of all Creditors by a
      Settlement Agreement and Order of the Bankruptcy Court;

   c. We agree for making investments as agreed including for remitting USD
      2.5 million within 10 working days of final documentation being signed
      and completion of all legal formalities for change of management by end
      July 2015; Time is of essence.

   d. We need release and discharge of GTL USA Inc, GTL Ltd, GTL
      International Ltd and their affiliates, Directors, Employees / Officers from
      all litigations by all the creditors as we do not like to have any legal
      disputes now or later when we buy international operations of GTL
      Internation Ltd by buying the shares of GTL international Ltd;

2



e. We need Indemnity from GTL USA Inc and Parent companies that EIHL would not be liable for any liability arising prior to its acquiring the Company.

f. Our keenness in acquiring GTL USA Inc and our ability to finance the transaction could be observed from the following:

   i. Though as per the valuation, GTL USA Inc does not support the amount we agreed to pay as consideration, still, we have revised our initial offer of USD 1.35 million to USD 2.5 million for distribution to the Creditors;

   ii. We are agreeable for depositing USD 100,000 with your Counsel to show our commitment and ability to honor our financial commitment. This amount may be adjusted against the amount payable by us or returned to us in case the transaction does not materialize as the case may be;

We agree to extend the deadline of our offer on the terms of our Term Sheet dated July 1, 2015 and this letter dated July 15, 2015 from July 7, 2015 to July 16, 2015, by which time we expect a written consent from the Creditors Committee for acceptance of terms of our Term Sheet dated July 1, 2015 and this letter dated July 15, 2015. However beyond that we are not interested in any further discussion and our offer would lapse.

I understand and appreciate your point of view. However as an organization, we are of the strong belief that our investment in GTL USA Inc, in the present circumstances, would be better served with the consent of all the Creditors, GTL International Ltd and Court Order, not otherwise. If our belief is shared by all, we are more than willing to complete the deal.

Our offer is fair to everyone, as we wanted the consent / involvement of all. If the deal is to have the consent of every one, we believe it will not only erase the bad publicity GTL USA Inc got into on account of the bankruptcy filing, but would also send a clear signal and confidence to the customers in doing business with GTL USA Inc, which would augur well for our reputation as well when we acquire the international operations of GTL International Ltd and associate ourselves with them. In any case, we do not want to be seen as fishing in troubled water.

Let me take this occasion to thank all of you for giving us an opportunity to submit our offer for acquisition of GTL USA Inc.

With regards,

Yours faithfully,

For and on behalf of EIHL

Patrick Dannacher
M&A Advisor

3

**EXHIBIT B**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 15-40248-BR-11** |
| GTL (USA), INC., | § | **Chapter 11** |
| | § | |
| Debtor. | § | |

**ORDER APPROVING SETTLEMENTS AND DISMISSAL OF THE CASE**

On July ___, 2015, came on for consideration the Debtor's Expedited Motion for an

Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving

Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B)

Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C)

Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and

(III) Granting Related Relief (the "Motion"). The Court finds notice of the Motion was proper

and that granting the Motion upon the terms set forth herein is in the best interests of the estate.

Based upon the record, the Court hereby ORDERS, ADJUDGES AND DECREES AS

FOLLOWS:

1.      The Motion is hereby GRANTED as set forth herein.

2.      The Debtor is authorized to (a) enter into the transactions, (b) borrow the funds;

(c) agree to the settlements; (d) issue the indemnity; (e) sell the equity interests, and (f) make the

distributions, all as set forth in the Motion and the Offer Letter attached to the Motion, pursuant

to 11 U.S.C. §§ 105, 363, 364 and 365 and Bankruptcy Rule 9019.

3.      Upon the Debtor's filing of a Certification of Completion of Necessary Releases

and distributions setting forth (a) the releases received; (b) the amounts distributed; (c) any claim

remaining unpaid due to lack of release; and (d) a statement that the Debtor has received the

releases necessary to continue business outside of bankruptcy, the Court will enter an order

dismissing this case.

*Submitted by:*

Richard G. Grant
Tex. Bar No. 08302650
CULHANE MEADOWS, PLLC
The Crescent, Suite 700
100 Crescent Court
Dallas, Texas 75201
Telephone: 214-210-2929
Facsimile: 214-224-0198
Email: rgrant@culhanemeadows.com

ATTORNEYS FOR
DEBTOR IN POSSESSION

**EXHIBIT C**

# EXHIBIT C

## PROPOSED BID PROCEDURES

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed in connection with an auction (the "Auction") for the sale (the "Sale") of assets (the "Purchased Assets") and assumption of certain executory contracts and unexpired leases of real property (the "Assumed Contracts") of GTL (USA), Inc. (the "Debtor"). At a hearing following the Auction, the Debtor will seek entry of an order (the "Sale Order") from the United States Bankruptcy Court for the Eastern District of Texas (the "Bankruptcy Court") authorizing and approving the Sale to the Qualified Bidder (as defined below) that the Debtor determine to have made the highest or otherwise best bid.

**I.**      **Assets to be Sold**

As described in the Purchase Agreement (as defined below), all of the Debtor's right, title and interest in all of the Debtor's properties and assets of every kind and description, tangible or intangible and wherever located, except for the Retained Assets, including the following:

(a)      All tangible personal property of the Debtor's business (the "Business"), wherever located, including, but not limited to, all machinery, equipment, tools, fixtures, parts, supplies, furniture, furnishings, motor vehicles, Inventory and computers, including the tangible personal property;

(b)      All leased real property which is listed on **Schedule A**;

(c)      Any transferrable rights of the Debtor in intellectual property;

(d)      All of the customer contracts listed on **Schedule B** and all rights of any kind relating thereto including rights to payments thereunder (the "Customer Contracts");

(e)      All of the vendor contracts listed on **Schedule C** and all rights of any kind relating thereto (the "Vendor Contracts");

(f)      All contracts listed on **Schedule D** and all rights of any kind relating thereto (the "Other Contracts");

(g)      All transferrable permits, but only to the extent such permits may be transferred under applicable law;

(h)      All of the Debtor's rights under warranties, indemnities and all similar rights against third parties to the extent related to any Purchased Assets;

(i)      All prepaid expenses, credits, advance payments, security, deposits, charges, sums and to the extent related to any Purchased Assets;

(j)      Originals, or where not available, copies, of all books and records, including books of account, ledgers and general, financial and accounting records, machinery and equipment maintenance files, customer lists, customer purchasing histories, price lists, distribution lists, supplier lists, production data, quality control records and procedures, customer complaints and inquiry files, research and development files, records and data (including all correspondence with any governmental authority), sales material and records, strategic plans, internal financial statements and marketing and promotional surveys, material and research, that relate to the Business or the Purchased Assets; and

(k)      All goodwill associated with any of the assets described in the foregoing

Retained Assets. Notwithstanding anything to the contrary in this Agreement, the Debtor shall not sell, convey, transfer, assign or deliver, and the buyer of the Purchased Assets (the "Buyer") shall not purchase or acquire any assets of the Debtor other than the Purchased Assets. Without limiting the generality of the foregoing, the Buyer shall not acquire any of the following assets (collectively, the "Retained Assets"):

(l)      All cash, bank deposits, bank accounts, certificates of deposit, pre-paid amounts with third parties, vendor deposits, customer deposits, performance bonds and/or cash equivalents (including marketable securities and short term investments);

(m)      All rights of the Debtor under this Agreement or contracts, if any, designated under the Purchase Agreement as retained by the Debtor (the "Retained Contracts");

(n)      All insurance policies of the Debtor and all rights thereunder (including, without limitation, any and all insurance refunds or claims made under such policies relating to the Purchased Assets on or before the Sale Date (as defined below));

(o)      All tax assets and attributes and all claims which the Debtor, any affiliate of the Debtor, or the Business may have, on or after the date hereof, against any governmental authority for refund or credit of any type with respect to taxes applicable to the Business for periods ending on or prior to the Sale Date, including, without limitation, any tax refund due to the Debtor with respect to periods ending prior to the Sale Date;

(p)      The organizational documents, minute books, qualifications to conduct business as a foreign corporation, arrangements with registered agents relating to foreign qualifications, taxpayer and other identification numbers, seals, personnel records, stock records and tax returns of the Debtor and other similar books and records, financial records, books of account, bank and brokerage records and statements and any other books and records which the Debtor is prohibited from disclosing or transferring to Buyer under applicable law and is required by applicable law to retain;

(q)     All rights to any action, suit or claim of any nature available to or being pursued by the Debtor, whether arising by way of counterclaim or otherwise;, including but not limited to (i) claims for breach of contract, tort, breach of fiduciary duty and (ii) all Debtor's claims or causes of action, including those under Sections 541, 542, 544, 545, 547, 548 and 549 (and, to the extent applicable for remedies, Sections 550 and 551) of the Bankruptcy Code; and

(r)     The assets, properties and rights specifically set forth on **Schedule E**.

Notwithstanding the foregoing, nothing herein shall preclude the Debtor from authorizing the sale of certain Retained Assets to the Buyer in the exercise of the Debtor's business judgment and upon approval of the Bankruptcy Court pursuant to the terms of the Sale Order.

## II.     Submissions and Due Diligence

Any person or entity that is interested in becoming a potential purchaser of the Purchased Assets, including, without limitation, each direct or indirect equity holder of such prospective purchaser or holder and each trustee and beneficiary of any trust included therein (each a "Potential Bidder") shall notify the Debtor and shall submit the following information:

### A.     Confidentiality Agreement

If not previously executed and delivered in connection with the Sale, each Potential Bidder shall provide an executed confidentiality agreement substantially in the form annexed hereto as Exhibit ___ with such changes as are reasonably acceptable to the Debtor (the "Confidentiality Agreement").

### B.     Due Diligence

A Potential Bidder who has executed a Confidentiality Agreement shall be given access to a data room for such purpose.

To the extent practicable, the Debtor shall provide each Potential Bidder who has executed a Confidentially Agreement with access to (i) the same confidential evaluation materials and information provided by the Debtor to each other Potential Bidder and (ii) such other financial information and other data related to the Debtor as the Potential Bidder may reasonably request, which requests may include reasonable access to the Debtor's senior management and advisors and shall be deemed to include, in any event, the Debtor's good faith estimate of the potential cure costs and rejection damages associated with each material contract and lease subject to assumption in conjunction with the Sale.

## III.     Submission of Bids

Each offer, solicitation or proposal (a "Bid") from a Potential Bidder or Potential Bidders Group, as the case may be, must be in writing and must be received via electronic mail by (a) the Debtor's counsel, Richard G. Grant, CULHANE MEADOWS, PLLC, 100 Crescent Court, Suite 700, Dallas, Texas 75201 (email: rgrant@culhanemeadows.com); (b) counsel to the Official

Committee of Unsecured Creditors (the "UCC"), Jason B. Binford, KANE RUSSELL COLEMAN & LOGAN, PC, 3700 Thanksgiving Tower, 1601 Elm Street, Dallas, Texas 75201(email: jbinford@krcl.com); and (c) counsel for GTL International, Ltd., Michelle E. Shriro, SINGER & LEVICK, 16200 Addison Road, Suite 140, Addison, Texas 75001 (mshriro@singerlevick.com ) (collectively, the "Notice Parties"), on or before **noon (prevailing Central time) on August 6, 2015** (the "Bid Deadline"). As detailed in subparagraphs A through C below, a Potential Bidder or Potential Bidders Group, as the case may be, that submits a Bid on or before the Bid Deadline that includes an executed mark-up of the Purchase Agreement (as defined below), and a Deposit (as defined below), shall be deemed an "Acceptable Potential Bidder."

A Potential Bidder or a Potential Bidders Group, as the case may be, that submits a Bid after the Bid Deadline shall not constitute an Acceptable Potential Bidder.

### A. **Proposed Purchase Agreement**

To facilitate the Auction and to assist the Debtor's Senior VP and Dawn Ragan, Financial Advisor (collectively, the "Debtor Auction Team") and other interested parties in assessing the terms of each Bid, each Potential Bidder or Potential Bidders Group, as the case may be, must submit a proposed asset purchase agreement (the "Purchase Agreement") to prepare its bid and shall submit as part of its Bid, a fully executed asset purchase agreement. Each Bid shall include a summary term sheet including a summary of the material terms proposed to be included in the Bid. To the extent practicable, the Debtor will make members of senior management and advisors available to discuss the terms of a Bid and seek to provide to each Acceptable Potential Bidder, the disclosure schedules to the Acceptable Potential Bidder's Bid in connection with the preparation of such Bid.

### B. **Deposit**

Potential Bidders will be required to submit to the Debtor, in immediately available funds, letter of credit or other form of security reasonably acceptable to Debtor, a good faith deposit in an amount equal to US $500,000 (the "Deposit") at the time the Potential Bidder submits a Bid. The Deposit shall be returned to the respective Potential Bidder if such bidder is determined not to be a Qualified Bidder, or following the Auction if the Acceptable Potential Bidder is a Qualified Bidder but not the Backup Bidder (as defined below) or the Successful Bidder (as defined below). The Deposit shall be returned to the Backup Bidder on the earlier of: (i) the closing of the Sale to the Successful Bidder (as defined below) and (ii) 45 days after the close of the Auction.

### IV. **Determining Qualified Bids and Qualified Bidders**

### A. **Terms and Conditions of a Qualified Bid**

In addition to the requirements for an Acceptable Potential Bidder, in order for a Bid from an Acceptable Potential Bidder to be deemed a "Qualified Bid" and for the Acceptable Potential Bidder to be deemed a "Qualified Bidder", the Bid must: (i) satisfy each of the

conditions listed below in paragraphs 1 through 6 and (ii) be submitted on or before the Bid Deadline. A Bid submitted after the Bid Deadline shall not constitute a Qualified Bid.

The Debtor Auction Team may determine in its reasonable discretion, after consultation with the Official Committee of Unsecured Creditors, and whether an Acceptable Potential Bidder's Bid is a Qualified Bid.

Promptly after determining that any Acceptable Potential Bidder does not appear to be a Qualified Bidder, the Debtor Auction Team shall notify such Bidder of this determination and, not acting in bad faith, shall seek to resolve any impediment to the Acceptable Potential Bidder's becoming a Qualified Bidder if possible.

1.      Financial Capability: To the extent not previously provided, a Bid shall contain evidence (in the form of binding commitment letters, guarantees or otherwise) that the Acceptable Potential Bidder is able to fulfill all obligations in connection with the contemplated transactions such that the purchase price for the Purchased Assets shall be fully funded and the Sale shall close on or before **August 18, 2015** (the "Sale Date").

2.      Corporate Authority: A Bid shall contain written evidence of each Acceptable Potential Bidder's boards of directors' (or comparable governing bodies) approval of the contemplated transaction.

3.      Nature of Bids for Purchased Assets and Minimum Overbid: The Bid must describe the amount of cash consideration to be paid and identify the Purchased Assets to be included in the bid.

The Bid must also include the assumption of all liabilities and financial obligations assumed in the Purchase Agreement. Those liabilities include:

(a)      All of the Debtor's liabilities, responsibilities and obligations under the Assumed Contracts including, without limitation, amounts necessary to cure monetary defaults under each Assumed Contract;

(b)      All liabilities of the Debtor accruing on or after the Sale Date including, without limitation, all liabilities associated with employees of the Debtor (if any) transferred to the Buyer as of the Sale Date, including with respect to employee benefits, compensation or other arrangements with respect to any transferred employee; and

(c)      All claims, liabilities, responsibilities, obligations, costs and expenses arising in any way out of the operation of the Business or the ownership or operation of the Purchased Assets on or after the Sale Date, including, without limitation, (i) any and all taxes arising out of or attributable to the operation or ownership of the Purchased Assets on or after the Sale Date, (ii) any and all claims associated with the use of any Purchased Assets, including liability to any third party for any injury or damage to persons or property and any damage to the asset itself, due to any condition of, defect in, or design of the asset in question,

latent or otherwise, whether such condition, defect, or design now exists or hereafter occurs and (iii) any and all warranty obligations or claims relating to warranties provided to customers of  the Business on or prior to the Sale Date; and

4.      Purchase Agreement and Ancillary Agreements: As stated above in Section III.A, a Bid must include a fully executed form of Purchase Agreement and must also include any agreements ancillary to the Sale, each executed by an Acceptable Potential Bidder.

5.      Approval: Contain a representation that the bid is not conditional on any unperformed due diligence, debtor equity financing or any corporate approval.

6.      Other Bid Requirements: A Bid must: (i) include a statement acknowledging the bidder's consent to the jurisdiction of the Bankruptcy Court; (ii) provide that the bidder's offer is irrevocable until the earlier of: (a) consummation of the Sale of the Purchased Assets, (b) the close of the Auction unless the Potential Bidder is selected as the Successful Bidder or the Backup Bidder; and (c) 45 days after the close of the Auction if the Potential Bidder is selected as the Backup Bidder; (iii) contain the form of Sale Order (marked against the proposed order) the bidder would request the Debtor to seek court approval of at the Sale Hearing; and (iv) include evidence of the bidder's ability to provide adequate assurance of future performance of such contracts, permits and licenses it would require the Debtor to assume and assign.

### B.      Qualified Bidders

Only the Acceptable Potential Bidders who have satisfied the foregoing requirements, shall be Qualified Bidders. If no Qualified Bid is timely received, the Debtor will not conduct an Auction.

### C.      Notification by the Debtor of the Best Qualified Bid

On or prior to midnight (prevailing Central time) on the **August 6, 2015**, the Debtor Auction Team shall provide each Qualified Bidder that has submitted a Qualified Bid: (i) written notice of the Auction and (ii) notice of the Qualified Bid with which the Debtor intends to commence the Auction (the "Best Qualified Bid") and (iii) copies of all Qualified Bids.

## V.      The Auction

If more than one Qualified Bid is timely received, the Auction will be conducted at the offices of _____ commencing on **August 7, 2015 at 10:00 a.m.** (prevailing Central time) to determine the highest or otherwise best bid with respect to the Purchased Assets.

### A.      Participation in the Auction

Only (i) Qualified Bidders who have submitted a Qualified Bid and (ii) counsel for the UCC and a designated representative of the UCC, shall be eligible to participate in the Auction.

### B. The Auction Process

All Bids made at the Auction after the commencement thereof (each, an "Overbid") shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtor Auction Team shall maintain a transcript of all Overbids made and announced at the Auction, including the Successful Bid (as defined below). The Debtor Auction Team, in its reasonable discretion, may extend the Auction deadline and/or adjourn, continue or suspend the Auction and/or the hearing to approve the Sale of the Purchased Assets for any reason, including to seek further clarification from the Bankruptcy Court regarding any issues, without further order of the Bankruptcy Court, by filing a notice with the Bankruptcy Court and serving such notice on all Qualified Bidders.

The Debtor Auction Team shall announce at the Auction the material terms of each Overbid, and in consultation with the UCC, the total consideration offered in each such Overbid to provide a floor for further bidding. The current highest or best offer for the Purchased Assets, as determined by the Debtor Auction Team in consultation with the UCC shall represent the new Best Qualified Bid. A Qualified Bidder need not make an Overbid in any particular Auction round to maintain their ability to make a later Overbid.

Any Overbid shall be made in overbid increments of at least US $100,000 greater than the Best Qualified Bid.

Except as modified below, an Overbid must comply with the conditions for a Qualified Bid as set forth above.

To the extent not previously provided (which shall be determined by the Debtor in consultation with the UCC, a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor in consultation with the UCC) demonstrating such Qualified Bidder's ability to close the proposed transaction.

Except as expressly provided herein, the procedures set forth herein cannot be amended or modified without the either (i) approval of the Bankruptcy Court, or (ii) written consent (to include e-mail) of the Debtor and the UCC, expressed by counsel for the respective party. The Bankruptcy Court shall retain exclusive jurisdiction to construe these Bidding Procedures and determine any disputes arising under them.

### VI. Identification of the Successful Bidder and Acceptance of Successful Bid

### A. Identification of the Successful Bidder

At the close of the Auction, the Debtor Auction Team, in consultation with the UCC, shall determine and announce which Qualified Bidder had the highest or best bid (the "Successful Bid." and such bidder being the "Successful Bidder"). The Debtor Auction Team reserves the right to determine, in its reasonable business judgment and in consultation with the UCC, which bid is the highest or otherwise best (recognizing that, in determining same, a critical

consideration shall be which bid provides the greatest net proceeds available for distribution to creditors by the estates.

After the Debtor Auction Team, in consultation with the UCC, so determines the Successful Bid, the Auction will be closed. The Debtor Auction Team, in consultation with the UCC, will then determine and announce which bid has been determined to be the second highest or otherwise best bid (the "Backup Bid" and such bidder being the "Backup Bidder"). In determining which bid is the Backup Bid, the Debtor, in consultation with the UCC, will use its reasonable business judgment.

Notwithstanding anything herein to the contrary, the Debtor, in its reasonable discretion and in consultation with the UCC, reserves the right to reject at any time prior to entry of a court order approving an offer, without liability, any offer that the Debtor deems to be: (x) inadequate or insufficient, (y) contrary to the best interests of the Debtor and its estate, or (z) with the advice of counsel, not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set forth therein or herein.

The presentation of a particular Bid to the Bankruptcy Court for approval shall not constitute the Debtor's acceptance of the Bid. The Debtor will be deemed to have accepted the Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing.

### B.      Acceptance of Bid From Successful Bidder

The Debtor presently intends to sell the Purchased Assets to the Successful Bidder, pursuant to the terms of the Successful Bid. The Debtor shall be bound by the Successful Bid only when such Bid has been approved by the Bankruptcy Court at the Sale Hearing.

Except as otherwise provided in the Successful Bid agreed to by the Debtor, all of the Debtor's right, title and interest in and to the Purchased Assets shall be sold free and clear of all liens, claims, encumbrances, and interests thereon and there against (collectively, the "Transferred Liens"), with such Transferred Liens attaching to the proceeds of the Purchased Assets with the same validity and priority as the Transferred Liens had on the Purchased Assets immediately prior to the Sale.

### VII.   The Sale Hearing

The Sale Hearing shall be held in the Bankruptcy Court on **August 11, 2015 at _____** p.m. and may be adjourned from time to time without further notice to creditors or parties in interest other than an announcement in open court at the Sale Hearing. Any objections to the approval of the sale of the Purchased Assets shall be argued at the Sale Hearing.

### VIII.  Closing with the Backup Bidder(s)

Without any further order of the Bankruptcy Court after Confirmation, if for any reason the Successful Bidder fails to consummate the Sale within such time as is determined reasonable by the Debtor's Auction Team, in its sole discretion after consultation with the UCC, the Backup

Bidder will be deemed to have submitted the highest or best bid and the Debtor and the Backup Bidder are authorized to effect the Sale to the Backup Bidder as soon as is commercially reasonable.

Following the Sale, (i) if such failure to consummate the Sale is the result of a breach by the Successful Bidder or the Backup Bidder, the Successful Bidder or the Backup Bidder, as the case may be, shall be deemed to have forfeited its Deposit and the Debtor additionally reserves the right to seek all available damages from any defaulting Bidder, and (ii) if such failure to consummate the Sale is the result of a breach by the Debtor, the Successful Bidder or Backup Bidder, as the case may be, shall have no recourse against the Debtor other than for recovery of its deposit.

## Schedule A
## Real Estate Leases (as determined by Bidder)

GKII Plano, L.P.
c/o Lincoln Property Commercial, Inc.
2000 McKinney Ave. Suite 1000
Dallas, TX 75201-1954
**Lease Agreement of 5200 Tennyson, Plano, TX**

## Schedule B
## Customer Contracts (as determined by Bidder)

Contracts with AT&T (contract expired), Comsys, Ericsson, Nokia, NSN, and Verizon.

## Schedule C
## Vendor Contracts (as determined by Bidder)

3T Pro, Inc.
825 Market Street Bldg M Ste 205
Allen, TX 75013
DFW Online Backup Service
Contract
3T Productions, Inc.
825 Market St. Bldg M Ste 205
Allen, TX 75013
**Consulting Agreement**

Abdul Qureshi
c/o The Sharman Law Firm LLC
11175 Cicero Drive Suite 100
Alpharetta, GA 30022
**General Release and Settlement
Agreement - Litigation**

ACTIX
45365 Vintage Park Plaza
Suite 110
Sterling, VA 20166
**Software License Agreement**

ADT Security Services - Plano
P.O. BOX 371878
Pittsburgh, PA 15250-7878
**Small Business Contract – Security
$49.99/month**

Atiya Jogezai
6101 Saintsbury Drive Apt 232
The Colony, TX 75056
**Consultant Agreement (no longer
active)**

Beetatek Inc.
1333 Corporate Drive Suite 105
Irving, TX 75038
**Service Agreement providing
rental vehicles**

Bulldog Warehousing
910 10th Street # 800
Plano, TX 75074
**Self-Service Storage Rental
Agreement**

Digital Discovery
8131 LBJ Freeway, Suite 325
Dallas, TX 75251
**Professional Service and Retainer
Agreement**

Dish Network
PO Box 9033
Littleton, CO 80160
**Dish Network Service Agreement
(no longer active)**

Enterprise Fleet Management, Inc.
2625 Marketplace
Harrisburg, PA 17110
**Maintenance Agreement relating
to Master Equity Lease Agreement
– Vehicles (no longer active)**

Enterprise FM Trust
c/o Enterprise Fleet Management,
Inc.
2625 Marketplace
Harrisburg, PA 17110
**Master Equity Lease Agreement –
Vehicles (no longer active)**

Extended Stay America Direct Bill
Payment Terms Agreement
Extended Stay Hotels
11525 N. Community House Road
#100
Charlotte, NC 28277
**2013 National Partnership
Agreement – Extended Stay Hotels**

EZPass
TOLL BILL Payment Processing
Center
P.O. Box 15183
Albany, NY 12212-5183
**Tolltag Agreement (no longer
active)**

Fastrak
62 First Street
San Francisco, CA 94105
**Tolltag Agreement (no longer
active)**

Fleetmatics
3030 Salt Creek Lane
Arlington Heights, IL 60005
**Commerical Equipment and
Subscriber Agreement
36 month term Order Date: 11-15-
11; 7-17-12; 9-20-12; 2-21-12; 5-25-
12; 5-25-12; 2-29-12**

Global InnovSource Solutions, Pvt.
Ltd. a/k/a Innovsource Private
Limited
A-2 Kailas Industrial Complex
Park Site. Vikhroli (W) Mumbai 400
079
**Staffing Service Agreement**

Global Value Add Inc
8765 Stockyard Drive
Unit 101
Frisco, TX 75034
**Business Consulting Services
Contract $1,250/month**

GreatAmerica Financial Services
Corp
625 First Street SE
Cedar Rapids, IA 52401
Equipment Lease Agreement
**1 WorkCentre 7830PT, fax1,
WPK, conv stplr
$240.17/month - 60 months
Purchase Option: FMV**

Hertz Corporation
Commercial Billing Department
1124
PO Box 121124
Dallas, TX 75312-1124
**Corporate Account Agreement -
Rental Fleet**

Informage SQN Technologies LLC
3415 Custer Road, Sutie 105
Plano, TX 75023
**Outsourcing Agreement dated
6/24/2013 and Consent to
Assignment**

Jan-Pro Cleaning Systems
3301 Gateway Drive
Suite 105
Irving, TX 75063
**Cleaning Services Agreement
$345/month**

Mohammed Khateeb Ahsan
c/o Peter Gimbel Esq
Law Offices of Nadeem H. Makada
1340 Bayshore Highway
Burlingame, CA 94010
**Settlement Agreement and Release
10-16-14**

Nevill Business Machines, Inc.
1305 West Beltline, Suite 320
Carrollton, TX 75006
**Equipment Lease
Sharp MX-2600n Color System
60 payments at $198.34/month
Purchase Option: FMV
Agreement Date: 2-24-2010 (no
longer active)**

Nevill Document Solutions
300 Fellowship Road
Mount Laurel, NJ 08054
**Account No. 1241024
Copier TX lease (no longer active)**

Nevill Document Solutions
300 Fellowship Road
Mount Laurel, NJ 08054
**Account No. DAH898
Sharp Printer printing charges
and toner (no longer active)**

Origin to Future, Inc.
181 New Road, Sutie 221
Parsippany, NJ 07054
**Phase Measurement Services
Subcontractor**

Paytime Harrisburg, Inc.
**Payroll Service Agreement dated
5-29-13**

PEO Services, L.P. (Insperity)
19001 Crescent Springs Drive
Kingwood, TX 77339-3802
**Client Service Agreement -
Professional
Employment Organization**

Pitney Bowes Inc.
2225 American Drive
Neenah, WI 54956
**Equipment Lease**
$112.39/quarter

Premium Assignment Corporation
PO Box 8000
Tallahassee, FL 32314-8000
**Premium Finance Agreement
Insurance Premium Financing
Dated 12/1/14; 11 Payments of
$19,243.95**

Software Quality Leaders, Inc.
12000 Ford Road, Suite A411
Dallas, TX 75234
**Phase Measurement Services
Subcontractor**

TBrij LLC ( dba Corporation Cars)
453 Arbol
Irving, TX 75039
**Services Agreement (vehicles)**

TransmediaX
125 Hopewell Grove Drive
Suite # 100
Alpharetta, GA 30004
**RF Engineering Services
Consultant Agreement**

TW Telecom Holdings, Inc.
PO Box 172567
Denver, CO 80217-2567
**IP VPN/Voice/IP VPN/Internet
Access Agreement**

VAR Resources
Leasing Customer Service
MAC N00050055
800 Walnut Street
Des Moines, IA 50309-3605
**Master Lease Agreement - Servers
Description
Dell PowerEdge T310 FTP Server
- 6 TB Storage
Wing FTP Server Corporate
Edition for Windows**

**DellPowerEdge T3l0 Exchange
Server
Microsoft Exchange 2010
Standard (150 License)
Exchange User License
Onsite Backup Drive Multi-TB
Drive
Microsoft Exchange Server 2010
Standard (150
Additional Users)
Installation and Integration**

Wright Express Financial Services
Corp
**WEX Fuel Card Agreement**

**Also:**

**Connex Systems, Inc.
Intuit, Inc.
FedEx Corporation
Flashback Data, LLC**

**Schedule D**
**Other Contracts**

None

**Schedule E**
**Other Excluded Assets**

None

**EXHIBIT D**

## EXHIBIT D
## FORM OF NOTICE OF SALE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 15-40248-BR-11** |
| GTL (USA), INC., | § | **Chapter 11** |
| | § | |
| Debtor. | § | |

## NOTICE OF SALE OF
## SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

**PLEASE TAKE NOTICE THAT:**

On February 9, 2015, (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under chapter 1 1 of title 11 of the United States Code 11 U.S.C. §§ 101 *et seq.,* as amended (the "Bankruptcy Code"). The Debtor continues to manage and operate its business as a Debtor-in-possession pursuant to sections 1107 and 1 108 of the Bankruptcy Code. No trustee or examiner has been appointed in the chapter 11 case. A creditors' committee (the "UCC") has been appointed in this chapter 11 case (the "Chapter 11 Case") by the United States Trustee.

1.      **The Sale.** Pursuant to the Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief (the "Sale Motion"), the Debtor is in the process of auctioning substantially all of its assets (the "Assets") to any Successful Bidder in the auction (the "Proposed Sale").

2.      **The Auction Process.** Pursuant to the Bankruptcy Court's Order Approving and Authorizing (I) (a) Bidding Procedures in Connection with the Sale of Substantially All Assets of the Debtor, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Establishment of Cure Amounts, (Ii) Approving the Form of Notice, and (Iii) Setting a Hearing Date for the Approval of the Sale, and (Iv) Granting Related Relief (the "Sale Procedures  Order"), entered on July ___, 2015, an auction (the "Auction") for the sale of the Assets will be held on August ___, 2015, at 10:00 a.m. (prevailing Central Time) (the "Auction Date") at the offices of ___.

3.      **Bidding**.  All bidding shall be done in conformance with the Bid Procedures described in the Sale Procedures Order. A copy of the Sale Procedures Order may be obtained by written request to rgrant@culhanemeadows.com. Each offer, solicitation or proposal (a "Bid") from a Potential Bidder or Potential Bidders Group, as the case may be, must be in writing and must be received via electronic mail by (a) the Debtor's counsel, Richard G. Grant, CULHANE MEADOWS, PLLC, 100 Crescent Court, Suite 700, Dallas, Texas 75201 (email: rgrant@culhanemeadows.com); (b) counsel to the Official Committee of Unsecured Creditors (the "UCC"), Jason B. Binford, KANE RUSSELL COLEMAN & LOGAN, PC, 3700 Thanksgiving Tower, 1601 Elm Street, Dallas, Texas 75201(email: jbinford@krcl.com); and (c) counsel for GTL International, Ltd., Michelle E. Shriro, SINGER & LEVICK, 16200 Addison Road, Suite 140, Addison, Texas 75001 (mshriro@singerlevick.com ) (collectively, the "Notice Parties"), on or before **noon (prevailing Central time) on August ___, 2015** (the "Bid Deadline").

4.      **The Sale Hearing**. A hearing (the "Sale Hearing ') at which the Bankruptcy Court will consider approving the Proposed Sale will be held on August ___ , 2015 at ___ __.m. (prevailing Central time) at the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, ___ (the "Bankruptcy Court"), before the Honorable Brenda Rhoades, United States Bankruptcy Judge. All objections to the Proposed Sale must be filed on or before July __, 2015 at 4:00 p.m. (prevailing Central time) with the Bankruptcy Court, and served so as to be received by the Notice Parties referenced in paragraph 3 above by such deadline.

Dated: July 17, 2015                          CULHANE MEADOWS, PLLC


                                              By:  ___/s/ Lynnette Warman_____
                                                   Lynnette Warman
                                                   Tex. Bar No. 20867940
                                                   Richard G. Grant
                                                   Tex. Bar No. 08302650
                                              The Crescent, Suite 700
                                              100 Crescent Court
                                              Dallas, Texas 75201

                                              Telephone: 214-693-6525
                                              Facsimile: 214-361-6690
                                              Email: rgrant@culhanemeadows.com
                                              Email: lwarman@culhanemeadows.com

                                              ATTORNEYS FOR
                                              DEBTOR IN POSSESSION


### CERTIFICATE OF SERVICE

The undersigned hereby certifies that he has transmitted a true and correct copy of the foregoing via the Court's Electronic Case Filing system to all persons participating therein on July 17, 2015.


                                              _____/s/ Richard Grant_____
                                              Richard G. Grant

**EXHIBIT E**

EXHIBIT E
FORM OF ORDER

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 15-40248-BR-11** |
| GTL (USA), INC., | § | **Chapter 11** |
| | § | |
| Debtor. | § | |

**ORDER APPROVING AND AUTHORIZING (I) (A) BIDDING
PROCEDURES IN CONNECTION WITH THE SALE OF
SUBSTANTIALLY ALL ASSETS OF THE DEBTOR, (B) THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, (C) THE ESTABLISHMENT
OF CURE AMOUNTS, (II) APPROVING THE FORM OF NOTICE, AND
(III) SETTING A HEARING DATE FOR THE APPROVAL OF THE
SALE, AND (IV) GRANTING RELATED RELIEF**

On July ___, 2015, came on for consideration the Debtor' Expedited Motion for an Order

Approving the Procedures for (A) the Sale of Substantially All Assets, (B) the Assumption and

Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Establishment of

Cure Amounts, (II) Approving the Form of Notice, and (III) Setting a Hearing Date for the

Approval of the Sale, and (IV) Granting Related Relief [Docket No. 8] (the "**Sales Procedures**

**Motion**") filed by GTL (USA), Inc. ("GTL" or the "Debtor") requesting the entry of an order

("***Order***") (I) approving the procedures for (a) the sale (the "***Sale***") of substantially all of the

Debtor' assets (the "***Assets***") pursuant to section 363 of the Bankruptcy Code (the "***Sale***

***Procedures***"), (b) the assumption and assignment of certain executory contracts and unexpired

leases pursuant to section 365 of the Bankruptcy Code, and (c) the establishment of cure

amounts, (II) approving the form of notice of the Sale Hearing, and (III) setting a hearing date

*Order Approving and Authorizing (I) (a) Bidding Procedures in Connection with the Sale of Substantially All Assets of the
Debtor, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Establishment of
Cure Amounts, (Ii) Approving the Form of Notice, and (Iii) Setting a Hearing Date for the Approval of the Sale, and (Iv)
Granting Related Relief*                                                                                                    *Page 1*

for the Sale Hearing. The Court, having found that it has jurisdiction over this matter pursuant to

28 U.S.C. § 1334, and having considered the Sales Procedures Motion, and all of the exhibits

attached to the Sales Procedures Motion, the statements of counsel and any testimony or offer of

proof as to testimony on the record at the hearing to approve the Sales Procedures Motion, at

which time all interested parties were offered an opportunity to be heard with respect to the Sales

Procedures Motion; and it appearing that the relief requested in the Sales Procedures Motion is in

the best interests of the Debtor, its bankruptcy estate, its creditors and other parties-in-interest,;

and after due deliberation and good cause appearing therefor, this Court FINDS AND

DETERMINES THAT:

A.      Jurisdiction and Venue. This Court has jurisdiction over the Sales Procedures

Motion under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. §

157(b)(2)(A). Venue of this Chapter 11 Case and the Sales Procedures Motion in this District is

proper under 28 U.S.C. §§ 1408 and 1409.

B.      Statutory predicates. The statutory predicates for the relief sought in the Sales

Procedures Motion are Bankruptcy Code sections 105(a), 363 and 365 and Bankruptcy Rules

2002, 6004 and 6006.

C.      Notice. As evidenced by the affidavits of service filed with this Court and based

upon the representations of counsel at the Sale Procedures Hearing: (i) due, proper, timely,

adequate and sufficient notice of the Sales Procedures Motion has been provided in accordance

with Bankruptcy Code sections 102(1), 105(a), and 363 and Bankruptcy Rules 2002, 6004, and

6006; (ii) such notice was and is good, sufficient and appropriate under the circumstances; and

(iii) no other or further notice of the Sales Procedures Motion, or the Sale Procedures Hearing is

or shall be required.

*Order Approving and Authorizing (I) (a) Bidding Procedures in Connection with the Sale of Substantially All Assets of the
Debtor, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Establishment of
Cure Amounts, (Ii) Approving the Form of Notice, and (Ii) Setting a Hearing Date for the Approval of the Sale, and (Iv)
Granting Related Relief*                                                                                          **Page 2**

D.      Opportunity to Object. A reasonable opportunity to object and to be heard with respect to the Sales Procedures Motion and the relief requested therein has been given, in light of the circumstances, to all interested persons and entities.

E.      Proposed Sale of Assets. The Debtor proposes to sell substantially all of its assets which primarily include (i) its accounts receivable; (ii) its rights under the lease agreement at its primary office location; (iii) its contracts with vendors and customers and (iv) various other personal property and equipment.

F.      Sale in Best Interests. Good and sufficient reasons for approval of the Sale Procedures have been articulated, and the relief requested in the Sales Procedures Motion is in the best interests of Debtor, its estates, its creditors and other parties in interest.

G.      Business Justification. The Debtor have demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the Sale and that the reasonably prompt consummation of the Sale is necessary and appropriate to maximize the value of the Debtor's estate.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

1.      The Sales Procedures Motion[1] is granted as hereinafter set forth.

2.      Any objections to the entry of this Order or the relief granted herein and requested in the Sales Procedures Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof are hereby denied and overruled on the merits with prejudice.

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the McLaren Objection, the McLaren Purchase Agreement or the Purchase Agreement (defined in paragraph 5 of this Order").

*Order Approving and Authorizing (I) (a) Bidding Procedures in Connection with the Sale of Substantially All Assets of the Debtor, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Establishment of Cure Amounts, (Ii) Approving the Form of Notice, and (Iii) Setting a Hearing Date for the Approval of the Sale, and (Iv) Granting Related Relief*                                                                 *Page 3*

3.      The Sale Procedures set forth in the Sales Procedures Motion are hereby approved in its entirety, including with respect to the procedures regarding (i) the auction and bidding process, (ii) the assumption and assignment of certain Executory Contracts, and (iii) the establishment of cure amounts.

4.      The Bid Procedures attached hereto as ***Exhibit A*** hereto shall govern the sale process, are reasonable and appropriate and represent the best method for maximizing the return for the Purchased Assets.

5.      To constitute a "Qualified Bid," a bid must be received by the Bid Deadline (as defined in the Bid Procedures) and otherwise comply with all of the applicable provisions of the Bid Procedures.

6.      The failure specifically to include or reference a particular provision of the Bid Procedures in this Order shall not diminish or impair the effectiveness of such provision. The Bid Procedures are hereby authorized and approved in its entirety.

7.      The Debtor shall file a Notice of Successful Bidder identifying the Successful Bidder and the terms of the Successful Bid within one business day following the completion of the Auction. The Debtor shall have the right to reject a Bid as set forth in the Bid Procedures.

8.      Without any further order of this Bankruptcy Court, if for any reason the Successful Bidder fails to consummate the Sale within such time as is determined reasonable by the Debtor's Auction Team, in its sole discretion after consultation with the UCC, the Backup Bidder will be deemed to have submitted the highest or best bid and the Debtor and the Backup Bidder are authorized to effect the Sale to the Backup Bidder as soon as is commercially reasonable.

*Order Approving and Authorizing (I) (a) Bidding Procedures in Connection with the Sale of Substantially All Assets of the Debtor, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Establishment of Cure Amounts, (Ii) Approving the Form of Notice, and (Ii) Setting a Hearing Date for the Approval of the Sale, and (Iv) Granting Related Relief*                                                                                                               **Page 4**

9.     Following the Sale, (i) if such failure to consummate the Sale is the result of a breach by the Successful Bidder or the Backup Bidder, the Successful Bidder or the Backup Bidder, as the case may be, shall be deemed to have forfeited its deposit and the Debtor may seek all available damages from any defaulting Bidder, and (ii) if such failure to consummate the Sale is the result of a breach by the Debtor, the Successful Bidder or Backup Bidder, as the case may be, shall have no recourse against the Debtor other than for recovery of its deposit.

10.     The Debtor shall file with the Court and serve a Cure Notice on each party to an Executory Contract that is being assumed and assigned in connection with the Sale by no later than **July 31, 2015**.

11.      Any objection to the Sale (including the Cure Notice) shall be filed and served on (a) the Debtor's counsel, Richard G. Grant, CULHANE MEADOWS, PLLC, 100 Crescent Court, Suite 700, Dallas, Texas 75201 (email: rgrant@culhanemeadows.com); (b) counsel to the Official Committee of Unsecured Creditors (the "UCC"), Jason B. Binford, KANE RUSSELL COLEMAN & LOGAN, PC, 3700 Thanksgiving Tower, 1601 Elm Street, Dallas, Texas 75201(email: jbinford@krcl.com); and (c) counsel for GTL International, Ltd., Michelle E. Shriro, SINGER & LEVICK, 16200 Addison Road, Suite 140, Addison, Texas 75001 (mshriro@singerlevick.com ) (collectively, the "Notice Parties")or before noon (prevailing Central time) on **August 6, 2015** (the "*Objection Deadline*").

12.     Any objections not timely filed and served in the manner set forth in this Order may, in the Court's discretion, not be considered and may be overruled.

13.     The Sale Hearing to approve the Sale of the Assets is set for **August 11, 2015, at 1:30 p.m.** (Prevailing Central Time), with the Debtor to submit a proposed order approving the terms of the Sale to this Court in advance of the Sale Hearing.

*Order Approving and Authorizing (I) (a) Bidding Procedures in Connection with the Sale of Substantially All Assets of the Debtor, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Establishment of Cure Amounts, (Ii) Approving the Form of Notice, and (Iii) Setting a Hearing Date for the Approval of the Sale, and (Iv) Granting Related Relief*                                                                                    *Page 5*

14.     This Court shall retain jurisdiction to hear and determine all matters arising from

the implementation of this Order.

*Submitted by:*

Richard G. Grant
Tex. Bar No. 08302650
CULHANE MEADOWS, PLLC
The Crescent, Suite 700
100 Crescent Court
Dallas, Texas 75201
Telephone: 214-210-2929
Facsimile: 214-224-0198
Email: rgrant@culhanemeadows.com

ATTORNEYS FOR
DEBTOR IN POSSESSION

*Order Approving and Authorizing (I) (a) Bidding Procedures in Connection with the Sale of Substantially All Assets of the
Debtor, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Establishment of
Cure Amounts, (Ii) Approving the Form of Notice, and (Iii) Setting a Hearing Date for the Approval of the Sale, and (Iv)
Granting Related Relief*                                                                                    *Page 6*

**EXHIBIT F**

**EXHIBIT F**
**FORM OF ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 15-40248-BR-11 |
| GTL (USA), INC., | § | Chapter 11 |
| | § | |
| Debtor. | § | |

**ORDER GRANTING DEBTOR'S EXPEDITED MOTION FOR AN**
**ORDER (I) APPROVING SETTLEMENTS AND DISMISSAL OF THE**
**CASE, OR, IN THE ALTERNATIVE, (II) APPROVING PROCEDURES**
**FOR THE SALE OF SUBSTANTIALLY ALL ASSETS, (A) APPROVAL**
**OF BID PROCEDURES, (B) ASSUMPTION AND ASSIGNMENT OF**
**CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C)**
**ESTABLISHING CURE AMOUNTS, (D) APPROVING THE FORMS OF**
**NOTICE, (E) SETTING HEARING DATES AND (III) GRANTING**
**RELATED RELIEF**

This matter having come before the Court upon the motion (the "Motion") of GTL

(USA), Inc. (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"),

pursuant to sections 363 and 365 of chapter 11 of title 1 1 of the United States Code, 1 1 U.S.C.

§ § 101 , et seq. (the "Bankruptcy Code") and Rules 6004 and 6006 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for an order approving the procedures (the

"Sale Procedures") for the sale of substantially all of the Debtor's assets (the "Sale") pursuant to

that certain Asset Purchase Agreement, dated as of July _____, 2015, between the Debtor and

_____, a copy of which is attached hereto as Exhibit A (the "Purchase

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the*
*Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B)*
*Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D)*
*Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                                     *Page 1*

Agreement") (the assets to be sold being more fully described in the Motion, and collectively

defined in the Purchase Agreement, are hereinafter referred to as the "Purchased Assets"), free

and clear of all liens, claims and encumbrances, other than Permitted Exceptions, (b) the

assumption and assignment of certain executory contracts and unexpired leases, and the

establishment of cure amounts, ((a) through (c) above collectively referred to herein as the

"Sale"), (II) setting a hearing date for the approval of the Sale (the "Sale Hearing") and (III)

approving the form of notice of the Sale Hearing; and the Court having reviewed and considered

the Motion and the Purchase Agreement, the objections thereto, if any, the arguments of counsel

made, and the evidence adduced at the Sale Hearing, at which time all interested parties were

offered an opportunity to be heard with respect to the Sale; and it appearing that the Sale is in the

best interests of the Debtor, its estate, its creditors, and all other parties in interest; and upon the

record of the Sale Hearing and this Chapter 11 Case, and after due deliberation thereon, and good

cause appearing therefore;

THE COURT HEREBY FINDS, DETERMINES AND CONCLUDES THAT:

     A.    **Sale Procedures Order.** The Court entered an order on July ___, 2015 (Docket

No ___) granting the relief requested in the Motion and setting the Sale Hearing to approve the

Sale.

     B.    **Jurisdiction and Venue.** The Court has jurisdiction to authorize the Sale

pursuant to 28 U.S.C. §§ 157(b)( 1 ) and 1334(b). Venue of this Chapter 11 Case in this district is

proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of 28

U.S.C. § 157(b)(2).

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the
Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B)
Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D)
Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*      **Page 2**

C.      **Statutory Predicates.** The statutory predicates for the relief granted herein are

sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and

6006.

D.      **Notice.** Notice of the Sale, including notice of the Sale Hearing (the "Sale

Notice"), was transmitted to all parties who have previously expressed an interest in the

Purchased Assets or who may have been interested in purchasing the Purchased Assets.

E.      **Opportunity to Object.** A reasonable opportunity to object and to be heard with

respect to the Motion and the relief requested therein has been given, in light of the

circumstances, to all interested persons and entities.

F.      **Corporate Authority.** The Debtor has the legal power and authority to convey all

of its right, title and interest in and to the Purchased Assets. The Debtor has (i) full power and

authority to execute the Purchase Agreement and all other documents contemplated thereby, and

(ii) the necessary power and authority to consummate the Sale. No consents or approvals, other

than those expressly provided for in the Purchase Agreement or in the schedules thereto, are

required for the Debtor to close the Sale.

G.      **Business Justification.** Sound business reasons exist for the Sale. Entry into the

Purchase Agreement and consummation of the Sale constitute the Debtor's exercise of sound

business judgment and such acts are in the best interests of the Debtor, its estate, and all parties

in interest. The Court finds that the Debtor has articulated good and sufficient business reasons

justifying the Sale. Such business reasons include, but are not limited to, the following: (i) the

Purchase Agreement constitutes the highest and best offer for the Purchased Assets; (ii) the

Purchase Agreement and the closing thereon will present the best opportunity to realize the value

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the
Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B)
Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D)
Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*      ***Page 3***

of the Purchased Assets on a going concern basis and avoid decline and devaluation of the
Purchased Assets; and (iii) any plan would have likely yielded, at best, the same economic result.

H.    **Arm's Length Sale.** The Purchase Agreement and the Sale were negotiated, and
have been and are undertaken, by the Debtor and Buyer at arm's length without collusion or
fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code. As a
result of the foregoing, the Debtor and Buyer are entitled to the protections of section 363(m) of
the Bankruptcy Code. Moreover, neither the Debtor nor Buyer engaged in any conduct that
would cause or permit the Purchase Agreement, the consummation of the Sale or the assumption
and assignment of the Assumed Contracts and Assumed Leases to be avoided, or costs or
damages to be imposed, under section 363(n) of the Bankruptcy Code.

I.    **Good Faith Buyer.** The Buyer is a good faith Buyer under Bankruptcy Code
section 363(m) and, as such, is entitled to all of the protections afforded thereby.

J.    **Consideration.** The Purchase Price is the highest or otherwise best offer received
by the Debtor, and the Purchase Price constitutes reasonably equivalent value for the Purchased
Assets under the Bankruptcy Code and other applicable law. A sale of the Purchased Assets
other than one free and clear of all liens, claims and encumbrances (other than Permitted
Exceptions) would materially and adversely impact the Debtor's bankruptcy estate, would yield
substantially less value for the Debtor's estate, with less certainty than the available alternatives
and thus the alternative would be of substantially less benefit to the Debtor's estate. Buyer would
not have entered into the Purchase Agreement and would not consummate the Sale, thus
adversely affecting the Debtor, its estate, and its creditors, if the sale of the Purchased Assets,
including the assignment of the Assumed Contracts and Assumed Leases, to Buyer was not free
and clear of all liens, claims and encumbrances (other than Permitted Exceptions), or if Buyer

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the
Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B)
Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D)
Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*        **Page 4**

would, or in the future could, be liable for any such liens, claims or encumbrances. Therefore, the Sale free and clear of all liens, claims and encumbrances, other than Permitted Exceptions, as contemplated by the Purchase Agreement, is in the best interests of the Debtor, its estate and creditors, and all other parties in interest. In reaching this determination, the Court has taken into account both the consideration to be realized directly by the Debtor and the indirect benefits of such Sale for the Debtor's employees, the Debtor's vendors and suppliers, and the public served, directly and indirectly, by the functions performed by the Debtor's employees and the Debtor's business.

K.     **Free and Clear.** The Debtor may sell the Purchased Assets free and clear of all liens, claims and encumbrances (other than and Permitted Exceptions) because, with respect to each creditor asserting a lien, claim or encumbrance, one or more of the standards set forth in Bankruptcy Code § 363(f)(5) has been satisfied. Those holders, if any, of liens, claims or encumbrances who did not object or withdrew objections to the Sale are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of liens, claims or encumbrances who did object fall within one or more of the other subsections of section 363(f) Bankruptcy Code.

L.     **Assumption of Executory Contracts and Unexpired Leases.** The Debtor has demonstrated that it is an exercise of its sound business judgment to assume and assign and sell the Assumed Contracts and Assumed Leases to Buyer in connection with the consummation of the Sale, and the assumption, assignment, and sale of the Assumed Contracts and Assumed Leases is in the best interests of the Debtor, its estate, its creditors, and all parties in interest. The Executory Contracts and Unexpired Leases being assigned and sold to Buyer are an integral part of the Purchased Assets being purchased by Buyer, and accordingly, the assumption, assignment,

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*                     *Page 5*

and sale of the Assumed Contracts and Assumed Leases are reasonable and enhance the value of the Debtor's estate.

M.     **Cure/Adequate Assurance.** The Debtor has filed with the Court and served on all non-debtor parties to all known Executory Contracts and known Unexpired Leases that the Debtor may assume and assign to the Buyer a notice setting forth, among other things, all such known Executory Contracts and known Unexpired Leases and the Debtor's estimate of cure costs with respect to each such Executory Contract and Unexpired Lease according to the Debtor's books and records (the "Cure Notice"). Buyer has provided or will provide adequate assurance of cure of any default existing with respect to any of the Assumed Executory- Contracts and Assumed Leases, within the meaning of section 365(b)( 1)(A) of the Bankruptcy Code. Buyer has provided or will provide adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date of the assignment and assumption of any of the Assumed Contracts and Assumed Leases within the meaning of section 365(b)( 1)(B) of the Bankruptcy Code. Buyer has provided or will provide adequate assurance of its future performance of and under any of the Assumed Contracts and Assumed Leases, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

N.     **No Intentional Fraudulent Transfer.** The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

O.     **Buyer Not a Successor.** Pursuant to the Purchase Agreement, Buyer is not purchasing all of the Debtor's assets in that Buyer is not purchasing any of the Excluded Assets, and Buyer is not holding itself out to the public as a continuation of the Debtor. The Sale and

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*     **Page 6**

related Sale are not and do not amount to a consolidation, merger or *de facto* merger of Buyer and the Debtor and/or the Debtor's estate, there is not substantial continuity between Buyer and the Debtor, there is no continuity of enterprise between the Debtor and Buyer, Buyer is not a mere continuation of the Debtor or the Debtor's estate, and Buyer does not constitute a successor to the Debtor or the Debtor's estate to the extent allowed under state law.

P.    **Legal, Valid Transfer.** The transfer of the Purchased Assets to Buyer will be a legal, valid, and effective transfer of the Purchased Assets, and will vest Buyer with all right, title, and interest of the Debtor to the Purchased Assets free and clear of all liens, claims and encumbrances, other than Permitted Exceptions, including, but not limited to all claims arising under doctrines of successor liability, to the extent allowed under state law.

Q.    **Not a Sub Rosa Plan.** The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford. The Sale neither impermissibly restructures the rights of Debtor's creditors nor impermissibly dictates a liquidating plan of reorganization for the Debtor.

R.    **Prompt Consummation.** Time is of the essence in consummating the Sale. Accordingly, to maximize the value of the Debtor's assets, it is essential that the sale of the Purchased Assets occur as soon as practicable. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006. Approval of the Purchase Agreement and assumption, assignment, and sale of the Assumed Contracts and Assumed Leases, and consummation of the Sale of the Purchased Assets at this time are in the best interests of the Debtor, its creditors, its estate, and all parties in interest.

Based upon all of the foregoing, and after due deliberation, THE COURT ORDERS, ADJUDGES, AND DECREES THAT:

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*        **Page 7**

## I.    SALE OF THE PURCHASED ASSETS

1.    Any objections to the entry of this Order or the relief granted herein that have not

been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof,

hereby are denied and overruled on the merits with prejudice.

2.    The Purchase Agreement and the Sale of the Purchased Assets to Buyer, are

hereby approved and authorized in all respects.

3.    The consideration provided by Buyer for the Purchased Assets under the Purchase

Agreement is fair and reasonable and shall be deemed for all purposes to constitute reasonably

equivalent value and fair consideration under the Bankruptcy Code and any other applicable law,

and the Sale may not be avoided, or costs or damages imposed on or awarded against any party

in interest in these bankruptcy cases under section 363(n) or any other provision, of the

Bankruptcy Code.

4.    The Sale and the Sale are undertaken by Buyer in good faith. Buyer is a Buyer in

good faith of the Purchased Assets as that term is used in section 363(m) of the Bankruptcy

Code, and Buyer is entitled to all of the protections afforded by section 363(m) of the

Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization

provided herein to consummate the Sale shall not affect the validity of the Sale (including the

assumption, assignment, and sale of any of the Assumed Contracts and Assumed Leases), unless

such authorization is duly stayed pending such appeal.

5.    Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, upon the Closing

Date, under the Purchase Agreement, the Purchased Assets shall be transferred to Buyer free and

clear of (a) all liens, claims and encumbrances, other than Permitted Exceptions, (b) any

restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the
Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B)
Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D)
Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*      **Page 8**

ownership of the Purchased Assets and (c) any claim, whether arising prior to or subsequent to

the commencement of this Chapter 1 1 Case, arising under doctrines of successor liability, to the

extent allowed under state law.

6.    Except as expressly provided in the Purchase Agreement, Buyer is not assuming

nor shall it or any affiliate of Buyer be in any way liable or responsible, as a successor, to the

extent allowed under state law, or otherwise, for any liabilities, debts, or obligations of the

Debtor in any way whatsoever relating to or arising from the Debtor's ownership or use of the

Purchased Assets prior to the consummation of the Sale contemplated by the Purchase

Agreement, or any liabilities calculable by reference to the Debtor or its operations or the

Purchased Assets, or relating to continuing or other conditions existing on or prior to the Closing

Date, which liabilities, debts, and obligations are hereby extinguished insofar as they may give

rise to liability, successor liability, to the extent allowed under state law, or otherwise, against

Buyer or any affiliate of Buyer.

7.    The Debtor is authorized and directed to take any and all actions necessary or

appropriate to: (a) consummate the Sale (including, without limitation, to convey to Buyer any

and all of the Purchased Assets intended to be conveyed pursuant to the Purchase Agreement)

and the Closing of the Sale in accordance with the Purchase Agreement and this Order; and (b)

perform, consummate, implement and close fully the Purchase Agreement together with all

additional instruments and documents that may be reasonably necessary or desirable to

implement the Purchase Agreement. The Debtor and Buyer shall have no obligation to proceed

with the Closing of the Purchase Agreement unti l all conditions precedent to their obligations to

do so as set forth in the Purchase Agreement have been satisfied or waived. The obligations of

Buyer under the Purchase Agreement to consummate the Sale contemplated therein at the

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the
Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B)
Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D)
Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*    **Page 9**

Closing are subject to the satisfaction of the conditions precedent set forth in Article V of the

Purchase Agreement on the Closing Date.

8.      Buyer is hereby authorized in connection with the consummation of the Sale to

allocate the Purchased Assets and the Assumed Contracts and Assumed Leases among its

affiliates, designees, assignees, and/or successors in a manner as it in its sole discretion deems

appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the

Purchased Assets or the rights under any of the Assumed Contracts or Assumed Leases to its

affiliates, designees, assignees, and/or successors with all of the rights and protections accorded

under this Order and the Purchase Agreement, and the Debtor shall cooperate with and take all

actions reasonably requested by Buyer to effectuate any of the foregoing.

## II.      ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS

9.      The Debtor is hereby authorized, pursuant to the Purchase Agreement and in

accordance with sections 105(a), 363, 365(b)(l ) and (f)(2) of the Bankruptcy Code, to: (a)

assume the Assumed Contracts and Assumed Leases; (b) sell, assign and transfer to Buyer each

of the Assumed Contracts and Assumed Leases in each case free and clear of all liens, claims

and encumbrances (other than Permitted Exceptions, to the extent applicable); and (c) execute

and deliver to Buyer such assignment documents as may be necessary to sell, assign and transfer

the Assumed Contracts and Assumed Leases.

10.     The Assumed Contracts and Assumed Leases, upon assignment and sale to Buyer,

shall be deemed valid and binding, in full force and effect in accordance with their terms. Upon

assignment and sale to Buyer pursuant to the Purchase Agreement, and in accordance with

sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested in all

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*     **Page 10**

right, title and interest of the Debtor in, to or under each Assumed Executory Contract and

Assumed Unexpired Lease.

11.     All defaults or other obligations of the Debtor under the Assumed Contracts and

Assumed Leases arising or accruing prior to the Closing Date (without giving effect to any

acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the

Bankruptcy Code) shall be deemed cured by the payment or other satisfaction of the amounts

(the "Cure Amounts") set forth in the Cure Notice or as otherwise agreed to by the parties

thereto. Unless a non-debtor party to an Executory Contract or Unexpired Lease that may

become an Assumed Executory Contract or an Assumed Unexpired Lease filed an Assumption

Objection with respect to the Cure Amount by the Cure Objection Deadline, (i) such Cure

Amount shall be controlling at the amount set forth in the applicable Cure Notice and the non-

debtor party to such Assumed Executory Contract or Assumed Unexpired Lease is hereby

forever bound by such Cure Amount; (ii) payment of such Cure Amount shall constitute a cure

of all defaults under such Executory Contract or Unexpired Lease; (iii) payment of such Cure

Amount shall constitute consent to the assignment of such Executory Contract or Unexpired

Lease to Buyer; and (iv) such Cure Amount is not subject to further dispute or audit, including

based on performance prior to the assumption, assignment and sale thereof, irrespective of

whether such Assumed Executory Contract or Assumed Unexpired Lease contains an audit or

similar clause.

12.     Any Assumption Objections not resolved at the Sale Hearing shall be resolved at

such other hearing scheduled on the Assumption Objection that is reasonably acceptable to

Buyer. With respect to any Executory Contract or Unexpired Lease to which an Assumption

Objection is filed, the Executory Contract or Unexpired Lease shall not become an Assumed

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*          **Page 11**

Executory Contract or Assumed Unexpired Lease until (i) the date on which the Assumption

Objection is consensually resolved by the parties or an order of the Court, and (ii) the Executory

Contract or Unexpired Lease does not appear on Schedule ____ attached to the Purchase

Agreement by the Executory Contract Designation Deadline, as applicable. On the date upon

which any Executory Contract or Unexpired Lease becomes an Assumed Executory Contract or

an Assumed Unexpired Lease, Buyer shall assume and undertake to pay, perform and discharge

when due or required to be performed all of the Debtor's obligations under such Assumed

Executory Contract or Assumed Unexpired Lease.

13.     Buyer shall pay or otherwise satisfy the Cure Amounts as soon as reasonably

practicable following the date upon which any Executory Contract or Unexpired Lease becomes

an Assumed Executory Contract or an Assumed Unexpired Lease as a condition to the

assumption and assignment of such Executory Contract or Unexpired Lease.

14.     Upon the assumption and assignment of an Assumed Executory Contract or

Assumed Unexpired Lease, each non-Debtor party to such Assumed Executory Contract or

Assumed Unexpired Lease is hereby forever barred, estopped, and permanently enjoined from

asserting against Buyer or the Purchased Assets any default, additional amounts or other claims

existing as of the date of such assumption and assignment related to such Assumed Executory

Contract or Assumed Unexpired Lease, whether declared or undeclared or known or unknown,

and such non-Debtor parties to an Assumed Executory Contract or Assumed Unexpired Lease

are also forever barred, estopped, and permanently enjoined from asserting against Buyer any

counterclaim, defense or setoff, or any other claim, lien or interest, asserted or assertable against

the Debtor related to such Assumed Executory Contract or Assumed Unexpired Lease.

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the
Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B)
Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D)
Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*          **Page 12**

15.     There shall be no rent accelerations, assignment fees, increases or any other fees charged or chargeable to Buyer as a result of the assumption, assignment and sale of the Assumed Contracts and Assumed Leases. Any provisions in any Assumed Executory Contract or Assumed Unexpired Lease that prohibit or condition the assignment of such contract or lease, allow the party to such contract or lease to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such contract or lease, constitute unenforceable anti-assignment provisions, and are void and of no force and effect. The validity of the assumption, assignment and sale of the Assumed Contracts and Assumed Leases to Buyer shall not be affected by any existing dispute between the Debtor and any non-Debtor party to such contracts or leases. Any party that may have had the right to consent to the assignment of its Executory Contract or Unexpired Lease is determined to have consented for the purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code.

16.     The designation of an agreement as an Assumed Executory Contract or Assumed Unexpired Lease shall not be a determination that such agreement is an executory contract within the meaning of section 365 of the Bankruptcy Code.

**III.        LIMITATIONS ON LIABILITY AND RELEASE OF ENCUMBRANCES**

17.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the Sale. Except as set forth in the Purchase Agreement, no brokers were involved in consummating the Sale or the Sale, and no brokers' commissions are due to any person or entity in connection with the Sale or the Sale.

18.     Upon the Closing, (a) pursuant to the terms of the Purchase Agreement, the Debtor is hereby authorized to consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and assignment of the Purchased Assets to Buyer free and clear

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*        **Page 13**

of any and all liens, claims and encumbrances, other than Permitted Exceptions, and (b) except as otherwise expressly provided in the Purchase Agreement, all liens, claims and encumbrances, other than Permitted Exceptions, shall be and hereby are released, terminated and discharged as to Buyer and the Purchased Assets.

19.      Upon the Closing, and except as otherwise expressly provided in the Purchase Agreement, Buyer shall not be liable for any claims against, and liabilities and obligations of, the Debtor or any of the Debtor's predecessors or affiliates. Without limiting the generality of the foregoing, (a) other than as specifically set forth in the Purchase Agreement, Buyer shall have no liability or obligation (x) to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any pension plans) or any other payment to employees of the Debtor, or (y) in respect of any employee pension plan, employee health plan, employee retention program, employee incentive program or any other similar agreement, plan or program to which the Debtor is a party (including, without limitation, liabilities or obligations arising from or related to the rejection or other termination of any such plan, program agreement or benefit), and (b) Buyer shall in no way be deemed a party to or assignee of any such employee benefit, agreement, plan or program, and all parties to any such employee benefit agreement, plan or program are enjoined from asserting against Buyer any claims arising from or relating to such employee benefit, agreement, plan or program.

20.      Buyer shall not be deemed a successor of or to the Debtor or the Debtor's estate with respect to any liens, claims and encumbrances (other than Permitted Exceptions) against the Debtor or the Purchased Assets, to the extent allowed under state law, and Buyer shall not be liable in any way for any such liens, claims and encumbrances (other than Permitted Exceptions)

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*      **Page 14**

including, without limitation, the Excluded Assets. Upon Closing the Sale, all creditors,

employees and equity holders of the Debtor are permanently and forever barred, restrained and

enjoined from (a) asserting any claims or enforcing remedies, or commencing or continuing in

any manner any action or other proceeding of any kind, against Buyer or the Purchased Assets

on account of any of the liens, claims and encumbrances, other than Permitted Exceptions, or (b)

asserting any claims or enforcing remedies under any theory of successor liability, to the extent

allowed under state law, *de facto* merger, substantial continuity or similar theory.

  21. On the Closing Date, this Order shall be construed and shall constitute for any and

all purposes a full and complete general assignment, conveyance and transfer of all of the

Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets

to Buyer, on the Closing Date pursuant to the terms of the Purchase Agreement.

  22. This Order is and shall be (a) effective as a determination that, upon Closing, all

liens, claims and encumbrances (other than Permitted Exceptions) existing as to the Purchased

Assets conveyed to Buyer have been and hereby are adjudged and declared to be unconditionally

released, discharged and terminated, and (b) binding upon and govern the acts of all entities,

including, all filing agents, filing officers, title agents, title companies, recorders of mortgages,

recorders of deeds, registrars of deeds, administrative agencies or units, governmental

departments or units, secretaries of state, federal, state and local officials and all other persons

and entities who may be required by operation of law, the duties of their office, or contract, to

accept, file, register or otherwise record or release any documents or instruments, or who may be

required to report or insure any title or state of title in or to any of the Purchased Assets

conveyed to Buyer. All such entities described above in this paragraph are authorized and

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*  **Page 15**

specifically directed to strike all recorded liens, claims and encumbrances (other than Permitted Exceptions) against the Purchased Assets from their records, official and otherwise.

23.     If any person or entity that has filed statements or other documents or agreements evidencing liens, claims and encumbrances (other than Permitted Exceptions) on or in the Purchased Assets shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens, and any other documents necessary for the purpose of documenting the release of all such liens, claims or encumbrances, the Debtor or Buyer are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

24.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale contemplated by the Purchase Agreement.

25.     Any and all Purchased Assets in the possession or control of any person or entity, including, without limitation, any former vendor, supplier or employee of the Debtor shall be transferred to Buyer free and clear of liens, claims and encumbrances, other than and Permitted Exceptions.

26.     This Order and the Purchase Agreement shall be binding in all respects upon all creditors and interest holders of the Debtor. All non-Debtor parties to the Assumed Contracts and Assumed Leases, all successors and assigns of the Debtor and its affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtor's bankruptcy case or upon a convers10n to chapter 7 under the Bankruptcy Code, and the Purchase

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*          **Page 16**

Agreement and related documents shall not be subject to rejection or avoidance under any circumstances.

27.    The Purchase Agreement may be modified, amended, or supplemented by the parties thereto, in a writing signed by the parties thereto, and in accordance with the terms thereto without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

28.    Nothing contained in any order entered in the above-captioned bankruptcy case subsequent to entry of this Order, nor in any chapter 11 plan confirmed in this Chapter 11 Case, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.

29.    This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h), 6006(d) and any other provision of the Bankruptcy Code or Bankruptcy Rules shall not apply, is expressly lifted and this Order is immediately effective and enforceable.

30.    The provisions of this Order are nonseverable and mutually dependent.

31.    The failure specifically to include or make reference to any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement is authorized and approved in its entirety.

32.    To the extent applicable, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtor to the extent necessary, without further order of the Court (a) to allow Buyer to give the Debtor any notice provided for in the

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D) Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*          **Page 17**

Purchase Agreement, and (b) to allow Buyer to take any and all actions permitted by the

Purchase Agreement.

33.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental

unit may revoke or suspend any permit relating to the operation of the Purchased Assets sold,

transferred or conveyed to Buyer on account of the filing or pendency of this Chapter 11 Case or

the consummation of the Sale.

34.     The transfer of the Purchased Assets pursuant to the Sale is a transfer pursuant to

section l 146(a) of the Bankruptcy Code, and accordingly, the "issuance, transfer, or exchange of

a security, or the making or delivery of an instrument of transfer under a plan confirmed under

section 1 129 of this title, may not be taxed under any law imposing a stamp tax or similar tax."

11 U.S.C. § 1 146(a).

35.     This Court retains jurisdiction, even after the closing of this Chapter 11 Case, to:

(a) interpret, implement and enforce the terms and provisions of this Order (including the

injunctive relief provided in this Order) and the terms of the Purchase Agreement, all

amendments thereto and any waivers and consents thereunder; (b) protect Buyer, or any of the

Purchased Assets, from and against any of the liens, claims or encumbrances; (c) compel

delivery of all Purchased Assets to Buyer; and (d) resolve any disputes arising under or related to

the Purchase Agreement, the Sale or the Sale, or Buyer's peaceful use and enjoyment of the

Purchased Assets.

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the
Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B)
Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D)
Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief*          **Page 18**

*Submitted by:*

Richard G. Grant
Tex. Bar No. 08302650
CULHANE MEADOWS, PLLC
The Crescent, Suite 700
100 Crescent Court
Dallas, Texas 75201
Telephone: 214-210-2929
Facsimile: 214-224-0198
Email: rgrant@culhanemeadows.com

ATTORNEYS FOR
DEBTORS IN POSSESSION

*Order Granting Debtor's Expedited Motion for an Order (I) Approving Settlements and Dismissal of the Case, or, in the
Alternative, (II) Approving Procedures for the Sale of Substantially All Assets, (a) Approval of Bid Procedures, (B)
Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Establishing Cure Amounts, (D)
Approving the Forms of Notice, (E) Setting Hearing Dates and (III) Granting Related Relief          Page 19*