IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 15-40248-BR-11 |
| GTL (USA), INC., | § | Chapter 11 |
| | § | |
| Debtor. | § | |

**DEBTOR'S FIRST AMENDED (REVISED) PLAN OF REORGANIZATION
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

CULHANE MEADOWS, PLLC


By:  ___/s/ Lynnette Warman_____
        Lynnette Warman
        Tex. Bar No. 20867940
        Richard G. Grant
        Tex. Bar No. 08302650
The Crescent, Suite 700
100 Crescent Court
Dallas, Texas 75201

Telephone: 214-693-6525
Facsimile: 214-361-6690
Email: rgrant@culhanemeadows.com
Email: lwarman@culhanemeadows.com

ATTORNEYS FOR
DEBTOR IN POSSESSION


Dated: August 5, 2015

# TABLE OF CONTENTS

SECTION 1:    DEFINITIONS AND INTERPRETATION ........................................................................ 1
    1.1    Definitions ................................................................................................................................ 1
    1.2    Interpretation, Application of Definitions and Rules of Construction ...................... 8
    1.3    Computation of Time ............................................................................................................ 8

SECTION 2:    ADMINISTRATIVE AND PRIORITY CLAIMS ............................................................ 8
    2.1    Administrative Expense Claims .......................................................................................... 8
        (a)    Treatment ..................................................................................................................... 8
        (b)    Administrative Expense Claims Bar Date ............................................................ 9
        (c)    Accrued Professional Compensation Escrow ..................................................... 9
    2.2    Compensation and Reimbursement Claims ..................................................................... 9
    2.3    Priority Tax Claims ............................................................................................................... 9

SECTION 3:    CLASSIFICATION OF CLAIMS AND INTERESTS ................................................. 9
    3.1    Classified Claims Against and Interests in the Debtor .................................................. 9
    3.2    Classification of Claims ..................................................................................................... 10

SECTION 4:    TREATMENT OF CLAIMS AND INTERESTS .......................................................... 10
    4.1    Other Priority Claims (Class 1) ........................................................................................ 10
    4.2    Secured Tax Claims (Class 2A) ......................................................................................... 10
    4.3    Other Secured Claims (Class 2B) ..................................................................................... 10
    4.4    OptOut Claims (Class 3A) ................................................................................................. 11
    4.5    General Unsecured Claims (Class 3B) ............................................................................ 11
    4.6    GTL Affiliate Entities Claims (Class 3C) ....................................................................... 12
    4.7    Interests (Class 4) ................................................................................................................ 12
    4.8    Disallowed Claims, Subordinated Claims and Penalty Claims (Class 5) ................ 12

SECTION 5:    ACCEPTANCE OR REJECTION OF THE PLAN. ................................................. 12
    5.1    Holders of Claims and Interests Entitled to Vote ....................................................... 12
    5.2    Classes Deemed to Reject ................................................................................................. 13
    5.3    Classes Deemed to Accept ................................................................................................ 13
    5.4    Acceptance by a Class ........................................................................................................ 13
    5.5    Cramdown Under Section 1129(b) of the Bankruptcy Code ..................................... 13
    5.6    Ballot Instructions .............................................................................................................. 13

SECTION 6:    MEANS FOR IMPLEMENTATION ............................................................................ 13
    6.1    Auction of Equity Interests .............................................................................................. 13
    6.2    EIHL Funding. .................................................................................................................... 14
    6.3    GTL Affiliate Settlement. .................................................................................................. 14
    6.4    GTL Creditors Trust .......................................................................................................... 14
    6.5    Board of Directors .............................................................................................................. 14
    6.6    Officers. ................................................................................................................................ 14
    6.7    Charter and Bylaws ............................................................................................................ 14
    6.8    Vesting of Assets ................................................................................................................ 14
    6.9    Corporate Authority .......................................................................................................... 14
    6.10   Assumption of Liabilities ................................................................................................. 14
    6.11   Securities Law Matters ...................................................................................................... 14
    6.12   Claims on File; No Allowance of Untimely Claims ..................................................... 15
    6.13   Integration Clause .............................................................................................................. 15

SECTION 7:    GTL CREDITORS TRUST ..................................................................................... 15
  7.1    Creation and Funding of the GTL Creditors Trust ................................................ 15
      (a)      Establishment and Purpose of the GTL Creditors Trust ................................... 15
      (b)      Bankruptcy Code Section 1145 Determination ................................................ 15
      (c)      Tax Requirements of the GTL Creditors Trust ................................................ 15
      (d)      The Trust Committee ...................................................................................... 17
      (e)      Trust Access to the Reorganized Debtor's Books and Records ........................ 17
  7.2    Creditor Trustee ................................................................................................... 18
      (a)      Selection of Creditor Trustee ......................................................................... 18
      (b)      General Duties of Creditor Trustee ................................................................. 18
      (c)      Powers of the Creditor Trustee ....................................................................... 18
      (d)      Replacement Creditor Trustee(s) ..................................................................... 19
      (e)      Termination of Duties ..................................................................................... 19
  7.3    Assets of the GTL Creditors Trust ........................................................................ 20
      (a)      Funding of Trust ............................................................................................. 20
      (a)      The Closing .................................................................................................... 20
      (b)      Execution of Documents and Corporate Action .............................................. 20
  7.4    Distributions by the Trust ..................................................................................... 20
      (a)      Distribution Dates ........................................................................................... 20
      (b)      Definition of Available Funds ......................................................................... 20
      (c)      Rules Regarding Distributions by the Creditor Trustee ................................... 21
      (d)      Surrender of Instruments ................................................................................. 21
      (e)      Creditor Trust Professionals ........................................................................... 21
  7.5    Activities of the GTL Creditors Trust ................................................................... 21
      (a)      Oversight by Trust Committee ........................................................................ 21
      (b)      Access to Information by Claim Holders ......................................................... 21
      (c)      Standard of Care; Indemnification; Exculpation ............................................. 21
      (d)      Reliance by GTL Creditors Trust .................................................................... 22
      (e)      Records .......................................................................................................... 22

SECTION 8:    DISTRIBUTIONS ............................................................................................. 22
  8.1    Distribution Record Date ...................................................................................... 22
  8.2    Date of Distributions .............................................................................................. 23
  1.2    Disbursing Agent. ................................................................................................. 23
  8.3    Rights and Powers of Disbursing Agent. ............................................................... 23
  8.4    Delivery of Distributions in General. ..................................................................... 23
  8.5    Payments and Distributions on Disputed Claims. ................................................... 23
  8.6    Manner of Payment. .............................................................................................. 23
  8.7    Undeliverable Distributions and Unclaimed Property. ........................................... 23
  8.8    Withholding and Reporting Requirements. ............................................................ 24
  8.9    Surrender Instruments ............................................................................................ 24
  8.10   Setoffs. ................................................................................................................. 24
  8.11   Insurance Claims. .................................................................................................. 24
  8.12   Applicability of Insurance Policies. ....................................................................... 24
  8.13   No Postpetition Interest. ........................................................................................ 24
  8.14   Distributions Free and Clear .................................................................................. 24
  8.15   Fractional Dollars; De Minimis Distributions. ...................................................... 24
  8.16   Allocation of Distributions between Principal and Unpaid Interest ......................... 24
  8.17   Single Satisfaction of Claims. ............................................................................... 25

SECTION 9:    PROCEDURES FOR DISPUTED CLAIMS ...................................................... 25
  9.1    Allowance of Claims and Interests ........................................................................ 25
  9.2    Objections to Claims ............................................................................................. 25
  9.3    Estimation of Claims ............................................................................................. 25

9.4     No Distribution Pending Allowance ...........................................................................25
9.5     Distributions after Allowance. ...................................................................................25
9.6     Preservations of Rights to Settle Claims ....................................................................25
9.7     Disallowed Claims .....................................................................................................26

SECTION 10:   EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................ 26
10.1    Assumption and Rejection of Executory Contracts and Unexpired Leases. ............26
10.2    Assumption of Assumed Contracts ............................................................................26
10.3    Inclusiveness ..............................................................................................................26
10.4    Rejection Claims .........................................................................................................26
10.5    Cure of Defaults. ........................................................................................................26
10.6    Full Release and Satisfaction .....................................................................................27
10.7    Reservation of Rights..................................................................................................27

SECTION 11:   CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE 27
11.1    Conditions Precedent to Confirmation........................................................................27
11.2    Conditions Precedent to the Effective Date. ..............................................................27
11.3    Waiver of Conditions. .................................................................................................28
11.4    Effect of Failure of Conditions. ..................................................................................28

SECTION 12:   EFFECT OF CONFIRMATION .................................................................... 28
12.1    Immediate Binding Effect. ..........................................................................................28
12.2    Compromise and Settlement of Claims, Interests and Controversies. .......................28
12.3    Discharge of Claims and Termination of Interests......................................................28
12.4    Releases by the Debtor................................................................................................28
12.5    Releases by Holders of Claims ...................................................................................29
12.6    Exculpation .................................................................................................................29
12.8    **SUPPLEMENTAL INJUNCTION**.....................................................................................30
12.9    Term of Injunctions or Stays ......................................................................................31
12.10   Injunction Against Interference with Plan ..................................................................31
12.12   Release of Liens..........................................................................................................31
12.13   Effectuating Documents and Further Transactions .....................................................31
12.14   Corporate Action.........................................................................................................31
12.15   Cancellation of Documents .........................................................................................31
12.16   Preservation of Causes of Action of the Debtor..........................................................32

SECTION 13:   MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN .................. 32
13.1    Modification and Amendments....................................................................................32
13.2    Effect of Confirmation on Modifications....................................................................32
13.3    Revocation or Withdrawal of this Plan. ......................................................................32
13.4    Retention of Jurisdiction ............................................................................................32

SECTION 14:   MISCELLANEOUS PROVISIONS .................................................................. 34
14.1    Payment of Statutory Fees ..........................................................................................34
14.2    Dissolution of Creditors' Committee. .........................................................................34
14.3    Section 1125(e) Good Faith Compliance ....................................................................34
14.4    Substantial Consummation ..........................................................................................34
14.5    Section 1146 Exemption .............................................................................................34
14.6    Closing of the Chapter 11 Case...................................................................................34
14.7    Plan Supplement .........................................................................................................34
14.8    Further Assurances.......................................................................................................34
14.9    Exhibits Incorporated..................................................................................................34
14.10   Inconsistency ..............................................................................................................34

14.11   No Admissions...........................................................................................................34
14.12   Reservation of Rights.............................................................................................34
14.13   Successors and Assigns..........................................................................................35
14.14   Entire Agreement....................................................................................................35
14.15   Notices ....................................................................................................................35
14.16   Severability ............................................................................................................35
14.17   Governing Law .......................................................................................................35
14.18   Request for Confirmation Pursuant to Bankruptcy Code Sections 1129(a) and 1129(b)........................36

## PLAN OF REORGANIZATION

On the Petition Date, GTL (USA), Inc., a Delaware corporation (the "*Debtor*") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

The Debtor proposes this *Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (as it may be amended, modified, or supplemented from time to time, together with any and all exhibits and schedules attached hereto or referenced herein, this "*Plan*") for the resolution and satisfaction of all Claims against and Interests in the Debtor.

Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation. Reference is made to the Disclosure Statement for a discussion of the Debtor's history and assets, a summary and analysis of this Plan, and certain related matters, including the distributions to be made under this Plan and the risk factors relating to consummation of this Plan. Capitalized terms used but not defined herein have the meanings ascribed to them in Section 1 of this Plan.

## SECTION 1:        DEFINITIONS AND INTERPRETATION

### 1.1    **Definitions**.

The following terms used herein shall have the respective meanings below:

*Accrued Professional Compensation* means, at any given time, all accrued, contingent and/or unpaid fees (including success fees) for legal, financial advisory, investment banking, accounting and other services and obligations for reimbursement of expenses rendered or incurred before the Effective Date under sections 328, 330(a), 331 or 363 of the Bankruptcy Code by any retained Professional in the Chapter 11 Case, or under section 503 of the Bankruptcy Code, that the Bankruptcy Court has not denied by a Final Order, all to the extent that any such fees and expenses have not been previously paid.

*Accrued Professional Compensation Escrow* means a segregated account created pursuant to section 2.1(c) of the Plan.

*Administrative Expense Claim* means any Claim for payment of costs and expenses of administration pursuant to sections 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Debtor's Estate and operating the businesses of the Debtor; (b) compensation for Accrued Professional Compensation; (c) all fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code.

*Administrative Expense Claims Bar Date* means the first Business Day that is at least thirty (30) days after the Effective Date or such other date ordered by the Bankruptcy Court.

*Allowed* means, with reference to any Claim against the Debtor, a Claim (i) as to which no objection or request for estimation has been filed on or before any deadline therefor set by the Bankruptcy Court or the expiration of such other applicable period fixed by the Bankruptcy Court or this Plan; (ii) as to which any objection has been settled, waived, withdrawn or denied by a Final Order or in accordance with this Plan; or (iii) that is allowed (a) by a Final Order, (b) by an agreement between the Holder of such Claim and the Debtor or Creditor Trustee or (c) pursuant to the terms of this Plan; *provided, however,* that, notwithstanding anything herein to the contrary, by treating a Claim as "Allowed" under clause (i) above (the expiration of the applicable deadline), neither the Debtor nor the Creditor Trustee waives their rights to contest the amount and validity of any disputed, contingent and/or unliquidated Claim in the time, manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Case had not been commenced. An Allowed Claim shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law. Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Case is not an Allowed Claim. Unless otherwise specified in this Plan, in section 506(b) of the Bankruptcy

Code or by Final Order of the Bankruptcy Court, "Allowed" Claims shall not, for purposes of Distributions under this Plan, include interest on such Claim accruing from and after the Petition Date.

**Assets** means all assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Debtor's Estate pursuant to Bankruptcy Code section 541, Cash, Avoidance Actions, Causes of Action, equipment, inventory, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of any of the foregoing.

**Auction Procedures** shall mean the procedure to auction equity interests in the Debtor as set forth in 6.1 hereof.

**AutoOpt** means AutoOpt Networks, Inc.

**AutoOpt Payment** means the payment of $1,850,000 to AutoOpt.

**Avoidance Actions** means causes of action arising under Bankruptcy Code sections 502, 510, 541, 544, 545, 547 548, 549, 550, 551 or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such causes of action.

**Ballot** means the ballots upon which Holders of Impaired Claims or Interests entitled to vote on this Plan have indicated their acceptance or rejection of this Plan in accordance with the instructions regarding voting.

**Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter applicable to this Chapter 11 Case.

**Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of Texas having jurisdiction over the Chapter 11 Case.

**Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Bankruptcy Court, as applicable to this Chapter 11 Case.

**Beneficiaries** means the holders of Allowed Unsecured Claims in Classes 3A and 3B herein.

**Budget** means the budget prepared pursuant to the Court's order on record at a hearing held on July 31, 2015 or as may otherwise be ordered by the Court.

**Business Day** means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close in Plano, Texas.

**Cash** means cash and cash equivalents including, without limitation, checks and wire transfers.

**Causes of Action** means any claim, cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Cause of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

**Chapter 11 Case** means this Case No. 15-40248-BR-11 pending for the Debtor under chapter 11 of the Bankruptcy Code.

**Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

*Class* means a class or category of Claims as classified and described in Section 3 of this Plan pursuant to Bankruptcy Code section 1122.

*Closing Date* shall mean a date selected by the Debtor, which may be extended from time to time by the Debtor, on or after the Effective Date upon which the closings contemplated by Articles 6 and 7 shall occur.

*Collateral* means any property or interest in property of the Estate subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

*Compensation and Reimbursement Claim* means a Claim for compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to Bankruptcy Code sections 330, 331, 363, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5).

*Confirmation Date* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket in this Chapter 11 Case.

*Confirmation Hearing* means the hearing on confirmation of this Plan, and approval of the Disclosure Statement related thereto, pursuant to Bankruptcy Code section 1129.

*Confirmation Order* means the order entered by the Bankruptcy Court confirming this Plan in accordance with Chapter 11 of the Bankruptcy Code.

*Contingent Claim* means any contingent or unliquidated Claim asserted or which may be asserted against the Debtor.

*Convenience Unsecured Claims* means Allowed Unsecured Claims in an Allowed Amount of equal to or less than $10,000 or which are voluntarily reduced in writing by the holder thereof to such amount.

*Creditor* means a Holder of a Claim.

*Creditor Trust Agreement* means the agreement, substantially in the form included in the Plan Supplement, governing the operations of the Creditor Trust, as it may be subsequently modified from time to time.

*Creditor Trust Assets* means the assets held in the Creditor Trust comprised of the Unsecured Creditor Funds remaining after the AutoOpt Payment and the Informage Payment.

*Creditor Trust Distributable Cash* means the Creditor Trust Cash and any other assets of the Creditor Trust reduced to Cash net of all expenses and costs of operating or effectuating the duties of the Creditor Trust and establishing any reserves as the Creditor Trustee may determine is necessary in its sole discretion pursuant to the terms of this Plan and the Creditor Trust Agreement.

*Creditor Trust Monthly Fee Statements* shall have the meaning set forth in Section 7.4(e).

*Creditor Trust Professionals* shall have the meaning set forth in Section 7.4(e).

*Creditor Trustee* means the individual or entity designated and retained as the trustee to the Creditor Trust, as of the Effective Date or as soon as reasonably practicable thereafter, as the fiduciary responsible for administering the Creditor Trust.

*Creditors' Committee* means the statutory committee of unsecured creditors appointed in the Chapter 11 Case by the United States Trustee for the Eastern District of Texas pursuant to section 1102 of the Bankruptcy Code.

*Cure* means the payment of Cash by the Debtor, the Successful Bidders, or the Creditor Trustee, as applicable, as necessary to (i) cure a monetary default by the Debtor in accordance with the terms of an executory contract or unexpired lease of the Debtor, and (ii) permit the Debtor to assume such executory contract or unexpired lease under section 365(a)

of the Bankruptcy Code; provided, however, that the Cure amount for the assumption of the executory contract of Informage shall be $1,510,000.

**Customer Contracts** means any executory contract between the Debtor and any customer of Debtor, as determined by the Debtor and/or Reorganized Debtor.

**Debtor in Possession** means the Debtor in its capacity as Debtor in possession in the Chapter 11 Case pursuant to Bankruptcy Code sections 1101, 1107(a) and 1108.

**Debtor** means GTL (USA), Inc. as Debtor and Debtor in possession, and includes the Estate.

**Debtor Released Claims** shall have the meaning set forth in Section 12.4 hereof.

**Debtor** shall have the meaning set forth in the Introduction.

**Deficiency Claim** means, to the extent the value of any property securing a Claim is less than the amount of such Claim, the difference between such value and such Claim.

**Disallowed Claim** means any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

**Disclosure Statement** means the Disclosure Statement for the Debtor's Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code, dated August 7, 2015, as the same may be altered, modified, or amended.

**Disputed Claim** means a Claim that has neither been Allowed nor disallowed pursuant to a Final Order of the Bankruptcy Court, and (a) if no Proof of Claim has been filed by the applicable deadline: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtor, the Creditor Trustee, or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or (b) if a Proof of Claim or other request for payment has been filed by the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules or Allowed in this Plan; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim or as asserted in the Proof of Claim varies from the nature and amount of such Claim as listed on the Schedules to the extent of such positive variance; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtor, the Creditor Trustee, or any other party in interest which has not been withdrawn or determined by a Final Order.

**Distribution** means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under this Plan.

**Distribution Record Date** means five (5) Business Days prior to the Confirmation Date.

**Effective Date** means the first Business Day after the Confirmation Date on which the conditions precedent specified in Section 10 of this Plan have been either satisfied or waived.

**EIHL** means Emirates International Holding Limited LLC.

**EIHL Term Sheet** means collectively, the term sheets dated June 23, 2015, July 1, 2015, July 15, 2015, and July 29, 2015 attached hereto as Exhibit A.

**Estate** means the estate created in the Debtor's Chapter 11 Case containing all property and other interests of the Debtor pursuant to Bankruptcy Code section 541.

**Exculpated Claim** means any claim related to any act or omission in connection with, relating to or arising out of the Debtor's in or out of court restructuring efforts, the Chapter 11 Case, formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or this Plan or any contract, instrument, release or other agreement or

document created or entered into in connection with the Disclosure Statement or this Plan, the filing of the Chapter 11 Case, the pursuit of confirmation of this Plan, the administration and implementation of this Plan, or Distribution of property under this Plan or any other related agreement; *provided*, *however*, that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct or fraud to the extent imposed by applicable non-bankruptcy law. For the avoidance of doubt, no Cause of Action, obligation or liability expressly set forth in or preserved by the Plan or the Plan Supplement constitutes an Exculpated Claim.

*Exculpated Party* means each of: (i) the Debtor and their members or partners, as applicable, and (ii) the current and former officers, directors, members, managers, employees, attorneys and advisors, each in their respective capacities as such, of each of the foregoing.

*Executory Contract* means a contract to which one or more of the Debtor is a party that is capable of assumption or rejection under section 365 of the Bankruptcy Code.

*Facility Agreement* means that certain Facility Agreement dated January 13, 2014 by and between GTL International, Ltd. and the Debtor.

*Facility Lease* means the unexpired lease of real property of the Debtor's business location at 5200 Tennyson Parkway, Suite 200, Plano, Texas 75024 under that Agreement of Lease dated to commence October 1, 2010 with an Estimated Expiration Date of June 30, 2016 by and between the Debtor and GKII Plano, LP, as amended.

*Final Order* means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Case, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024, may be filed relating to such order shall not cause such order to not be a Final Order.

*General Unsecured Claim* means any Allowed Claim asserted against any Debtor which is not included within the other specifically defined Classes hereunder or which is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

*Governmental Unit* has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

*GTL Affiliated Entities Claims* means any pre-petition claims of the GTL Affiliated Entities against the Debtor.

*GTL Affiliated Entities* shall mean GTL (Canada), Inc., GTLL; GTLI; Global Holding Corp., Global Group Enterprises, GTL Infra, GTL SDV, Inc.

*GTL Affiliated Individuals* means Manoj Gajanan Tirodkar; Charudatta Kashinath Naik; Sukanta Kumar Roy; Urmeet Singh Juneja; Pinakin Bhupendra Gandhi; Rajiv Kamat; and Retassh Arvind Bhansali.

*GTL Affiliates* means GTL Affiliated Entities and GTL Affiliated Individuals.

*GTL Creditors Trust* shall mean the Creditor Trust formed pursuant to Section 6.4 hereof on the Effective Date for the benefit of the Beneficiaries.

*GTL Released Parties* or *Released Parties* means (i) the Debtor; (ii) the Professionals; (iii) the GTL Affiliated Entities; (iv) the GTL Affiliated Individuals; and (v) and each of their respective attorneys, partners, officers, directors, managers, employees, insiders, affiliates, predecessors, agents, successors and assigns; provided, however, such term shall not include Kapai and Plank.

*GTLI* means GTL International, Ltd., a Bermuda corporation.

***GTLL*** means GTL, Ltd., a limited liability entity created under the laws of India.

***Holder*** means the legal or beneficial holder of a Claim or Interest.

***Impaired*** means, with respect to a Claim or Interest, that such Class of Claims or Interests is impaired within the meaning of Bankruptcy Code section 1124.

***Informage*** means Informage SQN Technologies, LLC.

***Informage Payment*** means the Cure amount payable to Informage in the amount of $1,510,000.

***Insurance Policies*** means, collectively, all of the Debtor's insurance policies.

***Interest*** means the interest of any Holder in an equity security of any Debtor, within the meaning of Bankruptcy Code section 101(16) represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in any of the Debtor, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in the Debtor.

***Kapai*** means Kunal Kapai, individually.

***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

***Noninsider Creditor Funds*** means the sum of $4,100,000 or such lesser amount as may actually available after the payment of Administrative Claims as allowed by agreement of the Committee pursuant to the Budget.

***Ongoing Operations Creditor*** means a Creditor that provided goods and services to the Debtor as of the Petition Date and who will be providing the same types of goods and services to the Debtor after the Effective Date, as determined by the Debtor, in its reasonable business judgment.

***Ongoing Operations Unsecured Claim*** means an Allowed Claim held by an Ongoing Operations Creditor.

***OptOut Distribution Funds*** means an amount sufficient to satisfy the provisions of Bankruptcy Code Section 1129(a)(7)(A)(ii) [best interests of creditors test], calculated as follows, (i) the amount of $1,206,000 (ii) divided by the total amount of Allowed Unsecured Claims (including, without limitation, the claims of the GTL Released Parties) estimated to be in the amount of $15,723,550 adjusted for all Proofs of Claim filed in the case; (iii) multiplied by the total amount of Allowed Claims in the Class 3A.  For sake of example only, in the event the Kapai Proof of Claim were the sole Allowed Claim in Class 3A in the amount of $97,402.89, the distribution on such claim would be not greater than $7,470.75; whereas if such claim were treated in Class 3B, the distribution on such claim could be as much as $40,909.

***Other Priority Claim*** means any Claim entitled to priority under Bankruptcy Code sections 507(a)(4) and 507(a)(5).

***Other Secured Claim*** means a Secured Claim other than the Secured Tax Claims.

***Penalty Claims*** means Claims for penalties or punitive damages, including Claims denominated as "interest" which the Bankruptcy Court determines to be punitive in nature.

***Person*** means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, the Debtor.

***Petition Date*** means February 9, 2015.

***Plan*** means the Debtor' Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated August 7, 2015, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance

with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, together with any and all exhibits and schedules hereto.

**Plan Supplement** means the compilation of documents and forms of documents, schedules, and exhibits to this Plan, to be filed prior to the Confirmation Hearing, as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules.

**Plank** means Candace Plank, individually.

**Priority Claim** means any Claim entitled to priority pursuant to Bankruptcy Code section 507(a) other than an Administrative Expense Claim, Compensation and Reimbursement Claim or Priority Tax Claims.

**Priority Tax Claim** means any Claim of a governmental unit of a kind entitled to priority under Bankruptcy Code section 507(a)(8), if Allowed.

**Pro Rata** shall mean the proportion that the amount of an Allowed Claim in a particular Class or Classes bears to the aggregate amount of all Allowed Claims in such Class or Classes, unless the Plan otherwise provides.

**Professional Fee Allocation** shall have the meaning set forth in Section 2.2(b).

**Professionals** means all professionals employed in this Chapter 11 Case pursuant to Bankruptcy Code sections 327, 363 and 1103.

**Proof of Claim** means a proof of Claim filed against the Debtor in the Chapter 11 Case.

**Related Persons** means, with respect to any Person, such Person's predecessors, successors, assigns and present and former affiliates (whether by operation of law or otherwise) and each of their respective members, partners, equity holders, certificate holders, officers, directors, employees, representatives, advisors, attorneys, auditors, agents, and professionals, in each case acting in such capacity on or any time prior to or after the Petition Date, and any Person claiming by or through any of them.

**Releasing Parties** means all Persons who have held, hold or may hold Claims or Interests that have been released, discharged or are subject to exculpation pursuant to this Plan.

**Schedules** means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs, if any, filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

**Secured Claim** means any Claim of a Creditor that is secured by property of the Estate, to the extent of the value of the Creditor's interest in the Estate's interest in such property, as provided in Bankruptcy Code section 506(a). Secured Claim also means a Claim of a Creditor that is subject to setoff under Bankruptcy Code section 553, to the extent of the amount subject to setoff, as provided in Bankruptcy Code section 506(a). To the extent the value of any property securing such Claim is less than the amount of such Claim, the difference between such value and such Claim is a *"Deficiency Claim"* unless the holder of such Claim validly elects under Section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

**Secured Lenders** means, collectively, any holder of a nonavoidable Secured Claim.

**Secured Tax Claim** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under Bankruptcy Code section 507(a)(8) (determined irrespective of any time limitations therein), and including any related Secured Claim for penalties.

**Shah** means Dipesh Shah, individually.

**Subordinated Claims** means any Claim (1) subordinated by contract or by order of the Bankruptcy Court to the right of payment of General Unsecured Claims or (2) which would be paid pursuant to Bankruptcy Code section

726(a)(2)(c), (a)(3), (a)(4) or (a)(5) if this Chapter 11 Case had originally been filed as a case under chapter 7 of the Bankruptcy Code.

**Successful Bidder** means any person determined by the Court as being the successful bidder under Section 6.1 hereof, if applicable.

**Trade Terms Agreement** means an agreement between the Debtor and a Trade Terms Vendor that provides that the Trade Terms Vendor will continue to provide to the Debtor after the Effective Date goods and services on 90 day terms.

**Trade Terms Vendor** means the holder of an Ongoing Operations Unsecured Claim that has executed a Trade Terms Agreement.

**Unexpired Lease** means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**Unimpaired** means, with respect to a Claim or Interest, a Class of Claims or Interests that is not Impaired within the meaning of Bankruptcy Code section 1124.

**United States Trustee** means the Office of the United States Trustee for the Eastern District of Texas.

**Unsecured Creditor Funds** means the Noninsider Creditor Funds available after the payment of (a) Allowed Priority Tax Claims; (b) Allowed Claims in Classes 1, 2A and 2B; and (c) Cure Payments.

**Voting Agent** means the Debtor.

**Voting Record Date** shall have the meaning ascribed to such term in the Disclosure Statement.

1.2 **Interpretation, Application of Definitions and Rules of Construction**. Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, supplemented, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. If a time or date is specified for any payments or other Distribution under this Plan, it shall mean on or as soon as reasonably practicable thereafter. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral. In the event of any ambiguity or conflict between this Plan and the Disclosure Statement, the provisions of this Plan shall govern. Any reference to the "Creditor Trustee" shall be deemed to include a reference to the "Creditor Trust" and any reference to the "Creditor Trust" shall be deemed to include a reference to the "Creditor Trustee" unless the context otherwise required.

1.3 **Computation of Time**. Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Plan unless otherwise set forth herein or provided by the Bankruptcy Court.

## SECTION 2: ADMINISTRATIVE AND PRIORITY CLAIMS

2.1 **Administrative Expense Claims**.

(a) **Treatment**. Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to different treatment with the Debtor or Creditor Trustee, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to the unpaid amount of such Allowed Administrative Expense Claim on the later of the Effective Date and the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable; *provided,*

*however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor, as Debtor in Possession, or liabilities arising under obligations incurred by the Debtor, as Debtor in Possession, prior to the Effective Date, shall be paid by the Debtor, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions. In addition, Allowed Administrative Expense Claims of the United States Trustee for statutory fees under 28 U.S.C. § 1930 shall be paid on the Effective Date and thereafter, as such fees may thereafter accrue and be due and payable, by the Creditor Trustee in accordance with the applicable schedule for payment of such fees. All statutory fees under 28 U.S.C. § 1930 with respect to the period prior to the Effective Date shall be paid by the Debtor as and when such fees become due and payable.

      (b)      **Administrative Expense Claims Bar Date**. To be eligible to receive distributions under this Plan on account of an Administrative Expense Claim that is not otherwise Allowed by this Plan, a request for payment of an Administrative Expense Claim must have been or be filed with the Bankruptcy Court on or before the Administrative Expense Claims Bar Date. Any Administrative Expense Claim that is not asserted in accordance with this Section 2.1 shall be deemed disallowed under this Plan and shall be forever barred against the Debtor, the Debtor's Estate, the Creditor Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

      (c)      **Accrued Professional Compensation Escrow**. On the Effective Date, the Reorganized Debtor shall deposit the Accrued Professional Compensation amounts set forth in the Budget into the Accrued Professional Compensation Escrow. The Reorganized Debtor shall not be permitted to use funds in the Accrued Professional Compensation Escrow for any purpose other than payment of Allowed Professional Fees. Allowed Professional Fees shall be paid from the Accrued Professional Compensation Escrow upon entry of final orders granting professional fee applications. To the extent that funds remain in the Accrued Professional Compensation Escrow following the entry of all professional fee application orders in this case, such funds shall revert to the Reorganized Debtor without further order of the Court. To the extent that the Court allows professional fees over and above the amount in the Accrued Professional Compensation Escrow, such amounts shall be payable by the Reorganized Debtor. For the avoidance of doubt, Allowed Professional Fees in this case shall be an obligation of the Reorganized Debtor and shall not be payable from the Noninsider Creditor Funds.

2.2      **Compensation and Reimbursement Claims**. All Professionals seeking payment of Compensation and Reimbursement Claims shall (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Debtor's Chapter 11 Cases by the date that is thirty (30) days after the Effective Date and (ii) be paid (a) the full unpaid amounts as is Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by Order of the Bankruptcy Court, or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Compensation and Reimbursement Claim and the Debtor or Creditor Trustee. Any Compensation and Reimbursement Claim that is not asserted in accordance with this Section 2.2 shall be deemed disallowed under this Plan and shall be forever barred against the Debtor, the Debtor's Estate, the Creditor Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

2.3      **Priority Tax Claims**. Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment of such Claim, each Holder of an Allowed Priority Tax Claim, if any such Claim exists, shall receive, Cash in an amount equal to the unpaid portion of such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the date that is ninety (90) calendar days after the Effective Date.

## SECTION 3:      CLASSIFICATION OF CLAIMS AND INTERESTS

3.1      **Classified Claims Against and Interests in the Debtor**. Except as set forth herein, all Claims against and Interests in the Debtor are placed in a particular Class. The Debtor has not classified Administrative Expense Claims, Compensation and Reimbursement Claims, and Priority Tax Claims.

The following tables classify Claims against and Interests in the Debtor for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. This Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies

within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

Subject to all other applicable provisions of this Plan (including its Distribution provisions), classified Claims shall receive the treatment described in Section 4 herein. This Plan will not provide any Distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties.

3.2    **Classification of Claims**

The following table designates the Classes of Claims against and Interests in **the Debtor** and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interest | Status | Entitled to Vote | Estimated Recovery |
|-------|---------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2A | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 2B | Other Secured Claims | Impaired | Yes | 100% |
| 3A | OptOut Claims | Impaired | Yes | TBD |
| 3B | General Unsecured Claims | Impaired | Yes | 12% to 35% |
| 3C | GTL Affiliate Entities Claims | Impaired | Yes | TBD |
| 4 | Interests | Impaired | Yes | Retained |
| 5 | Disallowed Claims, etc. | Impaired | Yes | 0.00% |

## SECTION 4:    TREATMENT OF CLAIMS AND INTERESTS

4.1    **Other Priority Claims (Class 1)**. This Class consists of all Allowed Other Priority Claims against the Debtor that are specified as having priority in Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date. Except to the extent that a Holder of an Allowed Other Priority Claim against the Debtor's Estate has agreed to a different treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Other Priority Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between the Debtor or the Creditor Trustee and the Holder of the Allowed Other Priority Claim.

4.2    **Secured Tax Claims (Class 2A)**. This Class consists of all Allowed Secured Tax Claims against the Debtor that, absent the secured status of such Claim, would be entitled to priority in right of payment under Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date. Each Holder of an Allowed Secured Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Secured Tax Claim, Cash in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Secured Tax Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between the Debtor or the Creditor Trustee and the Holder of the Secured Tax Claim.

4.3    **Other Secured Claims (Class 2B)**.

(a)    *Classification*: "Other Secured Claims" shall consist of all Allowed Secured Claims not otherwise classified.

(b)      *General Treatment*.  Each holder of an Allowed Other Secured Claim against the Debtor shall, at the sole option of the Reorganized Debtor, receive on the Distribution Date on account of its Allowed Secured Claim:  (a) a Plan Secured Note bearing interest at 4% per annum amortized over 5 years; (b) treatment as provided under section 1124(2) of the Bankruptcy Code, with the Cash payments required by section 1124(2)(A) and (C) of the Bankruptcy Code being made on the Distribution Date; or (c) such holder's Collateral.  If the holder of an Allowed Secured Claim against the Debtor receives treatment as provided in (a) or (b) above, such holder shall retain any Liens securing the Allowed Secured Claim until paid in full.  Any Deficiency Amount related to a Secured Claim shall be treated as a General Unsecured Claim.

(c)      *Negotiated Treatment*.  Notwithstanding the immediately preceding paragraph, the Debtor, Committee and any holder of a Class 2B Allowed Secured Claim may agree to any alternate treatment of such Secured Claim, which treatment shall include preservation of such holder's Lien; provided, however, that such treatment shall not provide a return to such holder of an amount having a present value in excess of the amount of such holder's Allowed Secured Claim.  Each such agreement shall be presented to the Bankruptcy Court before or within 30 days after the Effective Date and shall not materially and adversely impact the treatment of any other creditor under the Plan.

(d)      *Impairment*: Impaired and entitled to vote

## 4.4      OptOut Claims (Class 3A)

(a)      *Classification*: "OptOut Claims" means Unsecured Claims held by any Holder having filed a Ballot that elects not to grant the releases set forth in Section 12.5 hereof and electing to be treated in this Class 3A and such election is approved by the Debtor, in its sole discretion. In the event there are no Unsecured Claims in this Class, the Class shall be eliminated at the Confirmation Hearing.

(b)      Treatment.  Holders of Claim in this Class shall receive payments of a prorata share of the OptOut Distribution Funds from the GTL Creditors Trust on the Distribution Date.

(c)      Impairment: Impaired and deemed to reject.

## 4.5      General Unsecured Claims (Class 3B).

(a)      *Classification*: "Other General Unsecured Claims" against the Debtor shall consist of all unsecured claims against the Debtor that are not otherwise classified in Class 3A or 3C and shall include without limitation, (i) claims arising upon rejection of leases and executory contracts to which the Debtor is a party; (ii) claims relating to the provision of goods or services to the Debtor that are not classified as Administrative Claims or Class 3A or 3C Claims and (iii) claims arising from litigation damages entered against the Debtor.

(b)      *Treatment*: Holders of Claim in this Class shall receive payments of a prorata share of the Creditor Trust Distributable Cash less the OptOut Distribution Funds from the GTL Creditors Trust on the Distribution Date.

(c)      *AutoOpt Settlement*.  The following constitutes the treatment of the Claims of AutoOpt within this Class 3B:

(i)      The holder of the Claim of AutoOpt Networks, Inc. shall receive the AutoOpt Payment on the Effective Date as payment of a prorata share of its Allowed General Unsecured Claim plus consideration for its release of the Released Parties other than the Debtor.

(ii)      Upon confirmation of the Plan, AutoOpt shall be deemed to hold an Allowed Unsecured Nonpriority Claim in an amount which, together with an amount allocated to the value of the release by the AutoOpt Parties of the GTL Released Parties (defined below), results in a distribution to AutoOpt of the exact amount of US$1,850,000 (One million Eight Hundred Fifty Thousand United States Dollars) in cash ("AutoOpt Distribution Amount").  Counsel for the AutoOpt Parties and the Debtor will negotiate in good faith to reach such allowed claim amounts and allocations in a manner to result in payment of the AutoOpt Distribution Amount prior to the confirmation hearing.  Payment of the AutoOpt Distribution Amount shall occur within three (3) business days following all of the following: (a) entry of a final and nonappealable order confirming the Amended Plan; (b) the occurrence of the Effective Date of the

Amended Plan; (c) counsel for Debtor's receipt of certified copies of orders dismissing with prejudice all claims and lawsuits asserted by an AutoOpt Party against a GTL Released Party; and (d) the satisfaction of all conditions necessary to release from escrow the executed mutual release agreement among the AutoOpt Parties and the GTL Released Parties described below.

(iii)    Once the confirmation order has become final and nonappealable, the Debtor shall deliver the AutoOpt Distribution Amount to Howard Marc Spector, Esq. to be held in his firm's IOLTA account in escrow pending Debtor's counsel receipt of the items set forth in items (c) and (d) above.

(iv)    The Reorganized Debtor will provide counsel for AutoOpt with certified copies of an order dismissing with prejudice the AutoOpt Parties from the pending adversary proceeding and any other lawsuits filed by the Debtor against any of the AutoOpt Parties within three (3) business days of receipt of the certified dismissal orders from AutoOpt.

(d)    Impairment: Impaired and entitled to vote.

### 4.6    GTL Affiliate Entities Claims (Class 3C)

(a)    *Classification*: GTL Affiliate Entities Claims against the Debtor shall consist of all unsecured claims against the Debtor of a GTL Affiliate Entity to the extent the provisions of Section 6.3 are applicable. The EIHL Term Sheet contemplates the sale of the claims in this Class to EIHL.

(b)    *Treatment*: GTLI's claim against the Debtor is allowed in the amount of $8,216,055.26. GTLL's claim against the Debtor is allowed in the amount of $283,742.64. Holders of the Claims in this Class shall receive payments from the Reorganized Debtor as set forth in paragraph 4 of the July 1, 2015 EIHL Term Sheet. Neither the Reorganized Debtor nor any GTL Affiliate Entity shall have any claim whatsoever to the Noninsider Creditor Funds or any other Creditor Trust Asset

(c)    *Impairment*: Impaired and entitled to vote.

### 4.7    Interests (Class 4)

(a)    GTLI shall retain its Interests on the Effective Date in partial consideration and exchange for the agreement of GTLI and GTLL to have their Allowed Claims treated in Class 3C of the Plan; otherwise, the Interest shall be cancelled and holders of Interests shall receive nothing on account of such Interests. The EIHL Term Sheet contemplates the sale of the Interests in this Class to EIHL.

(b)    Notwithstanding the foregoing, if (1) the Court determines at the Confirmation Hearing that such retention violates 11 U.S.C. § 1129(b)(2)(B)(ii) upon proper objection; and (2) the Court finds that the new value contributed by the holders of Interests in the form of a voluntary election to be treated in Class 3C does not satisfy the "new value exception" to the absolute priority rule, then the Debtor shall auction 100% of newly issued membership interests in the Reorganized Debtor at the Confirmation Hearing pursuant to the Auction Procedures set forth in Section 6.1.

### 4.8    Disallowed Claims, Subordinated Claims and Penalty Claims (Class 5).
The holders of Disallowed Claims, Subordinated Claims, Penalty Claims and any other Claims against the Debtor not otherwise expressly provided for in this Plan shall receive no distributions under the Plan on account of such Claims. This Plan shall constitute an action seeking subordination of all claims in Class 5 pursuant to Bankruptcy Code section 510 and any other relevant provisions of the Bankruptcy Code, Rules and applicable state or federal law.

## SECTION 5:    ACCEPTANCE OR REJECTION OF THE PLAN.

5.1    **Holders of Claims and Interests Entitled to Vote**. Pursuant to section 1126 of the Bankruptcy Code, each Impaired Class of Claims or Interests that will receive a Distribution pursuant to this Plan may vote separately to

accept or reject this Plan. Each Holder of an Allowed Claim in such an Impaired Class shall receive a ballot and may cast a vote to accept or reject this Plan.

5.2     **Classes Deemed to Reject**. The Classes of the Debtor identified in Section 3.2 as Impaired are Impaired and are not entitled to any Distribution are deemed to reject the Plan.

5.3     **Classes Deemed to Accept**. The Classes of the Debtor identified in Section 3.2 as Unimpaired are Unimpaired and are deemed to accept the Plan.

5.4     **Acceptance by a Class**. A Class of Claims entitled to vote to accept or reject this Plan accepts this Plan if the Holders of Claims in such voting Class that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims that complete and return Ballots in such Class vote to accept this Plan. A Class of Interests is deemed to accept this Plan if this Plan has been accepted by Holders of at least 2/3 of the amount of the Allowed Interests held by Holders of such Interests who vote in such Class.

5.5     **Cramdown Under Section 1129(b) of the Bankruptcy Code**. If all applicable requirements for confirmation of this Plan are met as set forth in section 1129(a) of the Bankruptcy Code except subsection (8) thereof, the Debtor may request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code on the bases that this Plan is fair and equitable and does not discriminate unfairly with respect to each Class of Claims or Interests that is Impaired under, and has not accepted or is deemed to reject, this Plan.

5.6     **Ballot Instructions**. Each Holder of a Claim or Interest entitled to vote on this Plan will be asked to complete and return a Ballot to the Voting Agent, which will compile the votes so received.

## SECTION 6:     MEANS FOR IMPLEMENTATION

6.1     **Auction of Equity Interests**. In the event of an auction under Section 4.9(b) hereof, the membership interests in the Reorganized Debtor will be sold at an auction to be held at the Confirmation Hearing.  Due to the cash flow requirements of the Reorganized Debtor, only certain parties are qualified to bid.  In order to participate in the auction, a prospective bidder must have satisfied the following requirements prior to the Voting Deadline:

(a)     The prospective bidder (the "Bidder") has submitted prior to the Voting Deadline (herein, the "Bidding Deadline") a signed written and binding offer (the "Bid") to purchase 100% of the stock in the Reorganized Debtor, contingent only upon Confirmation of this Plan.

(b)     Prior to the Bidding Deadline, the Bidder has submitted to counsel for the Debtor, the following:

(i)     Written disclosure of any relationship (whether contractual, personal, affiliations, etc.) of the Bidder and its officers, directors and affiliates to any creditor, interest holder or other party in interest in this case.

(ii)     Written evidence that the ownership of the Reorganized Debtor will not cause the breach of any contractual obligation of the Reorganized Debtor or the violation of any law or ordinance.

(iii)     A designation of the corporate officers and directors of the Reorganized Debtor to serve after the Effective Date.

(iv)     A description of how the Bid is a higher and better offer than the combined value of terms of the EIHL Terms Sheet and GTL Affiliate Settlement.

(c)     Such bid by any party shall be accompanied by (i) a deposit (the "Deposit") in the form of a cash deposit of $100,000 to be held by the Debtor and (ii) an affidavit of the bidder's chief financial officer that its available cash, borrowing ability and non-revocable borrowing commitments total not less than 110% of the relevant bid or offer.  The Deposit shall be forfeitable to the Debtor in the event the Successful Bidder fails to close by the Closing Date.

6.2     **EIHL Funding**.  The Debtor shall (a) enter into the transactions, (b) borrow the funds; (c) pledge the collateral; (d) fund the amount necessary to complete the escrow of the Noninsider Creditor Funds; (e) agree to the settlements; (f) issue the indemnity; (g) execute any documents necessary for the GTL Affiliates to sell its equity interests, and (h) make the distributions, all as set forth in the EIHL Term Sheet, pursuant to 11 U.S.C. §§ 105, 363, 364 and 365 and Bankruptcy Rule 9019.

6.3     **GTL Affiliate Settlement.** This Plan constitutes a motion under Bankruptcy Rule 9019 to approve a settlement by and between the GTL Affiliates and the Debtor providing for, and the entry of the Confirmation Order shall constitute an approval of: (a) the agreement of the GTL Affiliates to be treated under Class 3C of the Plan providing for deferral of payments to be made as set forth in the EIHL Term Sheet; (b) the release of all claims of the estate against the GTL Released Parties set forth in Sections 12.4, 12.5 and 12.6 hereof; (c) the rejection of the Facility Agreement set forth in Section 10.1 hereof; and (d) the final allowance of the GTL Affiliate Entities Claims in the amounts set forth in the Debtor's Schedules.  In the event of an auction under Section 6.1 hereof, the provisions of the settlement set forth in or referred to by this Section 6.3 shall not be applicable in the event the Successful Bidder is an entity not approved by GTLL.

6.4     **GTL Creditors Trust**.  The GTL Creditors Trust shall be formed, operated and funded as set forth in Section 7 hereof for the benefit of the Beneficiaries.

6.5     **Board of Directors**.  Subject to the results of the auction in Section 6.1, the corporate directors of the Debtor shall serve as the initial directors of the Reorganized Debtor on the Effective Date.  The selection of directors of the Reorganized Debtor after the Effective Date shall be as provided in the Reorganized Debtor's charter and bylaws.

6.6     **Officers.**  Subject to the results of the Auction, the respective corporate officers of the Debtor shall serve as the initial officers of the Reorganized Debtor on the Effective Date.  The selection of officers of the Reorganized Debtor after the Effective Date shall be as provided in the Reorganized Debtor's charter and bylaws.

6.7     **Charter and Bylaws.** The charter and bylaws of the Reorganized Debtor shall contain such provisions as are necessary to satisfy the provisions of the Plan and, to the extent necessary, subject to further amendment of the charter and bylaws as permitted by applicable law.  Such charter and bylaws shall contain indemnification provisions applicable to the officers, directors and employees of the Reorganized Debtor and such other Persons as may, in the discretion of the board of directors of the Debtor be appropriate.  The articles of incorporation of the Debtor shall be amended to provide for the prohibiting the issuance of nonvoting equity securities, and to provide, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

6.8     **Vesting of Assets**. On the Effective Date, the property of the estate of the Debtor, other than the Creditor Trust Assets shall vest in the Reorganized Debtor.  The Creditor Trust Assets shall vest in the Creditor Trust.

6.9     **Corporate Authority**.  All actions and transactions contemplated under the Plan, including, but not limited to, the resizing and reconstituting of the Reorganized Debtor's board of directors and the issuance of debt instruments, promissory notes and related securitization documents, if any, shall be authorized upon Confirmation of the Plan without the need of further board resolutions, approval, notice or meetings, other than the notice provided by serving this Plan on all known creditors of the Debtor, and all current directors of the Debtor.  The Confirmation Order shall include provisions dispensing with the need of further board or stockholder resolutions, approval, notice or meetings and authorizing and directing the President, Senior Vice President and Chief Financial Officer and Secretary of the Debtor to execute such documents necessary to effectuate the Plan, which documents shall be binding on the Debtor and the Debtor's creditors.

6.10    **Assumption of Liabilities**.  The liability for and obligations under the Plan shall be assumed by and become obligations of the Reorganized Debtor.

6.11    **Securities Law Matters**.  The Confirmation Order shall include a finding and conclusion, binding upon all parties to the Chapter 11 Case, any subsequent trustee, the Securities and Exchange Commission and all state

regulatory or enforcement agencies, to the effect that all offerings and issuances of securities under the Plan, if any, fall within the section 1145 exemption.

6.12    **Claims on File; No Allowance of Untimely Claims**.  The Debtor is relying on the formal proofs of Claims on file and the Debtor's Schedules currently on file in seeking confirmation of the Plan.  No informal proof of Claim shall be deemed to have been filed in this Chapter 11 Case; no informal amendment, modification, or supplementation shall be deemed filed in this Chapter 11 Case.  No proof of Claim may be filed, amended, modified, or supplemented after the Confirmation Date without the consent of the Debtor.  Any filing prohibited by this paragraph shall be void.

6.13    **Integration Clause**.  This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtor, creditors, and the parties-in-interest upon the matters herein.  Parol evidence, including previously proposed but unconfirmed plans or drafts thereof, shall not be admissible in an action regarding this Plan or any of its provisions.

## SECTION 7:    GTL CREDITORS TRUST

7.1    **Creation and Funding of the GTL Creditors Trust**

(a)    **Establishment and Purpose of the GTL Creditors Trust**.  This Plan shall establish the GTL Creditors Trust for the purpose of receiving and distributing the Noninsider Creditor Funds to noninsider creditors with allowed unsecured claims, and to otherwise implement the terms and the provisions of the Trust Agreement.  On or prior to the Closing Date, the Debtor, the Committee and the Creditor Trustee shall create the GTL Creditors Trust, a liquidating grantor trust created under the laws of the State of Texas.

(b)    **Bankruptcy Code Section 1145 Determination**.  Confirmation of the Plan shall constitute a determination, in accordance with Bankruptcy Code section 1145, that (except with respect to an entity that is an underwriter as defined in Bankruptcy Code section 1145(b)) Section 5 of the Securities Act of 1933 and any state or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, broker or dealer in, a security does not apply to the offer or sale under the Plan of the Creditor Trust Assets in exchange for Claims against Debtor.  Notwithstanding, if the GTL Creditors Trust determines that registration and reporting under the Securities Exchange Act of 1934 is required, the GTL Creditors Trust will take steps to comply with those requirements.

(c)    **Tax Requirements of the GTL Creditors Trust**.  It is the intention of the parties hereto that the Creditors Trust be in compliance with the Revenue Procedure 94-45 safe harbor.  In the event of any inconsistency between the terms of this Plan, the Disclosure Statement, and the safe harbor provisions of Revenue Procedure 94-45, the Plan shall be deemed to have incorporated such provisions as may be necessary to fully fall within the terms of the safe harbor.  Without limiting the generality of the foregoing, the following provisions apply to this Plan, the Disclosure Statement and the GTL Creditors Trust:

(i)    The trust is or will be created pursuant to a this confirmed plan under Chapter 11 of the Bankruptcy Code for the primary purpose, as stated in its governing instrument, of liquidating the assets transferred to it with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the trust.

(ii)    The plan and disclosure statement must explain how the bankruptcy estate will treat the transfer of its assets to the trust for federal income tax purposes.  Revenue Procedure 94-45 provides that a transfer to a Creditors Trust for the benefit of creditors must be treated for all purposes of the Internal Revenue Code as a transfer to the creditors to the extent that the creditors are beneficiaries of the trust.  The transfer will be treated as a deemed transfer to the beneficiary-creditors followed by a deemed transfer by the beneficiary-creditors to the trust. Accordingly, the transfer of property to the Creditors Trust will be treated as a deemed transfer from the debtor to the beneficiary-creditors followed by a deemed transfer by the beneficiary-creditors to the Creditors Trust.

(iii)    The plan, disclosure statement and any separate trust instrument shall provide that the beneficiaries of the trust will be treated as the grantors and deemed owners of the trust. The trust

instrument shall require that the trustee file tax returns for the trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

(iv)      The plan, disclosure statement and any separate trust instrument shall provide for consistent valuations of the transferred property by the trustee and the creditors, and those valuations must be used for all federal income tax purposes.

(v)      If a reserve is established for disputed claims, such reserve shall be taxed on a current basis.

(vi)       The trust instrument shall contain a fixed or determinable termination date that is not more than five years from the date of creation of the trust and that is reasonable based on all facts and circumstances. If warranted by the facts and circumstances, provided for in the plan and trust instrument, and subject to the approval of the Bankruptcy Court upon a finding that the extension is necessary to the liquidating purpose of the trust, the term of the Trust may be extended for a finite term based on its particular facts and circumstances. The trust instrument shall require that each extension be approved by the court within six months of the extended term.

(vii)      The trust is not permitted to receive or retain cash or cash equivalents in excess of a reasonable amount to meet claims, expenses and contingent liabilities (including disputed claims) or to maintain the value of the assets during liquidation.

(viii)      The investment powers of the trustee, other than those reasonably necessary to maintain the value of the assets and to further the liquidating purpose of the trust, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills.

(ix)      The trust shall be required to distribute at least annually to the beneficiaries its net income plus all net proceeds from the sale of assets, except that the trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of its assets or to meet claims and reserve for the payment of Creditor Trust Expenses and contingent liabilities (including disputed claims).

(x)      On or as soon as practicable after the Effective Date, the Creditor Trustee shall establish, and shall thereafter maintain, one or more reserve accounts (the "Creditor Trust Expenses Reserve(s)") that will fund, and from which Creditor Trust Expenses Reserve(s) the Creditor Trustee shall pay, (a) all voluntary and involuntary, costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent, or unliquidated (collectively, the "Expenses") incurred by the Creditor Trust or the Creditor Trustee after the Effective Date of or related to the implementation of the Plan, including, but not limited to: (i) the Expenses of the Creditor Trustee, and the Disbursing Agent in connection with administering and implementing the Plan, including any taxes incurred by the Creditor Trust or on the Creditor Trust Assets and accrued on or after the Effective Date; (ii) the Expenses of the Creditor Trustee in making the Distributions required by the Plan, including paying taxes, filing tax returns, and paying professionals' fees with respect to such Distributions; (iii) any Expenses incurred by the Creditor Trust, the Creditor Trustee, and the Trust Committee (including the members of the Committee), but not including any attorneys' fees or other Professional Fees of such members; (v) the Expenses of independent contractors and professionals (including, without limitation, attorneys, advisors, accountants, brokers, consultants, experts, professionals and other Persons) providing services to the Creditor Trustee, or the Oversight Committee; (vi) the Expenses related to the Creditor Trust indemnity obligations, the purchase of errors and omissions insurance and/or other form of indemnification; and (vii) the fees and expenses of the Disbursing Agent in accordance with the retention agreement approved by the Bankruptcy Court or, in the case of a Disbursing Agent appointed by the Creditor Trustee, the compensation agreement approved by the Creditor Trustee and (b) all reasonably foreseeable expenses of preserving, enhancing and maximizing the value of, and distributable proceeds of the Creditor Trust Assets, including assets acquired through foreclosure, execution or otherwise as  Creditor Trust Assets; (collectively, the "Creditor Trust Expenses"); provided, however, that funds in reserve accounts comprising the Creditor Trust Expenses Reserve(s) may be re- allocated and transferred to different reserve accounts, and provided that nothing herein shall prohibit payment of any Creditor Trust Expenses from any Creditor Trust Assets.

(xi)      The Creditor Trustee may withhold from the amount distributable from the Creditor Trust at any time to any Person (except with respect to the IRS) such sum or sums as may be sufficient to pay any tax or taxes or other charge or charges that have been or may be imposed on such Person or upon the Creditor Trust with respect to the amount distributable or to be distributed under the income tax laws of the United States or of any state or of any state or political subdivision or entity by reason of any distribution provided for in this Agreement, whenever such withholding is required by any law, regulation, rule, ruling, directive or other governmental requirement, and the Creditor Trustee, subject to consultation with the Creditor Trust Committee, may enter into agreements with taxing or other authorities for the payment of such amounts as may be withheld in accordance with the provisions of this Section . Notwithstanding the foregoing but without prejudice to the Creditor Trustee's rights hereunder, such Person shall have the right with respect to the United States, or any state, or any political subdivision of either, to contest the imposition of any tax or other charge by reason of any distribution hereunder.

(xii)      The Creditor Trustee shall initially fund the Creditor Trust Expenses Reserve(s) from Cash transferred to the Creditor Trust on the Effective Date, or such other date as may be agreed to by the Professionals, and shall periodically re-assess and may modify the funding level, in its reasonable discretion (and as and to the extent required by the terms of the Plan, acting in consultation with the Trust Committee) in an amount necessary to pay in full in Cash the Creditor Trust Expenses. The Creditor Trust Expenses Reserve(s) may be funded thereafter as determined by the Creditor Trustee in its reasonable discretion (and as and to the extent required by the terms of the Plan, acting in consultation with the Trust Committee) to be necessary with Cash and Cash proceeds from the liquidation of Creditor Trust Assets. The Creditor Trustee shall pay Creditor Trust Expenses hereunder from the Creditor Trust Expenses Reserve(s) as soon as practicable in the judgment of the Creditor Trustee.

(d)      **The Trust Committee**

(i)      *Establishment and Selection of the Trust Committee*.  At or before the Confirmation Hearing, the Committee shall nominate three (3) candidates to serve on the Trust Committee, and shall file with the Bankruptcy Court a list of Trust Committee candidates before the Confirmation Hearing. The candidates shall be approved as members of the Trust Committee at the Confirmation Hearing, and shall subsequently undertake their duties as members of the Trust Committee specified in the Plan.  In serving as a member of the Trust Committee, the members shall not have assumed any fiduciary duties to Claim Holders, Interest Holders, the GTL Creditors Trust, or any other parties in interest in Debtor's chapter 11 cases.  In the event of a deadlock of the Trust Committee, each member thereto shall be entitled to file a motion with the Court, on proper notice to the other member of the Committee, and request that the Court resolve the deadlocked issue.

(ii)      *Resignation of Trust Committee Members*.  A member of the Trust Committee may resign at any time.  A replacement member who is the holder of an Allowed Unsecured Claim shall be selected and appointed by the remaining Trust Committee members

(iii)      *Compensation of Trust Committee Members*.  The Trust Committee members shall not be compensated for services rendered to the Debtor or the Bankruptcy Estate.  The Trust Committee members shall, however, be reimbursed for all reasonable out-of-pocket expenses incurred in serving on the Trust Committee, except fees and expenses of counsel or any other professionals to individual Trust Committee members.

(iv)      *Termination of the Committee*.  The appointment and operations of the Committee shall terminate on the Effective Date.  Any dissolution or termination of the appointment and operations of the Committee shall not prejudice the rights of any agents of the Committee (including its Professionals and Committee members) to pursue their separate claims for compensation and reimbursement of expenses, including Professional Fee Claims under the provisions of sections 330, 331 and/or 503(b)(3)(F) of the Bankruptcy Code, to serve on the Trust Committee, to represent the GTL Creditors Trust or the Creditor Trustee, or to serve as the Creditor Trustee.

(e)      **Trust Access to the Reorganized Debtor's Books and Records**.  The GTL Creditors Trust shall have access to the Reorganized Debtor's books and records for purposes including, but not limited to, reconciling claim amounts in order to prepare and file claim objections.  The Reorganized Debtor shall provide such access upon request made by the Creditor Trustee or its counsel.  To the extent that relevant books and records are in the

possession of a GTL Affiliated Entity (whether hard copy or electronic records), such GTL Affiliated Entity shall cooperate with the GTL Creditors Trust's request for information.  If the Reorganized Debtor or GTL Affiliated Entity, as applicable, objects to a request made by the GTL Creditors Trust, such objection must be made in writing within three (3) business days of the request.  The Court shall retain jurisdiction to resolve any dispute related to the GTL Creditor Trust's access of books and records herein.

7.2     **Creditor Trustee**

(a)     **Selection of Creditor Trustee**.  The Creditor Trustee shall be selected by a majority vote of the Trust Committee.

(b)     **General Duties of Creditor Trustee**.  The Creditor Trustee shall act to implement and effectuate the terms and provisions of the Creditors Trust Agreement.  To such effect, the Creditor Trustee shall sell, transfer, assign, convey, lease, use, and otherwise liquidate the Creditor Trust Assets in the manner provided for in the Plan, to pay Beneficiaries as designated within this Plan. The Creditor Trustee shall be compensated at his normal hourly rate for his services and the services of his staff. To the extent the Creditor Trustee was employed as a professional in the Bankruptcy Case, the Creditor Trustee shall not charge an hourly rate in excess of what was charged during the pendency of the Bankruptcy Case.

(c)     **Powers of the Creditor Trustee**.  The Creditor Trustee shall serve without bond but subject to supervision and control by the Court and the Trust Oversight Committee.  Except as provided in the Plan, the GTL Creditors Trust need not obtain any court order or approval in the exercise of any provisions or discretion conferred under the Plan, or account to any court in the absence of a breach of trust, but shall confer with the Trust Committee on a reasonable basis regarding any of the following power.  The GTL Creditors Trust shall exercise its judgment for the benefit of the Class 5 Claim Holders in order to maximize the value of the property of the GTL Creditors Trust, giving due regard to the cost, risk, and delay of any course of action.  The GTL Creditors Trust's powers (except as otherwise expressly limited in the Plan) shall include, without limitation, the following:

(i)      to accept the Creditor Trust Assets, to pursue the liquidation and marshaling of the Creditor Trust Assets, and to preserve and protect the Creditor Trust Assets;

(ii)     to reconcile, settle, or object to Claims against Debtor and any counterclaims arising therefrom;

(iii)    to make or cause to be made Distributions of Available Funds in accordance with the terms of the Plan, the Creditors Trust Agreement;

(iv)    to liquidate and distribute Creditor Trust Assets or any portion of or interest in Creditor Trust Assets, and to dispose of the Creditor Trust Assets for Cash or on such terms and for such consideration as are reasonable and appropriate;

(v)     to enforce the payment of notes or other obligations of any Person or to make contracts with respect thereto;

(vi)    after consultation with the Trust Committee, to purchase insurance with coverage and limits as it deems desirable, including insurance covering liabilities of the GTL Creditors Trust or employees or agents of the Debtor incurred in connection with their services to the Debtor;

(vii)   subject to the requirements of the Plan, to appoint, engage, employ, supervise, and compensate officers, employees, and other Persons as may be necessary or desirable, including managers, consultants, accountants, technical, financial, real estate, or investment advisors or managers, attorneys, agents or brokers, corporate fiduciaries, or depositories;

(viii)  subject to the limitations in the Plan, to the extent reasonably required to meet claims and contingent liabilities (including Disputed Claims) or to maintain the value of Creditor Trust Assets during liquidation, to invest and reinvest Available Funds, pending distribution, and to liquidate such investments;

(ix)     to establish the manner of ascertaining income and principal, and the apportionment of income and principal, and the apportionment between income and principal of all receipts and disbursements, and to select an annual accounting period;

(x)      to change the state of incorporation of the GTL Creditors Trust;

(xi)     after consultation with the Trust Committee to establish funds, reserves and accounts as deemed by the GTL Creditors Trust in its reasonable discretion to be useful in carrying out the purposes of the Plan including litigation;

(xii)    to sue and be sued (solely in his or her capacity as Creditor Trustee) and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding;

(xiii)   to consult with the Trust Committee at such times and regarding such issues relating to the liquidation of the Creditor Trust Assets as are desirable in accordance with the terms of the Plan;

(xiv)    to execute, deliver, and perform such other agreements and documents and to take or cause to be taken any and all such other actions as may be necessary or desirable to effectuate and carry out the purposes of the Plan;

(xv)     to undertake any action consistent with the terms of the Plan and the Creditors Trust Agreement, reasonably necessary to maintain the existence of the GTL Creditors Trust;

(xvi)    to undertake any action reasonably necessary to ensure that the GTL Creditors Trust is and remains in good standing and compliance with applicable federal, state, and local laws;

(xvii)   to file any federal, state, or local tax returns and provide for the payment of any related taxes;

(xviii)  to undertake any action or perform any obligation provided for or required under the Plan:

(xix)    to perfect and secure its rights, title and interest to the properties comprising the Creditor Trust Assets;

(xx)     to reduce all remaining Creditor Trust Assets to its possession and hold the same;

(xxi)    to contract to sell and sell the assets of the Trust or any part or parts thereof for such purchase price and for cash or on such terms as the Creditor Trustee shall deem appropriate including to sell property subject to liens, security interests, and claims of constructive trust, with such liens, claims and encumbrances attaching to the proceeds of such sale;

(xxii)   to pay and discharge any costs, expenses or obligations deemed necessary to preserve the Creditor Trust Assets or any part thereof; and

(xxiii)  to improve or repair the Creditor Trust Assets or any part thereof.

(d)     **Replacement Creditor Trustee(s).**  In the event of the death, resignation or removal of the Creditor Trustee, a successor Trustee shall be appointed by the Trust Committee.  The Creditor Trustee may resign at any time by giving written notice of his intention to do so addressed jointly to (i) the Court, (ii) the United States Trustee, and (iii) the Trust Committee.  Such resignation shall be effective upon the earlier of thirty (30) days after giving such notice or the naming of a new Creditor Trustee.  Any and all successor Creditor Trustees shall be vested with all the rights, privileges, powers and duties of a predecessor.  The Trust Committee may remove the Creditor Trustee at any time, in its sole and absolute discretion, with or without cause.

(e)     **Termination of Duties.**  The duties and responsibilities of the Creditor Trustee shall become effective upon the Effective Date.  Thereupon, these provisions shall remain and continue in full force and effect until the assets of these estate have been wholly converted to cash and all costs, distributions, expenses and obligations incurred in administering these assets and required by this Plan have been fully paid and all remaining income, proceeds and avails of these estate have been distributed in payment of Allowed Claims and pursuant to the provisions of the Plan.  Upon the occurrence of such termination, the Creditor Trustee shall file with the Court a report thereof, seeking an order discharging the Creditor Trustee and providing such injunctive relief required

with respect to Claims which are discharged, and provide notice thereof to all Creditors whose Claims were not paid in full pursuant to the Plan.

### 7.3   Assets of the GTL Creditors Trust

(a)   **Funding of Trust**.  This Plan is hereby offered and shall be considered a Bankruptcy Code section 363 motion for authority to convey the Creditor Trust Assets to the GTL Creditors Trust on the Effective Date, free and clear of all liens, claims and encumbrances, except as otherwise provided in the Plan and the Creditors Trust Agreement.  Any objections to such Motion should be made as an objection to confirmation of the Plan for hearing at the time of confirmation.  Any party having a lien, claim, or encumbrance against the Creditor Trust Assets shall be conclusively deemed to have consented to the transfer of the Creditor Trust Assets to the Creditor Trustee free and clear of such lien, claim, or encumbrance, and the entry of the orders described above, by failing to object to confirmation of this Plan.  With the exception of the claims against the Released Parties which are specifically released under Section 12.4 of the Plan, all rights pursuant to Chapter 5 of the Bankruptcy Code, including without limiting rights under sections 502, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to section 547 of the Bankruptcy Code, all fraudulent transfer claims pursuant to section 548 of the Bankruptcy Code, and all claims relating to post-petition transactions under section 549 of the Bankruptcy Code shall remain the property of the Reorganized Debtor.  In determining allowed claims for distributions, the Creditor Trust shall be responsible for claim objections and counterclaims, if any, arising from such claim objections.

(a)   **The Closing**.  Closing of the transactions required and contemplated under the Plan shall take place on the Effective Date, or at such other time and place as may be designated by the Debtor.  The Closing may be continued by the Debtor by making an announcement at the originally scheduled Closing of the new date for the Closing; provided, however, the new date for the closing must occur within ten (10) days after the original Closing Date.

(b)   **Execution of Documents and Corporate Action**.  Debtor shall deliver to the GTL Creditors Trust all documents and perform all actions reasonably contemplated with respect to implementation of the Plan.

### 7.4   Distributions by the Trust.

(a)   **Distribution Dates**.  As soon as reasonably practical following the Effective Date, the Creditor Trustee shall send written requests to each creditor seeking the creditor's Federal Tax Identification number or social security number, as applicable.  Such written requests shall be sent to the creditor's address in the Debtor's schedules or the creditor's proof of claim.  In the event a creditor is a foreign company, the request shall be for any identification number which may be required by law in order for the Creditor Trustee to make the distribution to such foreign creditor, as the case may be.  The request shall set a deadline for creditors to provide such information of no less than 2 weeks but no more than one month following the request (the "Identification Date").  Commencing on or before 30 days following the Identification Date and each six month anniversary thereof (each, a "Distribution Date"), the Creditor Trustee shall make distributions under the Plan to creditors who have provided the requested identification information.   Unless otherwise expressly provided in this Plan, a Distribution Date for any given Claim shall mean the first day that is a Distribution Date following (a) the Date such Claim becomes an Allowed Claim; (b) the first Distribution Date on which Available Funds exceed $50,000, unless it is the final Distribution Date, as determined by the Creditor Trustee.  A claim shall not be deemed allowed unless and until the creditor provides information necessary to identify the creditor under applicable law.

(b)   **Definition of Available Funds**.   "Available Funds" shall mean good funds on deposit with the GTL Creditors Trust in excess of (a) an amount in reserve sufficient, in the sole and absolute discretion of the Creditor Trustee with the approval of the Trust Committee to pay all post-confirmation operating and litigation expenses of the Creditor Trustee, including payments to professionals, including a reserve of such cash to pay future expenses of the Creditor Trustee as he deems advisable; (b) and an amount in reserve sufficient to pay the Disputed Claims in the Class on a pari passu basis with the Allowed Claims (for example if the Allowed Claim in the Class are receiving a distribution from Available Funds equal to 10% of their Allowed Claims, then the reserve shall be sufficient to make a distribution equal to 10% of the total Disputed Claims in the Class). If a de minimus amount of funds remain following Creditor Trust distributions to all known allowed creditors, the

Creditor Trustee shall be permitted, upon approval of the Creditor Trust, to donate such de minimus remaining funds to a charitable organization qualified under section 501(c)(3) of the Internal Revenue Code.

(c)   **Rules Regarding Distributions by the Creditor Trustee**.   The Creditor Trustee shall have no obligation to search for new addresses of Creditors whose distributions are returned.   The Creditor Trustee may rely exclusively upon the addresses contained (i) in the Debtor's schedules, if a Creditor did not file a proof of claim; (ii) in a Creditor's proof of claim; then (iii) in any written notice provided to the Creditor Trustee after the Effective Date.   No other addresses need be sought.   Any distribution undeliverable after consideration of such three address sources shall be escheated pursuant to the laws of the State of Texas.   Any distribution checks that have not been negotiated within ninety days of issuance shall be canceled.   Payment of such distribution checks shall be escheated pursuant to the laws of the State of Texas.   The Creditor Trustee may suspend distribution to any Creditor that has not provided the Creditor Trustee with its Federal Tax Identification number or social security number or in the case of a foreign company, any identification number which may be required by law in order for the Trustee to make the distribution, as the case may be.

(d)   **Surrender of Instruments**. Except as otherwise provided in the Plan, each Claim Holder or Interest Holder holding a certificate or instrument evidencing a Claim against, or Interest in, the Debtor or the Creditor Trust Assets and whose claims are treated under the Plan shall surrender such certificate or instrument to the GTL Creditors Trust on the Closing Date as a prerequisite to receiving any distribution under the Plan, unless the non-availability of such certificate or instrument is established to the satisfaction of the GTL Creditors Trust. This provision is not applicable to the GTL Affiliated Entities who are not receiving a distribution from the GTL Creditors Trust.

(e)   **Creditor Trust Professionals**. Professionals employed by the Creditor Trust (the "Creditor Trust Professionals") shall be retained by the Creditor Trustee without further order of the Court.   The terms of employment of Creditor Trust Professionals shall be subject to the approval of the Trust Committee.   Creditor Trust Professional shall be required to provide monthly fee and expense statements (the "Creditor Trust Monthly Fee Statements") to the Creditor Trustee in a form acceptable by the Trust Committee.   The Creditor Trust, in consultation with the Creditor Trustee, shall have thirty (30) days following receipt of a Creditor Trust Monthly Fee Statement to object to an applicable statement.   Such objection shall be in writing (but need not be filed with the Court) made by the Creditor Trustee to the applicable Creditor Trust Professional.   If the parties thereafter are unable to resolve the objection, the Court shall retain jurisdiction to resolve any fee and expense dispute between a Creditor Trust Professional and the Creditor Trust.   If no objection is timely made to a Creditor Monthly Fee Statement, the Creditor Trust shall thereafter pay the full amount of the applicable Creditor Monthly Fee Statement as soon as reasonably possible.

7.5   **Activities of the GTL Creditors Trust**

(a)   **Oversight by Trust Committee**.   The GTL Creditors Trust shall consult with the Trust Committee in good faith regarding all material issues affecting the GTL Creditors Trust, including, without limitation, the resolution of Claims objections, the disposition of Creditor Trust Assets and budgets for the GTL Creditors Trust, setting forth expected receipts and disbursements for litigation, operations, and other appropriate purposes and shall comply with the instructions of the Trust Committee.

(b)   **Access to Information by Claim Holders.**   On at least two (2) Business Days written notice to the GTL Creditors Trust, each Claim Holder shall have access to the business records of the Creditors Trust during normal business hours for the purpose of obtaining information relating to the management of Creditor Trust Assets for any purpose reasonably related to the interests generally of the Claim Holders; provided, however, that such access does not constitute an undue burden on the GTL Creditors Trust.

(c)   **Standard of Care; Indemnification; Exculpation**.   The Creditor Trustee, acting in his capacity as Trustee of the GTL Creditors Trust or in any other capacity contemplated by the Plan, and Trust Committee members shall not be personally liable in connection with any action in furtherance of the liquidation of the Debtor and the Creditor Trust Assets or to any Person, except for such acts or omissions constituting fraud, willful misconduct, or gross negligence.   The Creditor Trustee shall not be personally liable to the Debtor, Claim Holders, or any Person for the acts or omissions of any employee or agent of the Debtor, the Creditor Trustee, the GTL Creditors Trust, unless the Creditor Trustee acted with gross negligence or willful misconduct in the selection, retention, or supervision of such employee or agent.   Except in those situations in which the Creditor

Trustee is not exonerated of personal liability in accordance with the foregoing, the Creditor Trustee (including each former Creditor Trustee) shall be indemnified by the GTL Creditors Trust against, and held harmless from any losses, claims, damages, liabilities or expenses (including attorney fees, disbursements, and related expenses) to which the GTL Creditors Trust may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against the Creditor Trustee in the Creditor Trustee's capacity as Trustee of the GTL Creditors Trust, or in any other capacity contemplated by the Plan or in connection with any matter arising out of or related to the Plan. If the Creditor Trustee becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, the GTL Creditors Trust shall periodically advance or otherwise reimburse on demand the Creditor Trustee's reasonable legal and other expenses (including the costs of any investigation and preparation and attorney fees, disbursements, and related expenses) incurred in connection therewith; provided, however, the Creditor Trustee shall be required to repay promptly the GTL Creditors Trust the amount of any such advanced or reimbursed expenses paid to the Creditor Trustee to the extent that it shall be ultimately determined by Final Order that the Creditor Trustee engaged in fraud, willful misconduct, or gross negligence in connection with the affairs of the Debtor or the orderly liquidation of the Creditor Trust Assets with respect to which such expenses were paid. The provisions of this Section of the Plan shall remain available to and be binding on any former Creditor Trustee or the estate of any deceased Creditor Trustee.

(d)      **Reliance by GTL Creditors Trust**.  The GTL Creditors Trust may rely, and shall be fully, protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the GTL Creditors Trust has no reason to believe is not genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the GTL Creditors Trust may conclusively rely as to the truth of the statements and correctness of the opinions expressed in such documents; provided, however, the GTL Creditors Trust shall be under a duty to examine, or caused to be examined, the above-referenced documents to determine whether such documents conform to the requirements of the Plan. The GTL Creditors Trust may consult with counsel, and any opinion of counsel shall be full and complete authorization and protection regarding any action taken or suffered by the GTL Creditors Trust in accordance with such opinion. The GTL Creditors Trust shall have the right at any time to seek instructions from the Bankruptcy Court (or any other court of competent jurisdiction after the chapter 11 case is finally closed) concerning the Creditor Trust Assets, the Plan, or any other document executed in connection therewith, and those instructions shall be full and complete authorization regarding any action taken or suffered by the GTL Creditors Trust in accordance with those instructions.

(e)      **Records**.  The GTL Creditors Trust shall maintain records and account books relating to the Creditor Trust Assets, the management of the Creditor Trust Assets, and all transactions undertaken by the GTL Creditors Trust, which records and books of account shall be maintained in accordance with GAAP, consistently applied, except to the extent that any change is approved by the Trust's independent public accountants. The GTL Creditors Trust shall also maintain records and account books relating to all Distributions contemplated under the Plan. The Creditor Trustee, upon approval of the Creditor Trust, shall make the determination of when GTL Creditor Trust books and records are no longer needed. Upon such determination, the Creditor Trustee shall file with the Court a motion requesting authority destroy such books and records. Upon entry of an order granting such motion, the Creditor Trustee shall be permitted to destroy such records in a commercially reasonable fashion.

7.6      *Termination of the GTL Creditors Trust*.   After (a) the Creditor Trustee has fully administered all remaining Creditor Trust Assets and (b) the Creditor Trustee has paid or reserved for all expenses of administering, winding up and dissolving the GTL Creditors Trust and made a final distribution to Creditors holding Allowed Claims (the "Final Distribution Date"), the Creditor Trustee shall wind up and dissolve the GTL Creditors Trust.

## SECTION 8:      DISTRIBUTIONS

8.1      **Distribution Record Date**. As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtor or its agents shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests. The Debtor or the Creditor Trustee shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring after the

Distribution Record Date. The Debtor, the Creditor Trustee, or any party responsible for making Distributions shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

8.2     **Date of Distributions.** Except as otherwise provided in this Plan, on the Effective Date or Distribution Date, as the case may be, or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, on the next Distribution Date or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtor shall receive its prorate share of the Distributions that this Plan provides for Allowed Claims in the applicable Class and in the manner provided herein. Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and, except as otherwise provided in this Plan, no interest shall accrue or be payable with respect to such Claims or any Distribution related thereto. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in this Plan. Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the Distributions provided for herein, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

1.2     **Disbursing Agent.** Except as otherwise provided in this Plan, all Distributions under this Plan shall be made by the Reorganized Debtor or Creditor Trustee as Disbursing Agent or such other Person designated by the Debtor or Creditor Trustee as a Disbursing Agent on the Effective Date.  The Creditor Trustee shall be permitted to simultaneously act as Disbursing Agent for the Creditor Trust.

8.3     **Rights and Powers of Disbursing Agent.** The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan; (b) make all Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of this Plan.

8.4     **Delivery of Distributions in General.** Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Disbursing Agent.  Distributions to Holders of Allowed Claims will be made at the address of each such Holder as set forth in the Debtor's books and records.  None of the Reorganized Debtor or the Creditor Trustee shall incur any liability whatsoever on account of any Distributions under this Plan except for gross negligence, willful misconduct or fraud.

8.5     **Payments and Distributions on Disputed Claims.** Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date. Notwithstanding any provision otherwise in this Plan and except as may be agreed to by the Debtor or the Creditor Trustee, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

8.6     **Manner of Payment**. Any Distributions to be made by or on behalf of the Debtor or the Creditor Trustee, as applicable, pursuant to this Plan shall be made by checks drawn on accounts maintained by the Debtor or the Creditor Trustee, respectively, or by ACH or wire transfer if circumstances justify, at the option of the Debtor or the Creditor Trustee, as applicable.

8.7     **Undeliverable Distributions and Unclaimed Property.** In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such Distribution shall be made as soon as practicable after such Distribution has become deliverable; provided, however, that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six months from the applicable Distribution Date. After such date, all "unclaimed property" or interests in property shall revert to the Reorganized Debtor except in the case of the Creditor Trust, which notwithstanding anything to the contrary shall be escheated to the State of

Texas, (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any Holder to such property shall be discharged and forever barred.

8.8     **Withholding and Reporting Requirements.** In connection with this Plan and all instruments issued in connection therewith, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all Distributions under this Plan shall be subject to any such withholding or reporting requirements.

8.9     **Surrender Instruments**. Pursuant to Bankruptcy Code section 1143, as a condition precedent to receiving any Distribution under the Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee. Any holder of such instrument or note that fails to (i) surrender the instrument or note or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent before the fifth anniversary of the Confirmation Date shall be deemed to have forfeited all rights and claims and may not participate any Distribution hereunder. Any Distribution so forfeited shall become property of the Creditor Trust. This provision is not applicable to the GTL Affiliated Entities who are not receiving a distribution from the GTL Creditors Trust.

8.10    **Setoffs.** The Debtor and the Creditor Trustee may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which a Distribution shall be made), any claims of any nature whatsoever that the Debtor and the Creditor Trustee may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor and the Creditor Trustee of any such claim the Debtor and the Creditor Trustee may have against the Holder of such Claim.

8.11    **Insurance Claims.** No Distributions under this Plan shall be made on account of Allowed Claims until the Holder of such Allowed Claim has exhausted all remedies with respect to the Debtor's Insurance Policies. To the extent that one or more of the Debtor's insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

8.12    **Applicability of Insurance Policies.** Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be made in accordance with the provisions of any applicable Insurance Policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor, Creditor Trustee or any Person may hold against any other Person, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

8.13    **No Postpetition Interest**. Unless otherwise specifically provided for herein or in the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests, and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on such Claim.

8.14    **Distributions Free and Clear**. Except as may be otherwise provided herein, all Distributions under this Plan shall be free and clear of any Liens, Claims, encumbrances, and other interests.

8.15    **Fractional Dollars; De Minimis Distributions**. Notwithstanding any other provision of this Plan, Cash payments of fractions of dollars shall not be made. Whenever any Distribution to a Holder of a Claim would otherwise call for Distribution of Cash in a fractional dollar amount, the actual Distribution of such Cash shall be rounded to the nearest whole dollar (up or down), with half dollars (or less) being rounded down. Neither the Debtor nor the Creditor Trustee shall be required to make any Cash payment of less than two hundred dollars ($200.00) with respect to any Claim or Interest unless a request therefor is made in writing to the Debtor or the Creditor Trustee, as applicable; provided, however, that neither the Debtor nor the Creditor Trustee shall have any obligation to make any Distribution, whether final or not, unless and until the total amount of such Distribution to a specific Holder of an Allowed Claim or Interest is equal to or greater than two hundred dollars ($200.00).

8.16    **Allocation of Distributions between Principal and Unpaid Interest**. To the extent that any Allowed Claim entitled to a Distribution under this Plan includes both principal and accrued but unpaid interest, such Distribution

shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

8.17    **Single Satisfaction of Claims.** Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claim, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of the Claim. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under this Plan on account of Allowed Claims exceed 100% of the underlying Allowed Claim.

## SECTION 9:      PROCEDURES FOR DISPUTED CLAIMS

9.1    **Allowance of Claims and Interests**. Except as expressly provided herein, or in any order entered in the Debtor's Chapter 11 Cases prior to the Effective Date, including the Confirmation Order, no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under this Plan or the Bankruptcy Code or Allowed by the Bankruptcy Court by entry of a Final Order allowing such Claim or Interest. Prior to and following the Effective Date, the Creditor Trust shall be vested with any and all rights and defenses the Debtor had with respect to any Claim of a Beneficiary immediately prior to the Effective Date.

9.2    **Objections to Claims**. The Debtor (before the Effective Date) or the Creditor Trustee (on or after the Effective Date), as applicable, shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims as permitted under this Plan. Any objections to claims shall be filed and served on or before the later of (i) one hundred eighty (180) days after the Effective Date or (ii) such date as may be fixed by the Bankruptcy Court. From and after the Effective Date, the Creditor Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. The Creditor Trustee reserve all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

9.3    **Estimation of Claims.** The Debtor (before the Effective Date) or the Creditor Trustee (on or after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Creditor Trustee may pursue supplementary proceedings to object to the allowance of such Claim; provided, however, the Creditor Trustee may elect not to pursue such supplementary proceedings, instead electing to treat such maximum amount as the Allowed amount of such Claim.

9.4    **No Distribution Pending Allowance**. Notwithstanding any other provision of this Plan, if any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

9.5    **Distributions after Allowance.** At such time as a Contingent Claim or a Disputed Claim becomes an Allowed Claim, a Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Contingent Claim or Disputed Claim becomes a Final Order. To the extent that all or a portion of a Contingent Claim or a Disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed.

9.6    **Preservations of Rights to Settle Claims**. In accordance with section 1123(b) of the Bankruptcy Code, the Creditor Trustee shall have the discretion to retain and enforce, sue on, settle, or compromise all claims, rights, causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or their Estate may hold against any person or entity without the approval of the Bankruptcy Court, subject to the terms of this Plan, the Confirmation Order, the Creditor Trust Agreement, and any contract, instrument, release, indenture, or other agreement

entered into in connection herewith. The Creditor Trustee may pursue such retained claims, rights, or causes of action, suits, or proceedings, as appropriate, in accordance with the best interests of the Creditor Trust and its Beneficiaries.

9.7     **Disallowed Claims**. All Claims held by persons or entities against whom or which the Debtor or Creditor Trustee has commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject the Plan. Disallowed Claims pursuant to this Section shall continue to be Disallowed Claims for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Debtor or Creditor Trustee from such party have been paid.

## SECTION 10:     EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1     **Assumption and Rejection of Executory Contracts and Unexpired Leases.** Except as otherwise provided in this Plan, each of the Executory Contracts and Unexpired Leases of the Debtor shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the Debtor; (2) expired or terminated pursuant to its own terms before the Effective Date; (3) is the subject of a motion to assume or reject filed on or before the Effective Date; or (4) is as follows (the "Assumed Contracts"):

    (a)     Customer Contracts

    (b)     Facility Lease;

    (c)     Informage Agreement;

    (d)     Employment Agreements of Urmeet Juneja and Rajiv Kamat; and

    (e)     [To be determined].

10.2     **Assumption of Assumed Contracts**. The Plan constitutes a motion to assume the Assumed Contracts, which assumption shall be effective as of the Effective Date. The Reorganized Debtor shall be responsible for all cure amounts due under the Assumed Contracts as set forth in Section 10.4 herein.

10.3     **Inclusiveness**. Unless otherwise specified, each Executory Contract and Unexpired Lease assumed or rejected by the Debtor shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract or Unexpired Lease.

10.4     **Rejection Claims**. Except as otherwise provided in orders entered by the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court and served on counsel to the Debtor or the Creditor Trustee on or before the date that is thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; provided, that any such Claims arising from the rejection of an Unexpired Lease shall be subject to the cap on rejection damages imposed by Bankruptcy Code section 502(b)(6). Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtor or the Creditor Trustee, the Debtor's Estate or their property without the need for any objection by the Debtor or the Creditor Trustee or further notice to, or action, order or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the Debtor and shall be treated in accordance with this Plan.

10.5     **Cure of Defaults.** Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed under this Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by Cure. If there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of the Successful Bidders to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory

Contract or Unexpired Lease to be assumed or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption.

(a)      Informage Cure.  Notwithstanding anything herein to the contrary, the Informage Cure Amount shall be US$1.51 million, payable pursuant to Sections 2.1(a) and 10.5 of the Plan in cash, on or within three business days following all of the following: (a) entry of a final and nonappealable order confirming the Amended Plan; (b) the occurrence of the Effective Date of the Amended Plan; and (c) the satisfaction of all conditions necessary to release from escrow the executed mutual release agreement among Informage and the GTL Released Parties described herein.

10.6   **Full Release and Satisfaction**. Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption.

10.7   **Reservation of Rights.** Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Debtor or the Creditor Trustee that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor or the Creditor Trustee have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or the Creditor Trustee, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## SECTION 11:   CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

11.1   **Conditions Precedent to Confirmation.** Confirmation of this Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of this Plan:

(a)      The Bankruptcy Court shall have entered an order, which shall not be subject to any stay or subject to an unresolved request for revocation under section 1144 of the Bankruptcy Code, in form and substance acceptable to the Debtor, approving the Disclosure Statement with respect to this Plan and the solicitation of votes thereon as being in compliance with section 1125 of the Bankruptcy Code and applicable non-bankruptcy law.

(b)      The proposed Confirmation Order shall be in form and substance satisfactory in all respects to the Debtor, EIHL and the Creditor Trustee; and

(c)      The Plan and the Plan Supplement, including any schedules, documents, supplements and exhibits thereto shall be, in form and substance, acceptable the Debtor.

(d)      AutoOpt and Informage have executed and deposited into escrow the Release Agreements described in Section 12.11

11.2   **Conditions Precedent to the Effective Date.** The Effective Date shall not occur until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of this Plan:

(a)      The Bankruptcy Court shall have entered the Confirmation Order, in form and substance acceptable to the Debtor, and such Confirmation Order shall not be subject to any stay or an unresolved request for revocation under section 1144 of the Bankruptcy Code;

(b)      The Bankruptcy Court shall have entered one or more orders, in form and substance acceptable to the Debtor, (i) authorizing the sales to the Successful Bidders pursuant to section 363 of the Bankruptcy Code and (ii) authorizing the assumption and rejection of Executory Contracts and Unexpired Leases by the Debtor; and

(c)      All actions, documents, certificates, and agreements necessary to implement this Plan, including, without limitation, the Creditor Trust Agreement, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

(d)      EIHL has funded $2.5 million to the Debtor under the terms of the EIHL Term Sheet.

**11.3    Waiver of Conditions.** The conditions to confirmation and consummation of this Plan set forth herein may be waived at any time by the Debtor without notice to any other parties in interest or the Bankruptcy Court and without a hearing; provided, however, that the Debtor may not waive entry of the Order approving the Disclosure Statement and the Confirmation Order.

**11.4    Effect of Failure of Conditions.** If the consummation of this Plan does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders of Claims or any other Person; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Holders or any other Person in any respect.

## SECTION 12:    EFFECT OF CONFIRMATION

**12.1    Immediate Binding Effect.** Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of this Plan and the Creditor Trust Agreement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Creditor Trustee, the Liquating Trust and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted this Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in this Plan, each Person acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

**12.2    Compromise and Settlement of Claims, Interests and Controversies.** Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, their Estate and Holders of Claims and Interests and is fair, equitable and reasonable.

**12.3    Discharge of Claims and Termination of Interests.** Except as otherwise provided herein or in the Confirmation Order, the rights afforded herein and the payments and Distributions to be made hereunder shall discharge all existing debts and Claims for all creditors except for the GTL Affiliated Entities, of any kind, nature, or description whatsoever against or in the Debtor or any of their Assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided herein, on the Effective Date, all existing Claims against the Debtor except for the GTL Affiliated Entities  in the Debtor shall be deemed to be discharged and terminated, and all Holders of Claims except for the GTL Affiliated Entities shall be precluded and enjoined from asserting against the Debtor or the Creditor Trust or any of their Assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such Holder has filed a Proof of Claim or proof of interest. Notwithstanding any provision herein, any valid setoff or recoupment rights held against any of the Debtor shall not be affected by the Plan and shall be expressly preserved in the Confirmation Order.  The GTL Affiliates will continue to have Claims against the Debtor which will be paid in accordance with Class 3C of this Plan.

**12.4    Releases by the Debtor.** Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in this Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious liquidation of the Debtor and the consummation of the transactions contemplated by this Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtor and their Estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor or their Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's Chapter 11 Case, the transactions or events giving rise to any Claim or Interest that is

treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Debtor's Chapter 11 Cases, the negotiation, formulation or preparation of this Plan, the Disclosure Statement, any Plan Supplement or related agreements, instruments or other documents (collectively, the "**Debtor Released Claims**"), other than Debtor Released Claims against a Released Party arising out of the gross negligence, willful misconduct, intentional fraud, or criminal liability of any such person or entity.

12.5     **Releases by Holders of Claims.** ON THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED HEREIN AND EXCEPT FOR THE RIGHT TO ENFORCE THIS PLAN, ALL PERSONS WHO HAVE (A) EITHER (I) VOTED TO ACCEPT THIS PLAN OR WHO ARE PRESUMED OR DEEMED TO HAVE VOTED TO ACCEPT THIS PLAN UNDER SECTION 1126(F) OF THE BANKRUPTCY CODE OR (II) ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THIS PLAN AND WHO VOTE TO REJECT THIS PLAN OR ABSTAIN FROM VOTING, AND (B) DO NOT MARK THEIR BALLOTS AS OPTING OUT OF THE RELEASES GRANTED UNDER THIS SECTION, SHALL, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, BE DEEMED TO FOREVER RELEASE, WAIVE AND DISCHARGE THE RELEASED PARTIES AND EACH OF THEIR RESPECTIVE CONSTITUENTS, PRINCIPALS, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, REPRESENTATIVES, ATTORNEYS, PROFESSIONALS, ADVISORS, AFFILIATES, FUNDS, SUCCESSORS, PREDECESSORS, AND ASSIGNS, OF AND FROM ALL LIENS, CLAIMS, CAUSES OF ACTION, LIABILITIES, ENCUMBRANCES, SECURITY INTERESTS, INTERESTS OR CHARGES OF ANY NATURE OR DESCRIPTION WHATSOEVER RELATING TO THE DEBTOR, THE CHAPTER 11 CASE OR AFFECTING PROPERTY OF THE ESTATE, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, SCHEDULED OR UNSCHEDULED, CONTINGENT OR NOT CONTINGENT, UNLIQUIDATED OR FIXED, ADMITTED OR DISPUTED, MATURED OR UNMATURED, SENIOR OR SUBORDINATED, WHETHER ASSERTABLE DIRECTLY OR DERIVATIVELY BY, THROUGH, OR RELATED TO THE DEBTOR, AGAINST SUCCESSORS OR ASSIGNS OF THE DEBTOR AND THE INDIVIDUALS AND ENTITIES LISTED ABOVE WHETHER AT LAW, IN EQUITY OR OTHERWISE, BASED UPON ANY CONDITION, EVENT, ACT, OMISSION OCCURRENCE, TRANSACTION OR OTHER ACTIVITY, INACTIVITY, INSTRUMENT OR OTHER AGREEMENT OF ANY KIND OR NATURE OCCURRING, ARISING OR EXISTING PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO OR ARISING OUT OF, IN WHOLE OR IN PART, THE DEBTOR, THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE NEGOTIATION AND CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED THEREBY, THE CONSUMMATION OF THIS PLAN OR THE ADMINISTRATION OF THIS PLAN, INCLUDING WITHOUT LIMITATION, THE NEGOTIATION AND SOLICITATION OF THIS PLAN, ALL REGARDLESS OF WHETHER (A) A PROOF OF CLAIM OR EQUITY INTEREST HAS BEEN FILED OR IS DEEMED TO HAVE BEEN FILED, (B) SUCH CLAIM OR EQUITY INTEREST IS ALLOWED OR (C) THE HOLDER OF SUCH CLAIM OR EQUITY INTEREST HAS VOTED TO ACCEPT OR REJECT THIS PLAN, EXCEPT FOR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE. FOR THE AVOIDANCE OF DOUBT, NOTHING CONTAINED HEREIN SHALL IMPACT THE RIGHT OF ANY HOLDER OF AN ALLOWED CLAIM TO RECEIVE A DISTRIBUTION ON ACCOUNT OF ITS ALLOWED CLAIM IN ACCORDANCE WITH SECTION 4 HEREOF.

12.6     Exculpation. NONE OF THE RELEASED PARTIES, NOR ANY OF THEIR RESPECTIVE MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, ADVISORS, PROFESSIONALS, ATTORNEYS OR AGENTS OR ANY OF THEIR SUCCESSORS AND ASSIGNS, SHALL HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST, OR OTHER PARTY IN INTEREST, OR ANY OF THEIR RESPECTIVE MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, ADVISORS, PROFESSIONALS, ATTORNEYS OR AGENTS OR ANY OF THEIR SUCCESSORS AND ASSIGNS, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATED TO, OR ARISING OUT OF, IN WHOLE OR IN PART, THE DEBTOR'S CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE CONSUMMATION OF THIS PLAN OR THE ADMINISTRATION OF THIS PLAN, INCLUDING WITHOUT LIMITATION, THE NEGOTIATION AND SOLICITATION OF THIS PLAN AND THE NEGOTIATION AND CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED THEREBY, EXCEPT FOR THEIR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION, AND, IN ALL RESPECTS, THE RELEASED PARTIES, AND EACH OF THEIR RESPECTIVE MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, ADVISORS, PROFESSIONALS, ATTORNEYS OR AGENTS, SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THIS PLAN.

12.7     **INJUNCTION.** FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR INTEREST IN THE DEBTOR ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN OR THE CONFIRMATION ORDER.  FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN THIS PLAN, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION,

INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THIS PLAN, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (C) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH PERSONS OR THE PROPERTY OR ESTATE OF SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (D) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, SETTLED OR DISCHARGED PURSUANT TO THIS PLAN.  THE RIGHTS AFFORDED IN THIS PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTOR OR ANY OF THEIR ASSETS, PROPERTY OR ESTATE. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED (EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN).  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS PLAN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL INTERESTS SHALL BE CANCELLED, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE. ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

12.8   **SUPPLEMENTAL INJUNCTION. IN ORDER TO PRESERVE AND PROMOTE THE SETTLEMENTS CONTEMPLATED BY AND PROVIDED FOR IN THE PLAN, AND TO SUPPLEMENT, WHERE NECESSARY, THE INJUNCTIVE EFFECT OF THE DISCHARGE AS PROVIDED IN SECTIONS 1141 AND 524 OF THE BANKRUPTCY CODE AND AS DESCRIBED IN THIS ARTICLE, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ALL ENTITIES WHICH HAVE HELD OR ASSERTED, WHICH HOLD OR ASSERT OR WHICH MAY HOLD OR ASSERT ANY CLAIM, DEMAND OR CAUSE OF ACTION (INCLUDING, WITHOUT LIMITATION, AUTOOPT, SHAH, INFORMAGE, KAPAI AND PLANK) AGAINST THE GTL RELEASED PARTIES (OR ANY OF THEM), WHENEVER AND WHEREVER ARISING OR ASSERTED, WHETHER IN THE U.S. OR ANYWHERE ELSE IN THE WORLD, WHETHER SOUNDING IN TORT, CONTRACT, WARRANTY OR ANY OTHER THEORY OF LAW, EQUITY OR ADMIRALTY, SHALL BE PERMANENTLY STAYED, RESTRAINED AND ENJOINED FROM TAKING ANY ACTION AGAINST THE RELEASED PARTIES FOR THE PURPOSE OF DIRECTLY OR INDIRECTLY COLLECTING, RECOVERING OR RECEIVING PAYMENTS OR RECOVERY WITH RESPECT TO ANY SUCH CLAIM, DEMAND OR CAUSE OF ACTION ARISING PRIOR TO THE EFFECTIVE DATE, INCLUDING, BUT NOT LIMITED TO: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY SUCH CLAIM, DEMAND OR CAUSE OF ACTION AGAINST ANY OF THE RELEASED PARTIES, OR AGAINST THE PROPERTY OF ANY RELEASED PARTY; (II) ENFORCING, ATTACHING, COLLECTING OR RECOVERING, BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST ANY OF THE RELEASED PARTIES OR AGAINST THE PROPERTY OF ANY RELEASED PARTY WITH RESPECT TO ANY SUCH CLAIM, DEMAND OR CAUSE OF ACTION; (III) CREATING, PERFECTING OR ENFORCING ANY LIEN OF ANY KIND AGAINST ANY RELEASED PARTY OR THE PROPERTY OF ANY RELEASED PARTY WITH RESPECT TO ANY SUCH CLAIM, DEMAND OR CAUSE OF ACTION; (IV) EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ASSERTING, IMPLEMENTING OR EFFECTUATING ANY SETOFF, RIGHT OF SUBROGATION, INDEMNITY, CONTRIBUTION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE ANY RELEASED PARTY OR AGAINST THE PROPERTY OF ANY RELEASED PARTY WITH RESPECT TO ANY SUCH CLAIM, DEMAND OR CAUSE OF ACTION; AND (V) TAKING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THE PLAN OR THE PLAN DOCUMENTS RELATING TO SUCH CLAIM, DEMAND OR**

CAUSE OF ACTION. THE PLAN PROPONENTS' COMPLIANCE WITH THE FORMAL REQUIREMENTS OF BANKRUPTCY RULE 3016(C) SHALL NOT CONSTITUTE AN ADMISSION THAT THE PLAN PROVIDES FOR AN INJUNCTION AGAINST CONDUCT NOT OTHERWISE ENJOINED UNDER THE BANKRUPTCY CODE.

12.9    **Term of Injunctions or Stays**. Unless otherwise provided in this Plan or Confirmation Order, all injunctions or stays provided for under this Plan and ordered in the Confirmation Order or pursuant to sections 105 or 362 of the Bankruptcy Code arising under or entered during the Chapter 11 Case, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay and to the extent consistent with the terms and provisions of this Plan or the Confirmation Order, as applicable.

12.10    **Injunction Against Interference with Plan**. Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests, the Debtor, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the Debtor', the Creditor Trust's, the Creditor Trustee's, and their respective affiliates', employees', advisors', officers' and directors', and agents' implementation or consummation of this Plan.

12.11    **AutoOpt/Informage Releases**.  The AutoOpt Parties and Informage have agreed to execute contemporaneously herewith (but not later than August 7, 2015) a counterpart of the global mutual release of, indemnity of and covenant not to sue the GTL Released Parties in a form agreed to by the Parties and acceptable to EIHL (a "Release Agreement") to be held in trust by counsel for the Debtor until the Debtor has funded an escrow account with an amount of US$4,100,000 for the payment of the Noninsider Creditors of the Debtor under this Amended Plan (such escrow to be in part, through counsel for AutoOpt Parties and Informage as described herein).  "Noninsider Creditors" means all Creditors holding Allowed Claims other than the GTL Released Parties.

12.12    **Release of Liens.** Except as otherwise provided in this Plan, or in any contract, instrument, release or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and discharged. For the avoidance of doubt, except as otherwise provided in this Plan, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Debtor's Estate shall be fully released and discharged on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

12.13    **Effectuating Documents and Further Transactions**. Upon entry of the Confirmation Order, the appropriate officers of the Debtor and the Creditor Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements and/or documents, and take such acts and actions as may be reasonably necessary or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan including those included in and described in  the EIHL Term Sheet. The Debtor or Creditor Trustee, as applicable, may, and all Holders of Allowed Claims or Interests receiving Distributions pursuant to this Plan, at the request or direction of the Debtor or Creditor Trustee, as applicable, shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

12.14    **Corporate Action.** Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized and approved in all respects, including all actions contemplated by this Plan (whether to occur before, on or after the Effective Date). All matters provided for in this Plan involving the corporate structure of the Debtor, and any corporate action required by the Debtor in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the Debtor.

12.15    **Cancellation of Documents**. On the Effective Date, except to the extent otherwise provided in this Plan, any and all notes, instruments, debentures, certificates and other documents evidencing Claims and Interests in the Debtor

shall be deemed automatically extinguished, canceled, and of no further effect with the Debtor having no continuing obligations thereunder, and shall be deemed rejected and terminated.

12.16   **Preservation of Causes of Action of the Debtor.** In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the releases by the Debtor and exculpation provisions provided in the Plan), the Debtor and Creditor Trustee shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, including, but not limited to any claims against former officers and directors, advisors or third parties not specifically receiving a release herein, and any claims against parties with whom the Debtor formerly did business, including vendors, whether arising before or after the Petition Date, and the Creditor Trustee's rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Debtor and Creditor Trustee may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Creditors and Beneficiaries. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or Creditor Trustee, as applicable, will not pursue any and all available Causes of Action against them. Except with respect to Causes of Action as to which the Debtor and Creditor Trustee have released any Person or Person on or before the Effective Date, the Debtor and Creditor Trustee, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan.

## SECTION 13:   MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN

13.1   **Modification and Amendments.** This Plan or any Exhibits thereto may be amended, modified, or supplemented by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, the Debtor or Creditor Trustee may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

13.2   **Effect of Confirmation on Modifications.** Entry of a Confirmation Order shall mean that all modifications or amendments to this Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

13.3   **Revocation or Withdrawal of this Plan.** The Debtor reserve the right to, consistent with their fiduciary duties, revoke or withdraw this Plan before the Effective Date. If the Debtor revoke or withdraw this Plan, or if Confirmation does not occur, then: this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (c) nothing contained in this Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtor or any other Person; or (iii) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Person.

13.4   **Retention of Jurisdiction**. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Debtor's Chapter 11 Cases and this Plan, including, but not limited to, jurisdiction to:

(a)   allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims;

(b)   decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

(c)   resolve any matters related to: (i) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be

liable in any manner and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including rejection Claims and cure Claims, pursuant to section 365 of the Bankruptcy Code or any other matter related to such Executory Contract or Unexpired Lease; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

(d)     ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(e)     adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(f)     adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, including, but not limited to the Causes of Action, involving the Creditor Trustee or the Creditor Trust;

(g)     adjudicate, decide or resolve any and all matters related to any Cause of Action

(h)     adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(i)     enter and enforce any order for the sale of property pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code;

(j)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of this Plan;

(k)     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the discharge, releases, injunctions, exculpations, indemnifications and other provisions contained in this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

(l)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(m)     resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Creditor Trust, the Creditor Trust Agreement, any transactions or payments contemplated thereby, or any contract, instrument, release, indenture or other agreement or document relating to any of the foregoing;

(n)     adjudicate any and all disputes arising from or relating to Distributions under this Plan;

(o)     consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(p)     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

(q)     hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(r)     hear and determine all disputes involving the existence, nature or scope of the Debtor's discharge;

(s)     enforce all orders previously entered by the Bankruptcy Court;

(t)     hear any other matter not inconsistent with the Bankruptcy Code; and

(u)     enter final decrees closing the Debtor's Chapter 11 Cases.

# SECTION 14:   MISCELLANEOUS PROVISIONS

14.1   **Payment of Statutory Fees.**   All fees payable pursuant to 28 U.S.C. § 1930 shall be paid on the earlier of when due or the Effective Date by the Debtor. From and after the Effective Date, the Creditor Trustee shall be liable for payment of any such fees until entry of final decrees closing the Debtor's Chapter 11 Cases.

14.2   **Dissolution of Creditors' Committee.** On the Effective Date, the Creditors' Committee shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Debtor's Chapter 11 Cases.

14.3   **Section 1125(e) Good Faith Compliance**. As of and subject to the occurrence of the Confirmation Date, the Debtor and their Related Persons shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

14.4   **Substantial Consummation**. On the Effective Date, the Plan shall be deemed to be substantially consummated within the meaning set forth in section 1101 and pursuant to section 1127(b) of the Bankruptcy Code.

14.5   **Section 1146 Exemption**. To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under or pursuant to this Plan, and the execution, delivery, or recording of any instrument of transfer under or pursuant to this Plan, and the revesting, transfer, or sale of any property of or to the Creditor Trust or the Successful Bidder, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or other Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax, or similar tax.

14.6   **Closing of the Chapter 11 Case.** When all Creditor Trust Assets have been liquidated and converted into Cash and such Cash has been distributed in accordance with the Creditor Trust Agreement and the Confirmation Order, the Creditor Trustee shall seek authority from the Bankruptcy Court to close the Debtor's Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

14.7   **Plan Supplement**. Any exhibits or schedules not filed with this Plan may be contained in the Plan Supplement, if any, and the Debtor hereby reserve the right to file such exhibits or schedules as a Plan Supplement.

14.8   **Further Assurances.** The Debtor or the Creditor Trustee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The Debtor, the Creditor Trustee, and all Holders of Claims receiving Distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

14.9   **Exhibits Incorporated**. All exhibits to the Plan, including the Plan Supplement, are incorporated into and are part of this Plan as if fully set forth herein.

14.10   **Inconsistency**. In the event of any inconsistency among this Plan, the Disclosure Statement and any exhibit to the Disclosure Statement, the provisions of this Plan shall govern.

14.11   **No Admissions**. If the Effective Date does not occur, this Plan shall be null and void in all respects, and nothing contained in this Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor, (b) prejudice in any manner the rights of the Debtor or any other party in interest, or (c) constitute an admission of any sort by the Debtor or other party in interest.

14.12   **Reservation of Rights.** Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Effective Date has occurred. None of this Plan, any statement or provision contained in this Plan or any action taken or not taken by any Debtor with respect to this Plan, the

Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests before the Effective Date.

14.13   **Successors and Assigns.** The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries or guardian, if any, of each Person.

14.14   **Entire Agreement**. On the Effective Date, this Plan, supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

14.15   **Notices**. All notices, requests, and demands to or upon the Debtor in the Chapter 11 Case shall be in writing and, unless otherwise provided herein, shall be deemed to have been duly given or made when actually delivered or, if by facsimile transmission or electronic mail, when received and telephonically confirmed to the below recipients:

GTL (USA), Inc.
Attn: Urmeet Juneja
5200 Tennyson Parkway, Suite 200
Plano, Texas 75024

with copy to:

CULHANE MEADOWS, PLLC
Attn: Lynnette Warman
Richard G. Grant
The Crescent, Suite 700
100 Crescent Court
Dallas, Texas 75201

Telephone: 214-693-6525
Facsimile: 214-361-6690
Email: rgrant@culhanemeadows.com
Email: lwarman@culhanemeadows.com

All notices and requests to Persons holding any Claim in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in the Debtor's Chapter 11 Cases. Any such Holder of a Claim may designate in writing any other address for purposes of this Section, which designation will be effective upon receipt by the Debtor.

14.16   **Severability**. If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.17   **Governing Law**. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving

effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan and the transactions consummated or to be consummated in connection therewith.

14.18    **Request for Confirmation Pursuant to Bankruptcy Code Sections 1129(a) and 1129(b).** The Debtor requests entry of the Confirmation Order under Bankruptcy Code section 1129(a) and, to the extent necessary, Bankruptcy Code section 1129(b).

Dated: August 5, 2015                    Respectfully submitted,

                                         GTL (USA), INC.,
                                         a Delaware corporation

                                         By:  ____/s/ Urmeet Juneja_____
                                                 Urmeet Juneja, Sr. Vice President

**EXHIBIT A**



June 23, 2015

Mr. S. K. Roy
Director, GTL USA Inc.
Dallas, USA

Dear Sir,

**Preliminary, non-binding indication of interest ("Indicative Bid") for acquisition of GTL USA Inc.**

We, Emirates International Holding Limited LLC ("**EIHL**"), part of the Al Sayegh Group of Companies ("**Al Sayegh Group**"), are pleased to submit the following Indicative Bid:

1. The equity shares of 100 shares held by the existing Promoter viz GTL International Ltd should be transferred in favour of Emirates International Holdings Limited (EIHL) without any encumbrance at an agreed value of US$ 1 per share for cash consideration on or before the effective date. From the time of such investment by EIHL in GTL (USA) Inc, the existing Promoter of GTL (USA) Inc viz GTL International Ltd shall cease to be the Promoter and Owner of GTL (USA) Inc and shall not have any management control. 100% ownership, control and management shall vest with EIHL. The change in management shall have the Order of the Bankruptcy Court and cannot be challenged by any one including any creditor or lender of GTL (USA) Inc or its parent companies viz GTL International Ltd and GTL Ltd;

2. EIHL shall buy the
   a. Preference shares of GTL (USA) Inc held by GTL International Ltd;
   b. Loan & interest amounts payable by GTL (USA) Inc to
      i. GTL International Ltd; and
      ii. GTL Ltd

at an agreed value and make the payment to them as under:

| Name of the holder / creditor | Nature of liability | Amount as per books of GTL (USA) Inc (in US $) | Amount agreed to be paid (in US $) | Due date for payment |
|---|---|---|---|---|
| GTL International Ltd | Equity Shares | 100 | 100 | Effective Date |
| GTL International Ltd | Preference Shares | 3,000,000 | 600,000 | 31st August 2016 |
| GTL International Ltd | Existing Loan I | 7,790,024 | 2,000,000 | 31st August 2016 |
| GTL Limited | Existing Loan II | 267,821 | 100,000 | 31st August 2016 |

*Draft for discussion purposes*



3. EIHL shall make the following investments in GTL (USA) Inc on the dates noted against each of them:

| Borrower | | Nature of Investment | Amount of Investment (in US $) | Rate of Interest | Due date for Investment |
|---|---|---|---|---|---|
| GTL Inc | (USA) | New Loan | 1,350,000 | 6% | Within 1 week of Settlement Agreement (July 2015) |
| GTL Inc | (USA) | Working Capital (Trench I) | 1,000,000 | 6% | Within 1 week of Settlement Agreement (July 2015) |
| GTL Inc | (USA) | Working Capital (Trench II) | 1,000,000 | 6% | August 2015 |
| GTL Inc | (USA) | Working Capital (Trench III) | 500,000 | -- | September 2015 |

4. GTL (USA) Inc shall repay the loans availed by it from the EIHL as under:

| Name of the creditor | Nature of liability | Amount of liability (in US $) | Rate of Interest | Due date for payment of | |
|---|---|---|---|---|---|
| | | | | Interest | Principal |
| EIHL | Existing Loan I (Taken over from GTL International) | 7,790,024 | 6% | Monthly from October 2015 | Dec 3% — 2017 |
| | | | | | Dec 3% — 2018 |
| | | | | | Dec 5% — 2019 |
| | | | | | Dec 6% — 2020 |
| | | | | | Dec 12% — 2021 |
| | | | | | Dec 15% — 2022 |
| | | | | | Dec 15% — 2023 |
| | | | | | Dec 15% — 2024 |
| | | | | | Dec 15% — 2025 |
| | | | | | Dec 11% — 2026 |
| EIHL | Existing Loan II (Taken over from GTL Ltd) | 267,821 | 6% | Monthly from October 2015 | Dec 25% — 2016 |
| | | | | | Dec 75% — 2017 |
| EIHL | New Loan | 1,350,000 | 6% | Monthly from | Dec 10% — 2017 |

*Draft for discussion purposes*

2

|      |                                  |         |   | October<br>2016 | Dec<br>30% | 2018 |
|------|----------------------------------|---------|---|-----------------|------------|------|
|      |                                  |         |   |                 | Dec<br>30% | 2019 |
|      |                                  |         |   |                 | Dec<br>30% | 2020 |
| EIHL | Working<br>Capital<br>(Trench III) | 500,000 | - | -              | Nov<br>100% | 2016 |

Or in the sole discretion of EIHL, the loan repayment maybe accelerated provided new loans/ cash flows of GTL USA permit the same.

5.  The Existing Loan I, Existing Loan II, New Loan and Working Capital Loan shall be secured by Promissory Note and also against all the Properties including current assets such as Bank Balances and Receivables of GTL (USA) Inc and shall have First Charge in favour of EIHL and EIHL shall have the status of Senior Secured Lender in respect of them;

6.  All creditors including post petition shall be settled as per the Order of the Bankruptcy Court.

7.  The management should be handed over to EIHL free of all liabilities and encumbrances. EIHL and GTL (USA) Inc shall not be liable for any payment to any one in respect of the period prior to the Order of the Bankruptcy Court.

8.  The present Management shall handhold the operations for a period of 2 years on terms as may be agreed mutually.

9.  The present management should make best effort to ensure

    a.  Continuity of contracts of all its major customers and vendors for a period of two years

    b.  Continuity of service of its Senior and its Middle Level Management in respect of Operations, Finance and HR functions for a period of two years

10. All the assets of GTL (USA) Inc including the tools should be available in GTL USA Inc for carrying on its day to day operations;

11. Post acceptance of the above offer by the Credit Committee EIHL needs an exclusive period of 2 - 3 weeks for carrying out legal document negotiation;

12. The above proposal shall come into force on fulfillment of the following conditions:

    a.  Passing of the Order of Bankruptcy Court

    b.  Execution of documents (within one week of passing of the Order of Bankruptcy Court) and

    c.  Transfer of Equity and Preference shares

*Draft for discussion purposes*

3



    d  Withdrawal / Dismissal of all cases filed by any of the Creditors against
GTL (USA) Inc

The date on which all the above three conditions are satisfied shall be called as
the Effective Date

13. The terms finally agreed with or without modification shall form part of the Order
of Bankruptcy Court and shall be binding on all stakeholders and cannot be
challenged by anyone including the creditors and lenders of GTL (USA) Inc or
its parent companies viz GTL International Ltd and GTL Ltd

The above is a preliminary proposal and is strictly subject to contract and it is not
intended, does not and shall not be deemed to create any legal obligation or liability on
EIHL and its Directors, Officers, Agents and Advisors.

This proposal is valid for a period of 7 days. An unconditional approval and final binding
approval of the credit committee is required  within 7 days in order to proceed with
binding documentation.

Yours faithfully,

For and on behalf of EIHL

Patrick Dannacher
M&A Advisor

*Draft for discussion purposes*



July 1, 2015

Mr. S. K. Roy
Director, GTL USA Inc.
5200 Tennyson Parkway, Suite#200,
Plano, TX-75024

**Dear Sir,**

**Preliminary, non-binding indication of interest ("Indicative Bid") for acquisition of
GTL USA Inc.**

We, Emirates International Holding Limited LLC ("**EIHL**"), part of the Al Sayegh Group of
Companies ("**Al Sayegh Group**"), are pleased to submit the following Indicative Bid.

1.  The equity shares of 100 shares held by the existing Promoter viz GTL
    International Ltd should be transferred in favour of Emirates International
    Holdings Limited (EIHL) without any encumbrance at an agreed value of US$ 1
    per share for cash consideration on or before the effective date. From the time
    of such investment by EIHL in GTL (USA) Inc, the existing Promoter of GTL
    (USA) Inc viz GTL International Ltd shall cease to be the Promoter and Owner
    of GTL (USA) Inc and shall not have any management control. 100% ownership,
    control and management shall vest with EIHL. The change in management shall
    have the Order of the Bankruptcy Court and cannot be challenged by any one
    including any creditor or lender of GTL (USA) Inc or its parent companies viz
    GTL International Ltd and GTL Ltd;

2.  EIHL shall buy the
    a.  Preference shares of GTL (USA) Inc held by GTL International Ltd;
    b.  Loan & Interest amounts payable by GTL (USA) Inc to
        i.  GTL International Ltd; and
        ii. GTL Ltd
    at an agreed value, subject to definitive documentation and mutually acceptable
    terms and conditions. The payment schedule will be:

| Name of the holder / creditor | Nature of liability | Amount as per books of GTL (USA) Inc (in US $) | Amount agreed to be paid (in US $) | Due date for payment |
|---|---|---|---|---|
| GTL International Ltd | Equity Shares | 100 | 100 | Effective Date |
| GTL International Ltd | Preference Shares | 3,000,000 | 600,000* | 31st August, 2016 |
| GTL International Ltd | Existing Loan I | 7,790,024 | 2,000,000 | 31st August, 2016 |
| GTL Limited | Existing Loan II | 267,821 | 100,000 | 31st August, 2016 |

1



\* This amount maybe treated as part of repayment loan at the option of EIHL
on such terms and conditions as maybe mutually agreed with GTL (USA).

3. EIHL shall make the following investments in GTL (USA) Inc on the dates noted
against each of them:

| Borrower | Nature of Investment | Amount of Investment (in US $) | Rate of Interest | Due date for Investment |
|---|---|---|---|---|
| GTL (USA) Inc | New Loan | 2,500,000 | 6% | Within 1 week of Settlement Agreement ( July 2015) |
| GTL (USA) Inc | Working Capital (Trench I) | 900,000 | 6% | Within 1 week of Settlement Agreement (August 2015) |
| GTL (USA) Inc | Working Capital (Trench II) | 500,000 | 6% | September 2015 |

4. GTL (USA) Inc shall repay the loans availed by it from the EIHL as under:

| Name of the creditor | Nature of liability | Amount of liability (in US $) | Rate of Interest | Due date for payment of Interest | Due date for payment of Principal | |
|---|---|---|---|---|---|---|
| EIHL | Existing Loan I (Taken over from GTL International) | 7,790,024 | 6% | Monthly from October 2015 | Dec 3% | 2017: |
| | | | | | Dec 3% | 2018: |
| | | | | | Dec 5% | 2019: |
| | | | | | Dec 6% | 2020: |
| | | | | | Dec 12% | 2021: |
| | | | | | Dec 15% | 2022: |
| | | | | | Dec 15% | 2023: |
| | | | | | Dec 15% | 2024: |
| | | | | | Dec 15% | 2025: |
| | | | | | Dec 11% | 2026: |
| EIHL | Existing Loan II (Taken over from GTL Ltd) | 267,821 | 6% | Monthly from October 2015 | Dec 25% | 2016: |
| | | | | | Dec 75% | 2017: |
| EIHL | New Loan | 2,500,000 | 6% | Monthly from | Dec 10% | 2017: |



|  |  |  |  | October 2016 | Dec 20% | 2018: |
|------|------|------|------|------|------|------|
|  |  |  |  |  | Dec 20% | 2019: |
|  |  |  |  |  | Dec 20% | 2020: |
|  |  |  |  |  | Dec 2021: 15% |  |
|  |  |  |  |  | Dec 2022: 15% |  |
| EIHL | Working Capital (Trench III) | 500,000 | - | - | Nov 100% | 2015: |

a. The interest rate is subject to review 6 months from the date of settlement agreement and maybe revised subsequently if mutually acceptable to EIHL and GTL USA.

b. Inthe sole discretion of EIHL, the loan repayment maybe accelerated provided new loans/ cash flows of GTL USA permit the same.

5. The Existing Loan I, Existing Loan II, New Loan and Working Capital Loan shall be secured by Promissory Note and also against all the Properties including current assets such as Bank Balances and Receivables of GTL (USA) Inc and *shall have First Charge in favour of EIHL and EIHL shall have the status of Senior Secured Lender in respect of them.* An escrow account mechanism will be put in place to give effect to this security. Any amounts can be released from the escrow account only on approval of the authorized representative(s) of EIHL to be appointed for monitoring the escrow account.

6. All creditors including post petition shall be settled as per the Order of the Bankruptcy Court. The amount payable to all the creditors shall not exceed USD 4.1 million.

7. The management should be handed over to EIHL free of all liabilities and encumbrances. EIHL and GTL (USA) Inc shall not be liable for any payment to any one in respect of the period prior to the Order of the Bankruptcy Court.

8. The present Management shall handhold the operations for a period of 24 months from the date of transaction on terms as may be agreed mutually.

9. The present management should make best effort to ensure

   a. Continuity of contracts of all its major customers and vendors for a period of two years
   b. Continuity of service of its Senior and its Middle Level Management in respect of Operations, Finance and HR functions for a period of two years

3



10. All the assets of GTL (USA) Inc including the tools should be available in GTL USA Inc for carrying on its day to day operations;

11. Post acceptance of the above offer by the Credit Committee, EIHL needs an exclusive period of 2 weeks for carrying out legal document negotiation;

12. The above proposal shall come into force on fulfillment of the following conditions by 25th July 2015:

    a.  Passing of the Order of Bankruptcy Court
    b.  Execution of documents (within one week of passing of the Order of Bankruptcy Court) and
    c.  Transfer of Equity and Preference shares
    d.  Withdrawal / Dismissal of all cases filed by any of the Creditors against GTL (USA) Inc, GTL International Ltd, GTL Ltd and its directors, associates, subsidiaries and/or employees / officers.

The exact date, not later than 25th July 2015, on which all the above four conditions are satisfied shall be called as the Effective Date. Any amounts being paid by EIHL as a part of this transaction will be deposited in an escrow account. The amounts shall be released from the escrow account only on fulfillment of each of the above conditions. In case of non-fulfillment of any of the above conditions, the amount shall be refunded to EIHL by 28th July, 2015.

The terms finally agreed with or without modification shall form part of the Order of Bankruptcy Court and shall be binding on all stakeholders and cannot be challenged by anyone including the creditors and lenders of GTL (USA) Inc or its parent companies viz GTL International Ltd and GTL Ltd.

The above is a preliminary proposal and is strictly subject to contract and it is not intended, does not and shall not be deemed to create any legal obligation or liability on EIHL and its Directors, Officers, Agents and Advisors.

This proposal is valid till the end of July 6, 2015. An unconditional approval and final binding approval of the credit committee is required in order to proceed with binding documentation.

Yours faithfully,

For and on behalf of EIHL

Patrick Dannacher
M&A Advisor

4



July 15, 2015

Mr.S.K.Roy, Director,
GTL (USA) Inc
5200 Tennyson Parkway,
Suite#200, Plano, TX – 75024.

Dear Mr. Roy,

Sub: Our offer dated July 1, 2015 and our subsequent conference calls

Further to our last call, after deliberating the matter internally at the senior level within
our organization, we wish to re-iterate and make our position clear as under:

1. As stated by us in our e mail dated July 11, 2015, our offer always envisaged
   acquiring GTL USA Inc. as an existing entity with the brand and employees. It
   would be synergistic to our offer for the other international businesses of GTL
   International Limited. It will not make any economic sense to acquire only the
   assets and business of GTL USA Inc. A separate offer has been made by us for
   GTL USA Inc only due to the bankruptcy proceedings. Acquiring GTL USA Inc as
   existing entity is an intrinsic part of the larger commercial understanding with
   GTL International Ltd and GTL Limited for the overall transaction of acquiring the
   international businesses.

   GTL USA Inc is in the service industry. The assets proposed to be acquired by
   us are the GTL brand, goodwill, employees, customers and vendors. The present
   employees are mostly  trained manpower from GTL India. If GTL USA Inc is
   acquired as proposed by us by buying the shares of GTL International Ltd  by a
   Structured Dismissal (SD) by way of agreement with  all creditors for  legal
   discharge and release of  all Debtor and Non-Debtor entities and individuals, we
   would be able to fall back on the employees' pool and contacts / relationship of
   GTL India, which has got presence not only in India but also in other international
   locations through GTL International Ltd. Because of GTL International Ltd's
   presence  in other countries and the business relationship it has got with its
   customers in all the places doing and growing business with the presence of GTL
   International Ltd for us makes more sense. Our very purpose of asking GTL
   International Ltd and GTL Ltd to handhold the operations in GTL USA Inc is to
   make use of your full resources to our advantage.

2. In this context, it is critical for us that legal discharges and releases should be
   granted to GTL USA Inc, GTL International Ltd, GTL Limited and their affiliates,
   directors, officers and employees by all creditors including AutoOpt by a

1



settlement agreement and through a Structured Dismissal (SD) Order passed by the Bankruptcy Court with the consent of all parties. If we do not get such release today, when we acquire other international operations of GTL International Ltd later by buying the shares of GTL International Ltd, we will be having these litigations to be fought by us. Thus now or later we do not like to be entangled into any prolonged legal disputes, proceedings and litigations.

Similarly, if any charges / legal proceedings continue against the employees, officers or directors and any of your entities, we will not be able to avail of your bandwidth and expertise for operations and growth of our business. This will again impact our economic interest and investment.

3. Once we acquire GTL USA Inc. we intend to grow its business by putting additional working capital as and when necessary. We believe that continued legal proceedings post acquisition will definitely hamper growth of the acquired Company and, therefore, after investing such a large amount, we would not be interested in any such arrangement which exposes us to this potential risk.

4. We are willing to consider extending our offer dated July 1, 2015 till July 16, 2015. We are prepared to meet the financial commitments within 10 working days of all binding and final documentation being signed, subject to the fact that we get full value for the money that we pay and all our terms as mentioned in our offer dated July 1, 2015 and this letter is accepted by all creditors.

5. To sum up, I wish to make our submissions as under:

   a. We reiterate our commitment for buying of GTL (USA) Inc as per the terms of our Term Sheet dated July 1, 2015 and this letter dated July 15, 2015 as we would not like to buy a skeleton company but would like to acquire a Company with GTL handholding, wherein it can exploit the pool of trained manpower, its contacts/ relationship with customers, its brand image etc, in view of service nature of the business;

   b. We want Structured Dismissal with the Consent of all Creditors by a Settlement Agreement and Order of the Bankruptcy Court;

   c. We agree for making investments as agreed including for remitting USD 2.5 million within 10 working days of final documentation being signed and completion of all legal formalities for change of management by end July 2015; Time is of essence.

   d. We need release and discharge of GTL USA Inc, GTL Ltd, GTL International Ltd and their affiliates, Directors, Employees / Officers from all litigations by all the creditors as we do not like to have any legal disputes now or later when we buy international operations of GTL Internation Ltd by buying the shares of GTL international Ltd;



    e. We need Indemnity from GTL USA Inc and Parent companies that EIHL would not be liable for any liability arising prior to its acquiring the Company.

    f. Our keenness in acquiring GTL USA Inc and our ability to finance the transaction could be observed from the following:

        i. Though as per the valuation, GTL USA Inc does not support the amount we agreed to pay as consideration, still, we have revised our initial offer of USD 1.35 million to USD 2.5 million for distribution to the Creditors;

        ii. We are agreeable for depositing USD 100,000 with your Counsel to show our commitment and ability to honor our financial commitment. This amount may be adjusted against the amount payable by us or returned to us in case the transaction does not materialize as the case may be;

We agree to extend the deadline of our offer on the terms of our Term Sheet dated July 1, 2015 and this letter dated July 15, 2015 from July 7, 2015 to July 16, 2015, by which time we expect a written consent from the Creditors Committee for acceptance of terms of our Term Sheet dated July 1, 2015 and this letter dated July 15, 2015. However beyond that we are not interested in any further discussion and our offer would lapse.

I understand and appreciate your point of view. However as an organization, we are of the strong belief that our investment in GTL USA Inc, in the present circumstances, would be better served with the consent of all the Creditors, GTL International Ltd and Court Order, not otherwise. If our belief is shared by all, we are more than willing to complete the deal.

Our offer is fair to everyone, as we wanted the consent / involvement of all. If the deal is to have the consent of every one, we believe it will not only erase the bad publicity GTL USA Inc got into on account of the bankruptcy filing, but would also send a clear signal and confidence to the customers in doing business with GTL USA Inc, which would augur well for our reputation as well when we acquire the international operations of GTL International Ltd and associate ourselves with them. In any case, we do not want to be seen as fishing in troubled water.

Let me take this occasion to thank all of you for giving us an opportunity to submit our offer for acquisition of GTL USA Inc.

With regards,

Yours faithfully,

For and on behalf of EIHL

Patrick Dannacher
M&A Advisor

3



July 29, 2015

Mr. S.K.Roy, Director
GTL (USA) Inc
5200 Tennyson Parkway, Suite 200
Plano, TX 75024

Dear Mr. Roy,

**Sub:  Offer made by Emirates International Holding Limited LLC ("EIHL") for acquisition of the shares of GTL (USA) Inc. ("GTL USA")**

This in reference to the captioned subject and our Term Sheet dated July 1, 2015 and letter dated July 15, 2015 issued in connection thereto.

As discussed, you have provided us an update of the facts and circumstances relating to the Chapter 11 proceedings which have occurred till date.

At the outset, we wish to state that we are rather disappointed that the proposal submitted by us has not yet been accepted by the creditors and the court. However, following our discussions and based on the revised timelines for the court process, we are agreeable to extend our offer upto August 20, 2015, subject to the following:

We reiterate that we will be contributing USD 2.5 million and nothing more towards our share of the funds to be utilized for settlement of all creditors.

We reiterate our requirement / pre-condition for release of all claims and legal proceedings against GTL USA, its (direct and indirect) parent companies and their respective officers and directors by ALL creditors of GTL USA. We understand that there have been some objections raised on the ability of the Bankruptcy Court to issue such releases. While our preference remains for a release discharge issued by the Bankruptcy Court, we would be willing to consider bilateral discharges from each concerned party, provided however that such discharges are released upfront and prior to or simultaneously with the deposit of any monies in any escrow mechanism or otherwise (please see below).

The Bankruptcy Court must record the entire process relating to the transaction and the Structured Dismissal (including the various steps and detailed timelines) in its order to be passed at the hearing to be held on July 30, 2015.

In view of the above, our proposal for the revised timeline and step plan is as under:

| SR. NO. | DATE | ACTION |
| --- | --- | --- |
| 1. | July 30, 2015 | Order of the Bankruptcy Court recording the in-principle approval for the Structured Dismissal and the steps to be undertaken to give effect the same. |

1



| 2. | August 12, 2015 | Share Purchase Agreement and Loan Purchase Agreement to be executed between GTL International and EIHL. |
| 3. | August 12, 2015 | Loan agreement between GTL USA and EIHL. |
| 4. | August 13, 2015 | Deposit of all release letters from all creditors (other than creditors in respect of which the valid release is procured through the court order) with escrow agent and simultaneous deposit of USD 100,000 by EIHL1. |
| 5. | August 14, 2015 | Deposit of balance of USD 2.5 million into escrow by EIHL and deposit of USD 1.6 million by GTL USA into escrow. |
| 6. | August 18, 2015 | Final order for Structured Dismissal. |
| 7. | August 19, 2015 | Release of funds and consummation of the transactions. |

Note: We are flexible on the dates mentioned above except for items 1 and 7. However, the sequencing would need to be adhered to.

Except as specifically stated pursuant to this letter, all other terms and conditions of our offer and term sheet remain unchanged.

We would once again like to categorically state that if the deal cannot be completed in the manner described in our proposals (including the term sheet and this letter) we would not be interested in pursuing this any further.

Yours sincerely,

For and on behalf of EIHL

Patrick Dannacher
M&A Advisor

---

**Note**: All funds deposited in escrow will be released back to EIHL, without any delay, demur or protest, if any of the conditions for the deal (including the deposit of all release letters into escrow) are not met. Escrow agreement would be subject to EIHL's approval.